UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Anthony O. Corso Living Trust, by and through Charles C. Corso, Roland F. and Dolcy J. Kushmore Revocable Living Trust, by and through Roland D. Kushmore, Trustee, Dennis Spitz, Thomas Basdekis, Stanley Weindorf, Thomas Cole, Renate Freed, Rui Wang, Ying Zhu-Wang, Ruth Stephens, James P. Campbell Revocable Living Trust, by and through James P. Campbell, Trustee, Michael Moore, Stuart Spiteri, and Thomas Chesnick, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KCG Americas LLC, Automated Trading Desk Financial Services, LLC, Citigroup Global Markets Inc., Citadel Securities LLC, G1 Execution Services, LLC, E-Trade Capital Markets LLC, BTIG, LLC, Canaccord Genuity Inc., Collins Stewart Inc., Pershing LLC, Maxim Group LLC, UBS Securities LLC, and John Does 1 through 12,<br><br>Defendants. | Civil Action No. 1:14-cv-01087-JG<br><br>Judge James S. Gwin<br><br>AMENDED COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

1

Plaintiffs, by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Biozoom, Inc. ("Biozoom" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases issued by and disseminated by Biozoom, and media reports issued about the Company; (c) the proceedings brought by the SEC starting on or about July 3, 2013 against certain individuals in connection with Biozoom in the case of *SEC v. Tavella, et al.*, No. 13-4609 (S.D.N.Y., filed July 3, 2013) (the "SEC Action"), (d) a review of other publicly available information concerning Biozoom, (e) inquiries to Plaintiffs' brokers about the identity of the Market Makers who sold Plaintiffs Biozoom stock, and (f) a review of FINRA records, OTCBB records, the EDGAR database and other publicly available information regarding the Market Makers in Biozoom stock.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a securities class action on behalf of persons or entities who purchased the common stock of Biozoom from defendants KCG Americas LLC, Automated Trading Desk Financial Services, LLC, Citigroup Global Markets Inc., Citadel Securities LLC, G1 Execution Services, LLC, E-Trade Capital Markets LLC, BTIG, LLC, Canaccord Genuity Inc., Collins Stewart Inc., Pershing LLC, Maxim Group LLC, and UBS Securities LLC, and John Doe 1 through 12 on the Over-the-Counter Bulletin Board ("OTCBB") between May 16, 2013 and June 25, 2013, inclusive, seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act") (hereinafter collectively the "Class").

2. In this Complaint, Plaintiffs assert a strict liability, negligence and non-fraud based claim under the Securities Act. This claim is asserted against Defendants, who sold unregistered shares of Biozoom to Plaintiffs and members of the Class.

3. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiffs and the Class have suffered significant losses and damages.

## JURISDICTION AND VENUE

4. The claim asserted herein arises under §12 of the Securities Act (15 U.S.C. §§77l).

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act (15 U.S.C. §77v).

6. Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b). Substantial acts in furtherance of the alleged course of conduct or the effects of the conduct have occurred in this Judicial District. Plaintiffs Charles Corso, Trustee for Anthony O. Corso Living Trust, and Ruth Stephens reside in this district and purchased their shares of Biozoom while in this district.

7. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

8. Charles Corso, Trustee for Plaintiff Anthony O. Corso Living Trust, has full authority to act for and on behalf of the Trust. Corso purchased Biozoom common stock on behalf of the Anthony O. Corso Living Trust during the Class Period from Market Maker KCG Americas LLC, as set forth in the attached certification, and the Trust suffered damages as a result of the federal securities law violations alleged herein.

3

9. Roland D. Kushmore, Trustee for Plaintiff Roland F. and Dolcy J. Kushmore Revocable Living Trust, has full authority to act for and on behalf of the Trust. Kushmore purchased Biozoom common stock on behalf of the Roland F. and Dolcy J. Kushmore Revocable Living Trust during the Class Period from Market Makers Automated Trading Desk Financial Services, LLC, and/or Citigroup Global Markets Inc., as set forth in the attached certification, and the Trust suffered damages as a result of the federal securities law violations alleged herein.

10. Plaintiff Dennis Spitz purchased Biozoom common stock during the Class Period from Market Maker Citadel Securities LLC, as set forth in the attached certification, and suffered damages as a result of the federal securities law violations alleged herein.

