UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **In re Biozoom, Inc. Securities Litigation.** | Civil Action No.:  1:14-cv-01087 |
| | Judge James S. Gwin |

**DEFENDANTS' OMNIBUS REPLY IN FURTHER SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFFS' STATE LAW CLAIMS**

## ARGUMENT

**I.     PLAINTIFFS FAIL TO REBUT PREEMPTION OF STATE LAW CLAIMS.**

      **A.     Plaintiffs' State Law Claims Are Expressly Preempted.**

Plaintiffs' extensive discussion of express preemption is largely irrelevant because it ignores the text of the NSMIA's express preemption clause. The presumption against preemption is overcome where Congress has made clear its desire for preemption. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151-52 (2001). "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). The NSMIA preemption clause declares: "no law, rule, regulation, or order, or other administrative action of any State or any political subdivision thereof requiring, or with respect to, registration or qualification of securities, or registration or qualification of securities transactions, shall directly or indirectly apply to a security that [] is a covered security." 15 U.S.C. § 77r(a). If a security is a "covered security" as specified in § 77r(b) (and as here, per Defendants' Federal Brief), state-law claims "requiring, or with respect to registration or qualification of securities" are expressly preempted. *Id.* § 77r(a). The Sixth Circuit has recognized as much. *See Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 912 (6th Cir. 2007).

Plaintiffs' suggestion that the NSMIA's "savings clause," § 77r(c)(1), precludes preemption is also unavailing because the savings clause applies only to actions brought "by the securities commission … of any State" and focuses specifically (though not exclusively) on claims relating to "fraud or deceit." *Id.*; *see also* H.R. Rep. No. 104-864, at 40 (clause preserves authority of state regulators to "prevent fraud and broker-dealer sales practice abuses"); H.R. Rep. No. 104-

622, at 33-34. Plaintiffs are not a state "securities commission," and do not allege that Defendants engaged in any "fraud or deceit."

Plaintiffs also argue that the NSMIA is abrogated because it did not amend the savings provisions of the '33 Securities Act or the '34 Exchange Act. Pursuant to well established rules of statutory construction, however, the later-enacted and more specific NSMIA preemption provision prevails over the earlier enacted and more general savings clauses in the '33 Securities Act and '34 Exchange Act. *See F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (later enacted statutes prevail); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (specific statutes prevail over general statutes).

Finally, Plaintiffs' suggestion that § 77r(a) does not preempt state common law claims is incorrect. The Supreme Court has repeatedly rejected the formalistic distinction between statutory and common-law claims on which this argument is based. *See Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1429 (2014) ("state common-law rules fall comfortably within" preemption provision applying to state "laws, regulations, or other provisions"); *CSX*, 507 U.S. at 664; *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 520-21 (1992).[1]

### B. Plaintiffs' State Law Claims Are Preempted Because They Pose An Obstacle To The Federal Regulatory Scheme.

Plaintiffs' state law claims are also preempted because they pose an obstacle to the regulatory structure enacted by Congress and the SEC. Rule 15c2-11 is an important element of the regulatory scheme relating to securities markets. The rule specifies precisely what market makers must do before quoting securities on medium like the OTCBB. 17 C.F.R. § 240.15c2-11. Subjecting market makers to state-law claims and imposing state law obligations and liability on

---

[1] *Zuri-Invest AG v. Natwest Finance Inc.*, 177 F. Supp. 2d 189 (S.D.N.Y. 2001), upon which Plaintiffs rely, involved state common-law fraud claims, none of which related to the sale of unregistered securities. *Id.* at 191.

them for doing that which Rule 15c2-11 allows would upset the balance achieved by the federal regulatory framework. In fact, the SEC has twice considered and rejected changing Rule 15c2-11 to include the obligations Plaintiffs seek to impose on market makers through state law. Defs' State Br. at 4. If the state law claims are not preempted, the obligations they impose would "inevitably [] supplant the [] rules of the SEC on the same subject." *Guice v. Charles Schwab & Co.*, 674 N.E.2d 282, 291 (N.Y. 1996); *see also Orman v. Charles Schwab & Co.*, 688 N.E.2d 620, 625-26 (Ill. 1997); *Dahl v. Charles Schwab & Co.*, 545 N.W.2d 918, 925 (Minn. 1996).

Plaintiffs' argument that Rule 15c2-11 does not "purport to circumscribe the full scope of duties or obligations that parties to a securities transaction assume" is a red herring. Pls' State Opp. at 6. Defendants do not suggest that Rule 15c2-11 sweeps that broadly, but it *does* reflect the SEC's judgment about what broker-dealers and market makers must do to quote securities in secondary markets. Notably, the SEC promulgated Rule 15c2-11 pursuant to sections of the '33 Securities and '34 Exchange Acts, including provisions relating to the registration of securities. *See* 17 C.F.R. § 240.15c2-11 ("AUTHORITY" section). And the SEC, in exercising its authority under both Acts, did not require broker-dealers or market makers to verify whether the security is effectively registered or exempt from registration before quoting that security. *See* 17 C.F.R. § 240.15c2-11. Plaintiffs' attempt to impose a duty to verify registration based on state law is an impermissible end-run around this federal regulatory structure.