11. Plaintiff Thomas Basdekis purchased Biozoom common stock during the Class Period from Market Maker Citadel Securities LLC, as set forth in the attached certification, and suffered damages as a result of the federal securities law violations alleged herein.

12. Plaintiff Stanley Weindorf purchased Biozoom common stock during the Class Period from Market Maker G1 Execution Services, LLC and/or E-Trade Capital Markets LLC, as set forth in the attached certification, and suffered damages as a result of the federal securities law violations alleged herein.

13. Plaintiff Thomas Cole purchased Biozoom common stock during the Class Period from Market Maker G1 Execution Services, LLC and/or E-Trade Capital Markets LLC, as set forth in the attached certification, and suffered damages as a result of the federal securities law violations alleged herein.

14. Plaintiff Renate Freed purchased Biozoom common stock during the Class Period from Market Maker BTIG, LLC, as set forth in the attached certification, and suffered damages as a result of the federal securities law violations alleged herein.

15. Plaintiffs Rui Wang and Ying Zhu-Wang purchased Biozoom common stock during the Class Period from Market Maker Canaccord Genuity Inc. as set forth in the attached certification, and suffered damages as a result of the federal securities law violations alleged herein.

16. Plaintiff Ruth Stephens purchased Biozoom common stock during the Class Period from Market Makers Canaccord Genuity Inc. and/or Collins Stewart Inc. and Automated Trading Desk Financial Services, LLC, and/or Citigroup Global Markets Inc., as set forth in the attached certification, and suffered damages as a result of the federal securities law violations alleged herein.

17. James P. Campbell, Trustee for Plaintiff James P. Campbell Revocable Living Trust, has full authority to act for and on behalf of the Trust.  Campbell purchased Biozoom common stock on behalf of the James P. Campbell Revocable Living Trust during the Class Period from Market Maker Pershing LLC, as set forth in the attached certification, and the Trust suffered damages as a result of the federal securities law violations alleged herein.

18. Plaintiff Michael Moore purchased Biozoom common stock during the Class Period from Market Maker Maxim Group LLC, as set forth in the attached certification, and suffered damages as a result of the federal securities law violations alleged herein.

19. Plaintiff Stuart Spiteri purchased Biozoom common stock during the Class Period from Market Makers UBS Securities LLC and Automated Trading Desk Financial Services, LLC and/or Citigroup Global Markets Inc., as set forth in the attached certification, and suffered damages as a result of the federal securities law violations alleged herein.

20. Plaintiff Thomas Chesnick purchased Biozoom common stock during the Class Period from Market Maker UBS Securities LLC as set forth in the attached certification, and suffered damages as a result of the federal securities law violations alleged herein.

21. Defendant KCG Americas LLC ("KCG") is a corporation with its main corporate offices at 545 Washington Boulevard, Jersey City, NJ 07310. KCG served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Anthony O. Corso Living Trust and the Class.

22. Defendant Automated Trading Desk Financial Services, LLC ("Automated Trading Desk") is a corporation with its main corporate offices at 11 eWall Street Mount Pleasant, SC 29464. Automated Trading Desk served as Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Roland F. and Dolcy J. Kushmore Revocable Living Trust, Ruth Stephens, Stuart Spiteri and the Class.

23. Defendant Citigroup Global Markets. Inc. ("Citigroup") is a corporation with its main corporate offices at 388 Greenwich Street, New York, NY 10013-2396. Upon information and belief, Citigroup and Automated Trading Desk are affiliated entities that are owned by the same corporate parent. Citigroup served as Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Roland F. and Dolcy J. Kushmore Revocable Living Trust, Ruth Stephens, Stuart Spiteri and the Class.

24. Defendant Citadel Securities LLC ("Citadel") is a corporation with its main corporate offices at 131 South Dearborn Street, 32nd Floor, Chicago, IL 60603. Citadel served as Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Dennis Spitz and Thomas Basdekis and the Class.

25. Defendant G1 Execution Services, LLC ("G1") is a corporation with its main corporate offices at 440 S. LaSalle Street, Suite 3030 Chicago, IL 60605-1028. G1 served as

Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Stanley Weindorf, Thomas Cole and the Class.