Moreover, contrary to Plaintiffs' suggestion, Congress *did* intend to provide certainty to those who comply with federal regulations like Rule 15c2-11. Congress declared that no "liability shall apply to any act done or omitted in good faith in conformity with any rule or regulation of" the SEC. 15 U.S.C. § 77s. In promulgating Rule 15c2-11, the SEC identified § 77s as a source of its authority. *See* 17 C.F.R. § 240.15c2-11 ("AUTHORITY" section). Thus, in enacting Rule 15c2-11, the SEC set up a regulatory structure on which market makers are

entitled to rely without fear of liability from some other quarter – such as state law – if they comply. *See Spicer v. Chi. Bd. Options Exch., Inc.*, No. 88 C 2139, 1992 WL 380929, at *3-4 (N.D. Ill. Dec. 10, 1992) (granting summary judgment to defendant who complied in good faith with SEC regulations).[2]

Even if this Court were to find that the state law claims are not completely preempted, then, at the very least, the longer limitations periods for those claims are preempted and Plaintiffs are bound by the one year federal period. In enacting a strict one-year limitations period, "Congress [] recognize[d] a definitive end to liability from suit." *Wuliger v. Christie*, 310 F. Supp. 2d 897, 913 (N.D. Ohio 2004).[3] Ample case law confirms that Plaintiffs cannot avoid clear congressional intent in setting a shorter limitations period "simply by characterizing [their] claims as state law claims." *AT & T Commc'ns of the Midwest v. Qwest Corp.*, No. 8:06CV625, 2007 WL 2743491, at *2 (D. Neb. Feb. 27, 2007); *see also Arctic Express, Inc. v. Del Monte Fresh Produce NA*, 366 B.R. 786, 792 & n.2 (S.D. Ohio 2007); *Firstcom, Inc. v. Qwest Commc'ns*, 618 F. Supp. 2d 1001, 1004-05 (D. Minn. 2007); *Goetz v. N.C. Dep't of Health and Human Servs.*, 692 S.E.2d 395, 402 (N.C. App. 2010).

## II.     PLAINTIFFS' STATE REGISTRATION CLAIMS SHOULD BE DISMISSED.

### A.     Plaintiffs Admit The Buyer-Seller Privity Requirement Applies To The State Blue Sky Laws At Issue.

Plaintiffs do not dispute that the Blue Sky laws of New Jersey, Illinois, South Carolina and Connecticut each follow federal securities law in requiring direct buyer-seller privity.[4]

---

[2] Plaintiffs' extensive reliance on *Cipollone* misses the mark. *Cipollone* was an express preemption case, not an obstacle preemption case. *See Cipollone*, 505 U.S. at 517. Moreover, the court ruled that some of plaintiff's common law claims were preempted pursuant to a provision that preempted the operation of state "law." Id. at 521, 524, 528.

[3] The *Wuliger* court's discussion of "inquiry notice" is inapplicable here because that discussion does not concern an alleged sale of unregistered securities. *See Wuliger*, 310 F. Supp. 2d at 909.

[4] The claims against BTIG under the California Blue Sky laws have been withdrawn. Opp. at 1.

Plaintiffs do not argue that buyer-seller privity is not required in any of these states but simply incorporate their Section 12(a)(1) "privity" argument from their Federal Brief. As such, Defendants incorporate their response to Plaintiffs' "privity" argument from Defendants' Federal Reply. Defs' Fed. Reply Br. at 8-11.

###     B.     The Alleged Sales Were Unsolicited And Are Subject To The Applicable State Law Exemptions.

The New Jersey, South Carolina and Connecticut Blue Sky laws each provide that a nonissuer transaction effected "by or through" a registered broker-dealer pursuant to an unsolicited order or offer to purchase is exempt from registration. *See* N.J. Rev. Stat. § 49:3-50(b)(3); S.C. Code § 35-1-202(6); Conn. Gen. Stat. § 36b-21(b)(4). In their Opposition Brief, Plaintiffs contend for the first time that their alleged purchases of unregistered Biozoom shares at issue were solicited – which they did not allege in their SAC and that these exemptions therefore do not apply. This contention mischaracterizes the role of market makers, which is to respond to the liquidity demands of buyers and sellers, rather than to solicit – that is, actively encourage – their orders. *See* Defs' Fed. Br. at 4-5, 19-20, n.15.[5]