26. Defendant E-Trade Capital Markets, LLC ("E-Trade") is a corporation with its main corporate offices at 440 S. LaSalle Street, Suite 3030 Chicago, IL 60605-1028. Upon information and belief, E-Trade and G1 are one and the same entity. E-Trade served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Stanley Weindorf, Thomas Cole and the Class.

27. Defendant BTIG, LLC ('BTIG") is a corporation with its main corporate offices at 600 Montgomery Street, 6th Floor, San Francisco, CA 94111. BTGI served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Renate Freed and the Class.

28. Defendant Canaccord Genuity Inc. ("Canaccord") is a corporation with its main corporate offices at 350 Madison Avenue, New York, NY 10017. Canaccord served as Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Rui Wang, Ying Zhu-Wang, Ruth Stephens and the Class.

29. Defendant Collins Stewart Inc. ("Collins Stewart") is a corporation with its main corporate offices at 350 Madison Avenue, New York, New York 10017. Upon information and belief, Collins Stewart and Cannacord are affiliated entities. Collins Stewart served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Ruth Stevens and the class.

30. Defendant Pershing LLC ("Pershing") is a corporation with its main corporate offices at One Pershing Plaza, Jersey City, NJ 07399. Pershing served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff James P. Campbell Revocable Living Trust and the Class.

7

31. Defendant Maxim Group LLC ("Maxim") is a corporation with its main corporate offices at 405 Lexington Avenue, New York, NY 10174. Maxim served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Michael Moore and the Class.

32. Defendant UBS Securities LLC ("UBS Securities") is a corporation with its main corporate offices at 1285 Avenue of the Americas, New York, New York 10019. UBS Securities served as Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Stuart Spiteri, Thomas Chesnick and the Class.

33. Plaintiffs also name John Does 1 through 12 as Defendants. Defendants John Does 1 through 12 are the Market Maker entities that sold Plaintiffs and the Class their shares of Biozoom. Plaintiffs have exercised their diligence to determine the exact identities and corporate names of the Market Makers to which their trades were directed that are named as Defendants above. Plaintiffs' diligence consisted of repeated requests to Plaintiffs' stock brokers and brokerage firms, and the investigation of counsel, including a review of FINRA records, OTCBB records, EDGAR database filings and public records searches. Plaintiffs identified the Market Makers' corporate entities to the best extent and most precision possible, but are naming John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, John Doe 6, John Doe 7, John Doe 8, John Doe 9, John Doe 10, John Doe 11, and John Doe 12, as defendants to the extent discovery shows that different corporate entities related to the named Defendants are the actual Market Makers.

34. Defendants KCG, Automated Trading Desk, Citigroup Global Markets, Citadel, G1, E-Trade, BTIG, Canaccord, Collins Stewart, Pershing, Maxim, UBS Securities, and John Doe 1 through John Doe 12 are referred to collectively as "Defendants."

**CLASS ACTION ALLEGATIONS**

35. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased Biozoom stock between May 16, 2013 and June 25, 2013 from Defendants, inclusive (the "Class Period") seeking to pursue remedies under the Securities Act (the "Class"). Excluded from the Class are Defendants, their officers and directors, and at all relevant times, members or their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest. Also excluded from the Class are a) Biozoom, its officers and directors, and at all relevant times, members or their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest, and b) Sara Deutsch, Andres Horacio Ficicchia, Gonzalo Garcia Blaya, Luciana Mariana Hernando, Cecilia De Lorenzo, Magdalena Tavella, Adriana Rosa Bagattin, Daniela Patricia Goldman, Mariano Pablo Ferrari, Mariano Graciarena and Fernando Loureyo and the members or their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any of the above-listed persons has or had a controlling interest.

36. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Biozoom shares were actively traded on the OTCBB. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. A total of 87,936,300 unregistered Biozoom shares were traded publicly during the Class Period on the OTCBB. Record owners and other members of the Class may be identified from records maintained by Defendants and other OTC market participants, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38. Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether Defendants violated the federal securities laws by their acts as alleged herein; and

(b) To what extent the members of the Class have sustained damages and the proper measure of damages.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FACTS

### A. Biozoom's Predecessor Is Formed and Sold to Medford

41. According to the SEC Action, on June 25, 2007, Entertainment Art, which later became Biozoom, was incorporated under the laws of the state of Nevada. Entertainment Art purported to be a developmental-stage company formed to design, produce, and sell a line of leather bags, with offices located in West Hempstead, New York. Entertainment Art was controlled by the three company officers.