Neither of the cases Plaintiffs cite has anything to do with "unsolicited offers" under the state Blue Sky statutes. And the cases that address the issue recognize that the word "unsolicited" under the exemption should be given its "non-technical," "plain [and] ordinary" meaning. *Schmid v. Langenberg*, 526 S.W.2d 940, 944-45 (Mo. Ct. App. 1975). Solicitation is "[t]he act or instance of requesting or seeking to obtain something; a request or petition." Black's Law Dictionary (9th ed. 2009). Courts interpreting the state exemptions referenced above hold that

---

[5] The state law unsolicited offer exemption is similar to the federal exemption for unsolicited brokers' transactions under Section 4(a)(4) of the Securities Act. *See* T. Hazen, Treatise on Law of Securities Reg. § 8.5. (2014). Accordingly, for the same reasons that Defendants' activities are "unsolicited" under the federal exemption, they are "unsolicited" under state securities laws. *See* Defs' Fed. Br. at 19-20; Defs' Fed. Reply Br. at 19-20.

"[a] solicited sale is one in which the salesman 'actively encourages the purchase or sale of a security by a client.'" *Home Indem. Co. v. Reynolds & Co.*, 187 N.E.2d 274, 279 (Ill. App. Ct. 1962); *Gordon v. Drews*, 595 S.E. 2d 864, 869 (S.C. Ct. App. 2004); *Schmid*, 526 S.W.2d at 944. By contrast, market makers who enter "price quotations are commonly understood as inviting an offer rather than making one." *Geiger v. S.E.C.*, 363 F.3d 481, 484 (D.C. Cir. 2004).

In *In re Laser Arms*, a case involving an analogous question of whether a market maker who was not in direct privity with the plaintiffs nonetheless "solicited" the plaintiffs' purchase, the court noted that market making, standing alone, cannot be deemed to "solicit." *In re Laser Arms*, 794 F. Supp. 475, 480, 482 & n.5 (S.D.N.Y. 1989). The court held that plaintiffs' conclusory allegation that defendants acted "in their capacity as market makers" and "solicited buyers" for the stock was insufficient. *Id.* Similarly, here, Plaintiffs' allegations fail to demonstrate that Defendants' solicited the Plaintiffs' alleged purchases.

In support of their position, Plaintiffs cite two state regulations that are completely inapposite. Pls' State Opp. at 10 n.3. The first is from Utah, whose securities laws Plaintiffs do not assert Defendants violated. The second, California's 10 CCR 260.105.7, is irrelevant. It does not state, as Plaintiffs suggest, that quotations on closed-access networks such as OTCBB are solicitations.

The only other source Plaintiffs rely on that mentions solicitation – the Penny Stock Disclosure Rule – includes in the definition of market makers "a dealer ***who does not provide quotations***," but who "holds itself out … ***by any means of advertising or solicitation***, as being willing to buy and sell a penny stock." Pls' State Opp. at 9-10 (citing 56 FR 19165-01, Release No. 34-29093 (Apr. 25, 1991)) (emphasis added). It does not state that either providing quotations or holding oneself out as willing to buy or sell stock constitutes solicitation.

Plaintiffs argue that market makers' sales are unsolicited only when they operate in an agency capacity "as a broker/agent of its own customer, not as a dealer/principal selling its own

- 6 -

inventory of securities." Pls' State Opp. at 11. But nothing in the text of FINRA Rule 6432 – the sole basis for Plaintiffs' argument – makes this distinction. On the contrary, the rule recognizes that market makers can receive "unsolicited customer order[s] … from another broker dealer."[6] Nor does Securities Act Release No. 6159 distinguish between market makers who, according to Plaintiffs' contention, act as "agents" or "principals." 44 Fed. Reg. 70349 (Dec. 6, 1979). That Release reaffirms that providing quotations, by itself, is insufficient to constitute solicitation. *Id.* at *3 ("the mere fact that a market maker who has previously made quotes on a continuous basis in the securities being sought during the period that the offer is made should not be viewed as a solicitation by the dealer….").

Plaintiffs also argue that the New Jersey and Connecticut exemptions each applies "on its face" to "agency" sales. Nothing in these exemptions refers to "agency" sales or even suggests that the exemption is limited to "agency" sales. Instead, they address "any nonissuer transaction effected by or through a registered broker-dealer pursuant to an unsolicited order or offer to buy." *See* N.J. Rev. Stat. § 49:3-50(b)(3); Conn. Gen. Stat. § 36b-21(b)(4). There is no support for the suggestion that these statutes' references to "customers" require that a broker-dealer act as an agent of its customer.[7]

Plaintiffs also argue that the Illinois exemption in 835 ILCS 5/3(G) does not apply to OTCBB-listed shares because the OTCBB is not specifically enumerated in that Section. However, Plaintiffs do not dispute that the OTCBB is an "automated quotation system" and

---

[6] Rule 6432 imposes certain obligations on "[a]ny member displaying a quote ***representing an unsolicited customer order*** … ***that was received from another broker-dealer***."