42. From November 2007 through March 2008, Entertainment Art offered and sold a total of 610,000 shares of its 1,810,000 issued and outstanding shares to 34 different investors in

private placement transactions. A share certificate reflecting Entertainment Art share ownership was issued to each investor.

43. On July 18, 2008, Entertainment Art filed a Form S-1 registration statement with the Securities and Exchange Commission (the "Commission") to register the 610,000 shares owned by the 34 shareholders who had acquired Entertainment Art stock in the private placement transactions ("the Form S-1 Shareholders").

44. The remaining 1,200,000 shares of Entertainment Art stock were held by the three Biozoom officers.

45. On May 1, 2009, Entertainment Art announced, in a public filing with the Commission, that the three Entertainment Art officers sold their total 1,200,000 shares of Entertainment Art stock to Medford Financial Ltd. ("Medford"), a Belizean entity.

46. Contrary to this disclosure, however, in addition to the 1,200,000 shares of Entertainment Art, Medford secretly also purchased all of the 610,000 shares that had been purchased by the Form S-1 shareholders.

47. Thus, in May, 2009, Medford Financial purchased *all* of the outstanding Entertainment Art shares, including all the shares held by the Form S-1 Shareholders.

48. On June 30, 2009, Entertainment Art's board of directors approved the implementation of a 33:1 forward split for Entertainment Art stock.

49. On July 21, 2009, the forward split became effective, and as a result Biozoom had 59,730,000 shares of common stock outstanding.

50. *All* 59,730,000 shares of Entertainment Art stock were owned by Medford.

**B. Entertainment Art Is Sold Again and Changes Its Name and Business**

51. According to the SEC Action, Entertainment Art lay dormant between July 2009 and October 2012, with no activities or revenues.

52. On October 25, 2012, Entertainment Art reported in a public filing with the SEC that on October 19, 2012, Medford sold 39,600,000 common shares of Entertainment Art in a private transaction to Le Mond Capital.

53. Le Mond Capital purports to be an entity based in the British Virgin Islands.

54. Le Mond Capital's purported owner was Sara Deutsch, who was a resident of Buenos Aires, Argentina.

55. From September 2011 to at least October 2012, Deutsch worked as a manager of Magdalena's Party, a restaurant located in Buenos Aires, Argentina.

56. Magdalena's Party is co-owned by, among others, Deutsch and Magdalena Tavella.

57. Following the October 19, 2012 sale, Entertainment Art affirmed to the SEC that Le Mond Capital controlled over 66.3% of the company's issued and outstanding common stock.

58. However, in reality Le Mond Capital purchased the *entire* company from Medford – that is, it purchased all of Entertainment Art's 59,730,000 outstanding shares.

59. Deutsch, the purported owner of Le Mond Capital, became Entertainment Art's new President, Chief Executive Officer, Principal Executive Officer, Treasurer, Chief Financial Officer, Secretary, Treasurer, and Director.

60. On March 12, 2013, Entertainment Art publicly announced a change in its business operations from fashion leather bag design and marketing to biotechnology.

61. Specifically, Entertainment Art announced a transaction pursuant to which its newly formed subsidiary, Biozoom Technologies, Inc., acquired certain patents, licenses, and related assets from each of three separate companies, Opsolution Spectroscopic Systems, Opsolution

12

NanoPhotonics, and Opsolution GmBH, (the "Opsolution acquisition") in exchange for cash of $50,000 and 39 million shares of Entertainment Art common stock.

62. Entertainment Art stated that, through Biozoom, it was now in the business of "researching, developing, and licensing technologies relating to the mobile remote collection of biomedical data as well as bilateral diagnostic communication."

63. Entertainment Art further stated that – as of immediately after closing of the Opsolution acquisition and filing of the March 12, 2013 Form 8-K – Deutsch would step down as CEO and Chief Financial Officer of Entertainment Art, but would stay on as a Director.