[7] Nor can Plaintiffs avoid the Connecticut rule that a broker-dealer "shall not be deemed to have solicited an order or offer to buy a security purchased by or through that broker-dealer merely because bid and offer quotations for the security were published in an interdealer quotation service." Conn. Agencies Regs. § 36b-31-21b-3. Neither the text of the rule nor any other authority supports Plaintiffs' suggestion (based on a misquotation of the rule) that its sole effect is to shield a buyer of securities where some other party publishes quotations.

identify no determination or regulation (and Defendants are aware of none) excluding the OTCBB from the reach of Section 5/3(G).

Finally, Plaintiffs assert that, to the extent that the "solicitation" issue depends on the circumstances of Defendants' conduct, it is not appropriate to resolve on a motion to dismiss. Plaintiffs, however, do not allege anywhere in the SAC that Defendants solicited bids or orders of Biozoom securities, either directly from Plaintiffs or indirectly through their brokers. Rather, Plaintiffs raise this argument for the first time in their Opposition.[8]

### C.   Plaintiffs Fail To Meet State Geographic Restrictions.

Plaintiffs acknowledge that an offer must originate from (or be accepted in) a state to be subject to its Blue Sky laws, but inconsistently assert that the offers here originated from **both** the OTCBB servers in New Jersey and certain Defendants' main corporate offices. An offer cannot originate from two distinct locations. Nor do the allegations cited by Plaintiffs support their legal conclusion that the offers at issue here originated from either location.

Plaintiffs identify no allegations of any *conduct* by Defendants in or directed to New Jersey that would subject Defendants to New Jersey's Blue Sky law. Nor, with the exception of KCG and Pershing, do Plaintiffs even allege a presence in New Jersey by Defendants. Instead, Plaintiffs claim under Count II that Defendants are subject to New Jersey law for no reason other than that the OTCBB servers are located in New Jersey. Pls' State Opp. at 15; see also SAC ¶¶ 102-03.

Plaintiffs cite no authority that the location of a third party's servers alone subjects Defendants to New Jersey state law.[9] And such a theory is inconsistent with the plain meaning of

---

[8] *State v. Andresen*, 256 Conn. 313 (2001), cited Pls' State Opp. at 14, is inapposite. There, a criminal defendant waived a statutory exemption by not raising it before trial. The distinct issue here is whether, as a matter of law, the exemption applies to the facts alleged.

[9] Plaintiffs' theory would subject Defendants to the jurisdiction of unlimited states purely by the happenstance of where the OTCBB or other quotation mediums choose to locate their servers. Defendants cannot be said to have availed themselves of the laws of such jurisdictions on that

the term "originate" and, indeed, Plaintiffs' allegations. Plaintiffs admit the OTCBB is a "quotation medium" (SAC ¶ 38) through which quotations were "disseminated" and "communicated." Pls' State Opp. at 15.

The SAC also fails to satisfy the Blue Sky laws' geographical requirements on the basis of allegations regarding certain Defendants' business operations in New Jersey, South Carolina, and Connecticut (Counts VI, XXI, XV). Plaintiffs' generalized allegations are facially insufficient to support a claim that any offer or sale of Biozoom securities originated in those states. As for KCG, for example, the SAC alleges that a KCG office located in New Jersey "controlled, directed and/or over[saw]" KCG's trades, but not that KCG sold or offered to sell from that New Jersey office. SAC ¶ 131.

*In re Nat'l Century Fin. Enters.*, 846 F. Supp. 2d 828 (S.D. Ohio 2012), does not hold otherwise. There, plaintiffs asserted they were entitled as a matter of equity to assert the Blue Sky laws of those jurisdictions in which *plaintiffs* were domiciled, notwithstanding that it was undisputed that the transaction occurred in other states. *Id*. at 888. The court rightly dismissed those claims, and had no cause to discuss, much less to hold, that the location of the *defendants*' principal place of business can satisfy the geographic requirement. *Id*.

### D.    Plaintiffs Fail To Plead Compliance With The Illinois Notice Requirement.

Plaintiffs' response to having failed to adequately plead compliance with the six-month notice requirement of Section 5/13(B) of Illinois' Blue Sky law is, in essence, limited to a request for leave to again amend their complaint. Plaintiffs merely state that they provided notice "within six months" of when the named Plaintiffs and the members of the Class "acquired

---

(Footnote Cont'd From Previous Page)

basis alone. *See e.g., Amberson Holdings LLC v. Westside Story Newspaper*, 110 F. Supp.2d 332, 336 (D.N.J. 2000) ("refus[ing] to hold that inter-computer transfers of information, which are analogous to forwarding calls to a desired phone number through a switchboard," would subject a defendant to personal jurisdiction").

knowledge." This is a legal conclusion. *See Ashenden v. Lloyd's of London*, No. 96 C 852, 1996 WL 717464, *4 (N.D. Ill. Dec. 9, 1996); *Bell v. Tibbals*, No. 1:13-CV-2843, 2014 WL 2574631, *3 (N.D. Ohio June 9, 2014). In asserting Count XIII on behalf of unidentified Class members, Plaintiffs cannot be asserting ***actual*** knowledge of each such purchaser. Constructive knowledge qualifies under Section 5/13(B). *Ansbro v. Se. Energy Grp., Ltd.*, 658 F.Supp. 566, 572 (N.D. Ill. 1987). However, *when* a purchaser acquires constructive knowledge is a question of law. *See Banco Popular v. Beneficial Sys., Inc.*, 780 N.E.2d 1113, 1125 (Ill. Ct. App. 2002).