64. As a result of the Opsolution acquisition, the 59,730,000 outstanding shares of Entertainment Art were allocated in the following manner: first, Le Mond Capital returned 39,000,000 shares to Entertainment Art, and then those 39,000,000 shares were allocated – as shares bearing a restrictive legend intended to prevent their public distribution – to four entities that were associated with the Opsolution entities.

65. Thus, after these allocations, 20,730,000 shares of Entertainment Art remained in Le Mond Capital's ownership. Le Mond Capital retained 600,000 of these shares, bearing a restrictive legend. The remaining 20,130,000 shares – which represented the total shares purchased by the Form S-1 Shareholders (and subsequently sold in the Medford Financial transaction in May 2009 and split 1-to-33) – were unallocated.

66. On April 1, 2013, Entertainment Art changed its name to Biozoom.

**C. Biozoom Affiliates Sell Their Restricted Biozoom Shares in an Unregistered Offering**

67. According to the SEC Action, from January 2013 to June 2013, brokerage accounts were opened at two securities broker-dealer firms, in the names of ten Argentinean citizens who

13

were residents of Buenos Aires: Andres Horacio Ficicchia, Gonzalo Garcia Blaya, Luciana Mariana Hernando, Cecilia De Lorenzo, Fernando Loureyro and Mariano Graciarena

68. Between January 2013 and June 2013, the ten Argentinean citizens, acting in concert, deposited a total of 20,130,000 shares to the two broker-dealer firms.

69. All those shares were obtained by the ten Argentina citizens from Le Monde and Deutsch after October 19, 2012.

70. These 20,130,000 shares represented all of the shares that were unallocated after the Opsolution Acquisition. Moreover, these shares represented 100% percent of the total shares without a restrictive legend outstanding in Biozoom at the time, and more than 33% percent of the total outstanding shares of Biozoom.

**D. The Biozoom Shares Are Sold to the Public Pursuant to a Pump-and-Dump Scheme, in an Unregistered Offering.**

71. Prior to May 16, 2013, no shares of Biozoom or Entertainment Arts were publicly offered on the OTC Bulletin Board.

72. On May 16, 2013, Biozoom shares were offered (listed) for the first time on the OTC Bulletin Board.

73. Beginning on May 22, 2013 –after nearly all Biozoom shares were deposited by the Argentinean citizens with broker-dealer firms– Biozoom began issuing a series of press releases in which it claimed it "created the world's first portable, handheld consumer device" to instantly and non-invasively measure certain biomarkers. These claims were also made by other stock promoters, including Global Financial, Inc., StockPreacher.com, among others.

74. Following these positive claims concerning Biozoom's prospects, starting on May 16, 2013, some of the ten Argentinean citizens sold, in coordinated sales, 14,078,406 shares of Biozoom stock on the OTC market, as reflected the chart below:

14

| Biozoom Shareholder | Shares Sold | % of total Biozoom Shares | Dates Sold |
|---|---|---|---|
| Blaya | 1,312,053 | 2.20% | 5/16/13 - 6/13/13 |
| De Lorenzo | 1,328,000 | 2.22% | 6/17/13 - 6/18/13 |
| Hernando | 1,815,000 | 3.04% | 6/6/13 - 6/17/13 |
| Ficicchia | 1,402,500 | 2.35% | 5/20/13 - 6/5/13 |
| Tavella | 1,592,444 | 2.67% | 6/7/13 - 6/11/13 |
| Bagattin | 2,176,726 | 3.64% | 6/10/13 - 6/18/13 |
| Ferrari | 1,994,038 | 3.34% | 6/7/13 - 6/19/13 |
| Goldman | 2,457,645 | 4.11% | 5/28/13 - 6/6/13 |
| Total | 14,078,406 | 23.57% | |

75. No registration statement had been filed with the Securities and Exchange Commission, or was in effect, for the sales of Biozoom shares by the Argentinean citizens on the OTC Bulletin Board, and such sales did not qualify for any exception from registration.

76. *All* of the Biozoom shares traded on the OTC Bulletin Board starting on May 16, 2013 and up until June 25, 2013, when the Commission suspended trading in Biozoom, were unregistered shares, traceable to the 20,130,000 shares transferred to the Argentina citizens and offered to the public by such Argentina citizens.