Plaintiffs are necessarily asserting that the knowledge of counsel is imputed to unidentified Class members. *See Ansbro*, 658 F.Supp. at 572. The original complaint alleged that Plaintiffs' counsel conducted a pre-filing review of Biozoom's regulatory filings, its press releases, and the SEC proceedings of July 2013. Yet Plaintiffs fail to allege that they or their counsel learned the sales were voidable after March 18, 2014 (six months pre-SAC).

## III.  PLAINTIFFS' CONTRACT CLAIMS SHOULD BE DISMISSED.

Plaintiffs' response to Defendants' motion to dismiss the contract claims is largely based on a misapprehension of Defendants' arguments. Defendants do not merely argue that Plaintiffs' claims fail because they did not attach a copy of their alleged agreements to the SAC or because they do not allege that they purchased securities from Defendants at an agreed price. Plaintiffs' claims also fail because Plaintiffs do not allege a meeting of the minds on the agreement that Defendants purportedly breached: to deliver registered and freely tradable securities.

Plaintiffs do not allege in the SAC (as they now insist) that Defendants agreed to sell registered and freely tradable stock. The SAC contains no allegations demonstrating the "substance" of the alleged contracts here. At best, Plaintiffs contend that the stock was purportedly registered and freely tradable because it was quoted on OTCBB. Plaintiffs' bare conclusory statements concerning offer, acceptance and consideration are insufficient to form the

- 10 -

basis of a breach of contract claim. *See Jones v. Gilstrap*, 343 S.E. 2d 646, 648 (S.C. Ct. App. 1986); *Vargas v. Specialized Educ. Servs., Inc.*, No. HHDCV126028454, 2013 WL 6671230, at *7 (Conn. Super. Ct. Nov. 19, 2013); *Cordero v. Bank of America, N.A.*, No. CV 11-08921 DDP (MRWx), 2013 WL 589185, at *4 (C.D. Cal. Feb. 14, 2013).

Plaintiffs contend trade confirmations alone are sufficient to establish the existence of a contract, citing *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 425 (S.D.N.Y. 2001). But they misread *Adler*, which merely upheld a bankruptcy court's finding that trade confirmations can demonstrate contract acceptance where the parties agreed in writing that securities sales would only become binding upon transmission of trade confirmations. *Id.* at 428.[10]

Further, Plaintiffs argue that they have sufficiently alleged contract damages by setting forth a "but for" theory of causation: but for the fact that Defendant sold them shares of Biozoom, Plaintiffs would not have suffered losses when the stock price later dropped. Such a theory is not sufficient. In order to prove damages, Plaintiffs must demonstrate not only that the loss would not have been incurred but for Defendants' alleged breach, but also that "any loss was a natural and foreseeable consequence of the breach that had been reasonably contemplated by the parties at the time the contract was made." *Money First Fin. Servs., Inc. v. Montgomery*, 2005 WL 7083597, at *2 (S.C. Ct. App. Mar. 9, 2005); *see also Vu. v. Cal. Commerce Club*, 58 Cal. App 4th 229, 233 (1997); Cal. Civ. Code §3300; *Warning Lights & Scaffold Serv., Inc. v. O&G Indus., Inc.*, 102 Conn. App. 267, 271 (2007). Plaintiffs have not alleged that the damages they claim were a foreseeable consequence of Defendants' supposed breach that was contemplated by the parties at

---

[10] To the extent Plaintiffs attempt to impute representations regarding Biozoom's registration status and the tradability of the shares into the "substance" of the contract, Plaintiffs do not plausibly allege that Defendants somehow warranted that the securities were "registered and freely tradable." Defs' State Br. at 18. Moreover, unlike in *Barbourville,* Plaintiffs here do not describe an agreement in the SAC which contains the provision they claim was breached. *Barbouille Diagnostic Imaging Center v. Philips Medical Systems, Inc.,* No. 12-191-GFVT, 2013 WL 4459860, *4 (E.D. Ky Aug. 16, 2013).

the time of contracting; nor do they address this point in their opposition. And the SAC does not plausibly allege that Plaintiffs' trading losses were directly and proximately caused by Defendants' alleged sale of unregistered securities, rather than by a pump-and-dump scheme.