**E. Biozoom Was a Penny Stock at All Relevant Times**

77. Biozoom was a "penny stock" as defined by the Securities Exchange Act of 1934 ("Exchange Act"). At all times relevant to this Complaint, the stock's shares traded at less than $5.00 per share.

15

78. During the same period, Biozoom's stock did not meet any of the exceptions to penny stock classification pursuant to Section 3(a)(51) and Rule 3a51-1 of the Exchange Act.

**F. Defendants Sold the Biozoom Shares to Plaintiffs and Others Before Transactions Were Halted by the SEC.**

79. Between May, 16, 2013 and June 25, 2013, Defendants acted as a market maker for the unregistered Biozoom shares traded on the OTC Bulletin Board.

80. On June 19, 2013 and June 24, 2013, Defendants sold Biozoom shares to Plaintiffs, through the OTC Bulletin Board.

81. On June 25, 2013 the Securities and Exchange Commission suspended trading in Biozoom shares.

## CLAIMS FOR RELIEF
## COUNT I
### For Violations of Section 12(a)(1) of the Securities Act

82. Plaintiffs repeat and re-allege each and every allegation herein.

83. Defendants KCG, Automated Trading Desk, Citigroup Global Markets, Citadel, E-Trade, G1, BTGI, Canaccord, Collins Stewart, Pershing, Maxim, UBS Securities, and John Doe 1 through John Doe 12, were sellers of Biozoom common stock within the meaning of the Securities Act because Defendants sold unregistered shares of Biozoom in violation of Section 5 of the Securities Act to Plaintiffs and other members of the Class on the OTCBB and financially benefitted thereby. There was no Registration Statement in effect for the shares of Biozoom sold to Plaintiffs and the Class.

84. Defendants used the means and instrumentalities of interstate commerce and the U.S. mail.

85. The value of Biozoom common stock declined substantially starting on June 25, 2013 after the SEC suspended trading of Biozoom shares and announced an investigation of

16

Biozoom's trading activity, and Plaintiffs and the other members of the Class have sustained damages as a result.

86. Less than one year has elapsed between the filing of this Complaint and the time that Plaintiffs discovered or reasonably could have discovered the facts upon which this complaint is based. Less than three years have elapsed between the time that the securities at issue were sold to the public and the time that this Complaint was filed asserting claims arising out of the sale of unregistered shares.

87. By reason of the foregoing, Defendants are liable under Section 12(a)(1) of the Securities Act to Plaintiffs and the other members of the Class who purchased shares of Biozoom from Defendants on the OTCBB. Plaintiffs and other members of the Class have the right to rescind and recover the consideration paid for their securities on which they suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

**A.** Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

**B.** Awarding compensatory damages in favor of Plaintiffs and the other Class members, rescission, and disgorgement of all ill-gotten gains and/or proceeds of stock sales against Defendants for all damages sustained as a result of Defendants' wrongdoing in an amount to be proven at trial, including interest thereon;

**C.** Awarding Plaintiffs, the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

**D.** Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

June 24, 2014                                             Respectfully Submitted,


                                                          /s Alan L. Rosca
                                                          Alan L. Rosca
                                                          PEIFFER ROSCA ABDULLAH CARR & KANE LLC
                                                          526 Superior Avenue, Suite 1255
                                                          Cleveland, Ohio 44114
                                                          Tel: 216-589-9280; Fax: 888-411-0038
                                                          arosca@praclawfirm.com
                                                          Ohio Bar Registration No. 0084100

                                                          Joseph C. Peiffer
                                                          PEIFFER ROSCA ABDULLAH CARR & KANE LLC (*pro hac vice*)
                                                          201 St. Charles Avenue, Suite 4610
                                                          New Orleans, Louisiana 70170-4610
                                                          Tel: (504) 523-2464; Fax: (504) 523-2464
                                                          jpeiffer@praclawfirm.com

                                                          James P. Booker
                                                          PEIFFER ROSCA ABDULLAH CARR & KANE LLC
                                                          526 Superior Avenue, Suite 1255
                                                          Cleveland, Ohio 44114
                                                          Tel: 216-589-9280; Fax: 888-411-0038
                                                          jbooker@praclawfirm.com
                                                          Ohio Bar Registration No. 0090803