In fact, Plaintiffs' damages theory is belied by Plaintiffs' allegations in the SAC. Plaintiffs assert that Defendants' sales of unregistered stock caused the value of the stock to be inflated before trading was stopped by the SEC. Pls' State Opp. at 20 (citing SAC ¶ 91). The SAC, however, alleges that the value of the stock was inflated by the "pump and dump" scheme in which Defendants are not alleged to have played any role. SAC ¶¶ 81-82, 91-92. Under Plaintiffs' own allegations, even if the Biozoom stock had been freely tradable when purchased by Plaintiffs, its value would have been inflated by that scheme.

## IV.    PLAINTIFFS' NEGLIGENCE CLAIMS SHOULD BE DISMISSED.

### A.    Plaintiffs Fail To Sufficiently Plead Negligence.

Plaintiffs argue they have sufficiently alleged that Defendants owed a duty as market makers to determine the shares they sold to investors were "duly registered and freely tradable." Plaintiffs do not point to any state law or rule in support of their claim that Defendants owed such a duty as market makers of OTCBB-listed securities. Instead, Plaintiffs cite only Rule 15c2-11 as support for their claim that Defendants owed a duty based on their role as market makers, entirely ignoring the "unsolicited customer interest" and piggyback exceptions to this Rule. *See* Defs' Fed. Br. at 6-7.[11]

Plaintiffs attempt to distinguish *Spicer v. Chi. Bd. Options Exch., Inc.*, No. 88 C 2139, 1990 WL 172712 (N.D. Ill. Oct. 30, 1990) by pointing out that *Spicer* concerned securities traded on an exchange, not over the counter. The reasoning of the court in *Spicer*, however, was

---

[11] South Carolina does not impose a duty on brokers to investigate unknown potential risks of an investment. *See Cowburn v. Leventis*, 619 S.E.2d 437, 447 (S.C. Ct. App. 2005); *Vacation Time of Hilton Head Island, Inc. v. Lighthouse Realty, Inc.*, 332 S.E.2d 781, 785 (S.C. Ct. App. 1985).

not dependent on the defendant's status as an exchange. Indeed, each of the four reasons on which the *Spicer* court relied in ruling that market makers should not be exposed to negligence claims apply equally to the OTCBB: (1) "[n]egligence is a poor standard by which to test discretionary [trading] decisions … and actions that had to be made quickly"; (2) "negligence [actions] would … make the courts, rather than the SEC, the primary watchdogs for securities markets, substantially defeating the intricate federal scheme of SEC enforcement and self-regulation"; (3) "every decision or action by … personnel on the floor would be subject to litigation and judicial review"; and (4) "a negligence standard … 'might chill the process of self-regulation.'" *Id.* at *16-17 (citations omitted).

Plaintiffs' opposition fails even to respond to Defendants' argument (Fed. Br. at 21-22) that, even if Plaintiffs had demonstrated Defendants owed a duty, there is nothing in the SAC to suggest Defendants owed that duty ***to Plaintiffs***. Rather, the allegations in the SAC establish that there was no relationship at all between Defendants and Plaintiffs (who were not aware of Defendants' identities until they asked their brokers).

Moreover, Plaintiffs fail to allege proximate causation linking Defendants' alleged conduct to Plaintiffs' alleged injury. *See supra* at 11-12. Plaintiffs' assertion, in ¶ 127, that Plaintiffs "were injured as a result of Defendants' negligence" is wholly conclusory and cannot support a claim for negligence. *See Anderson v. Boston Scientific Corp.*, No. 1:12-CV-00762, 2013 WL 632379, *2 (S.D. Ohio Feb. 20, 2013).

### B.     Plaintiffs' Negligence Claims Are Barred By The Economic Loss Doctrine.

Plaintiffs concede the economic loss doctrine precludes recovery in negligence for purely economic loss. They also do not dispute that their alleged losses are purely economic. Instead, Plaintiffs suggest that "certain exceptions" to the economic loss doctrine "may apply."

- 13 -

Plaintiffs' reliance on an Ohio state court decision is irrelevant, as Plaintiffs have not alleged a negligence claim under Ohio law and have offered no authority suggesting the rule articulated in the Ohio decision applies in any other state.

In relying on *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84 (Ill. Ct. App. 2002), Plaintiffs appear to suggest that the economic loss doctrine does not apply because this case involves negligent misrepresentations. However, Plaintiffs do not allege that Defendants negligently misrepresented anything. *See, e.g.*, SAC ¶¶ 123-28. To the contrary, Plaintiffs' negligence claims arise from an alleged failure to conduct adequate diligence. *See, e.g.*, SAC ¶¶ 126-27. Tellingly, Plaintiffs do not even argue that they alleged negligent misrepresentation. In fact, Plaintiffs merely state that they "implicitly allege that Defendants misrepresented that the Biozoom securities sold to Plaintiffs were registered securities when they were not." Pls' State Opp. at 22. In any event, *Prime Leasing,* the case on which Plaintiffs rely, does not apply here because none of the Defendants is alleged to be "in the business of supplying information for the guidance of others in business transactions." *Prime Leasing*, 332 Ill. App. at 311-12; *see also First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 335 (Ill. 2006) ("[T]he negligent misrepresentation exception … is not applicable if the information supplied is merely ancillary to the sale of a product.").

Under these circumstances, the economic loss rule warrants dismissal of Plaintiffs' negligence claims. *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio 2012) (exception to economic loss rule did not apply: "Plaintiff was free to plead a claim for … negligent misrepresentation if the facts supported such a claim for relief. He failed to do so, and cannot amend his claim in his memorandum in opposition.").

## V.     PLAINTIFFS' UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED.

Plaintiffs fail to rebut any of the three dispositive reasons their unjust enrichment claim must be dismissed. First, Plaintiffs fail to establish a sufficient relationship with Defendants. The parties were not in privity (*supra* at 4-5) and the relationship between them is too attenuated to support an unjust enrichment claim under New York law. The relationship here is even more attenuated than that in *Georgia Malone & Co, Inc. v. Rieder*, 973 N.E.2d 743 (N.Y. 2012), in which an unjust enrichment claim was dismissed even though the defendant knew the identity of the plaintiff. *Id.* at 747. Plaintiffs argue only that Defendants were aware that the shares were being sold to "the investing public/someone." Pls' State Opp. at 22. If the *Georgia Malone* defendant's specific knowledge of the plaintiff's identity does not support an unjust enrichment claim, an abstract awareness of "someone" cannot either. Second, Plaintiffs fail to plausibly allege that Defendants had any part in the alleged wrongdoing by the Argentinian Parties. In *Georgia Malone*, the unjust enrichment claim also was dismissed because any wrongdoing was by a third party. 973 N.E.2d at 748. Finally, Plaintiffs contend that that they properly pled damages in the amount of the purchase price of the shares. This is inadequate under New York law. *Precision Testing Labs., Ltd. v. Kenyon Corp. of Am.*, No. 84 CIV. 5424 (IBC), 1988 WL 34825, at *2 (S.D.N.Y. Apr. 6, 1988) ("damages for unjust enrichment are calculated by reference to the actual value of the benefit to the defendant and not the market value of the services rendered by the plaintiff").

## CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiffs' state law claims with prejudice, and grant any further relief that the Court may deem just and proper.

Dated:  December 4, 2014

Respectfully Submitted,

/s/ William J. O'Neill
William J. O'Neill (0029936)
woneill@mcdonaldhopkins.com
Jennifer D. Armstrong (0081090)
jarmstrong@mcdonaldhopkins.com
MCDONALD HOPKINS LLC
600 Superior Ave. East, Suite 2100
Cleveland, Ohio  44114
Phone:  (216) 348-5400
Fax:  (216) 348-5474
Attorneys for Defendant
Citadel Securities, LLC

Of Counsel

Donald A. Tarkington (pro hac vice)
dtarkington@novackmacey.com
Brian E. Cohen (pro hac vice)
bcohen@novackmacey.com
Matthew J. Singer (pro hac vice)
msinger@novackmacey.com
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, Illinois 60606
Phone: (312) 419-6900
Attorneys for Defendant
Citadel Securities, LLC

/s/ David H. Wallace
David H. Wallace (0037210)
dwallace@taftlaw.com
Michael J. Zbiegien, Jr. (0078352)
mzbiegien@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, OH 44114-2302
Phone: (216) 241-2838
Fax: (216) 241-3707

/s/ Brian J. Lamb
Brian Lamb (0055447)
Brian.Lamb@thompsonhine.com
Thomas Ritzert (0085370)
Thomas.Ritzert@thompsonhine.com
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Phone:  (216) 566-5500
Fax: (216) 566-5800
Attorneys for Defendants KCG Americas LLC,
Citigroup Global Markets Inc., Automated
Trading Desk Financial Services, LLC,
Canaccord Genuity Inc., Collins Stewart Inc.,
UBS Securities LLC, and vFinance
Investments, Inc.

Of Counsel

Richard De Palma (pro hac vice)
richard.depalma@thompsonhine.com
Barry M. Kazan (pro hac vice)
barry.kazan@thompsonhine.com
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, NY 10017
Phone: (212) 344-5680
Fax: (212) 344-6101
Attorneys for vFinance Investments, Inc.

Of Counsel

Joseph Lombard (pro hac vice)
jlombard@mmlawus.com
MURPHY & McGONIGLE, P.C.
555 13th Street, N.W.
Washington, DC 20004
Phone:  (202) 661-7000
Fax:  (202) 661-7059

Russell S. Sayre (pro hac vice)
sayre@taftlaw.com
Aaron M. Herzig (0079371)
aherzig@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
Attorneys for Defendants Pershing LLC and
Maxim Group LLC

*Of Counsel*

Ian H. Hummel (pro hac vice)
ihummel@maximgrp.com
Associate General Counsel
MAXIM GROUP LLC
405 Lexington Ave.
New York, NY 10174
Phone: (212) 895-3889
Fax:  (212) 895-3860
Attorney for Defendant Maxim Group LLC

*/s/ Katharine Szczepanik Jones*
Katharine Szczepanik Jones (0082389)
katharine.jones@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
3139 Research Boulevard
Dayton, Ohio 45420
Phone: (937) 395-2389
Fax: (937) 395-2200
Attorneys for Defendant UBS Securities LLC

*Of Counsel*

Fraser L. Hunter, Jr. (pro hac vice)
fraser.hunter@wilmerhale.com
David Sapir Lesser (pro hac vice)
david.lesser@wilmerhale.com
Jamie S. Dycus (pro hac vice)
jamie.dycus@wilmerhale.com
Ari Savitzky (pro hac vice)
ari.savitzky@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP

Michael V. Rella (pro hac vice)
mrella@mmlawus.com
MURPHY & McGONIGLE, P.C.
1185 Avenue of the Americas, 21st Floor
New York, New York  10036
Phone:  (212) 880-3973
Fax:  (212) 880-3998
Attorneys for Defendant
KCG Americas LLC

*Of Counsel*

Adam S. Hakki (pro hac vice)
Adam.Hakki@Shearman.com
Agnès Dunogué (pro hac vice)
Agnes.Dunogue@Shearman.com
Elizabeth J. Stewart (pro hac vice)
Elizabeth.Stewart@Shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Phone: (212) 848-4000
Fax: (212) 848-7179
Attorneys for Defendants Citigroup Global
Markets Inc. and Automated Trading Desk
Financial Services, LLC

*Of Counsel*

Anthony S. Fiotto (pro hac vice)
afiotto@goodwinprocter.com
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Phone: (617) 570-1324
Fax: (617) 523-1231

William J. Harrington (pro hac vice)
wharrington@goodwinprocter.com
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Phone: (212) 459-7140
Fax: (212) 355-3333
Attorneys for Defendants Canaccord Genuity

7 World Trade Center
250 Greenwich Street
New York, New York 10007
Phone: (212) 230-8800
Fax: (212) 230-8888
Attorneys for Defendant UBS Securities LLC

*/s/ Steven M. Malina*
Steven M. Malina (pro hac vice)
malinas@gtlaw.com
Brett M. Doran (pro hac vice)
doranb@gtlaw.com
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Phone: (312) 45-8400
Fax: (312) 456-8435
Kurt A. Kappes (pro hac vice)
kappesk@gtlaw.com
GREENBERG TRAURIG, LLP
1201 K. Street, Suite 1100
Sacramento, CA 95814
Phone: (916) 442-1111
Fax: (916) 448-1709
Attorneys for G1 Execution Services, LLC and
E-Trade Capital Markets LLC

Inc. and Collins Stewart Inc.

*/s/ Hugh E. McKay*
Hugh E. McKay (0023107)
hmckay@porterwright.com
Tracey L. Turnbull (0066958)
tturnbull@porterwright.com
Tracy S. Francis (0080879)
tfrancis@porterwright.com
PORTER WRIGHT MORRIS & ARTHUR LLP
950 Main Avenue, Suite 500
Cleveland, OH 44113
Phone: (216) 443-9000
Fax: (216) 443-9011
Attorneys for BTIG, LLC

*Of Counsel*

Kenneth G. Hausman (pro hac vice)
kenneth.hausman@aporter.com
Jonathan W. Hughes (pro hac vice)
jonathan.hughes@aporter.com
Jeremy Kamras (pro hac vice)
jeremy.kamras@aporter.com
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111–4024
Phone: (415) 471-3100
Fax: (415) 471-3400
Attorneys for BTIG, LLC

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, Brett M. Doran, certify that the foregoing memorandum adheres to the page limitation set forth in Local Rule 7.1(f) as modified for this case by the Court's October 9, 2014 Order concerning Defendants' Omnibus Briefing on Motions to Dismiss (dkt. #88). This case has been assigned to the standard track.

*/s/ Brett M. Doran*
Brett M. Doran (pro hac vice)
doranb@gtlaw.com
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Phone: (312) 45-8400
Fax: (312) 456-8435
Attorney for G1 Execution Services, LLC and
E-Trade Capital Markets LLC

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2014, a copy of the foregoing was filed electronically with the Court's Case Management / Electronic Case Files (CM/ECF) docketing system. Notice of this filing will be sent by operation of the CM/ECF system. Notice of this filing will also be sent by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the CM/ECF system.

*/s/ Brett M. Doran*
Brett M. Doran (pro hac vice)
doranb@gtlaw.com
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Phone: (312) 45-8400
Fax: (312) 456-8435
Attorney for G1 Execution Services, LLC and
E-Trade Capital Markets LLC
