# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re Biozoom, Inc. Securities Litigation. | Civil Action No.: 1:14-cv-01087 <br><br> Judge James S. Gwin |

# DEFENDANTS' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

Plaintiffs' motion aims to resurrect their dismissed Section 12(a)(1) claims against defendants Automated Trading Desk Financial Services, LLC ("ATD"), Citigroup Global Markets Inc. ("Citigroup"), and UBS Securities LLC ("UBS").  Although styled as a motion for leave to amend, in substance Plaintiffs' request is for reconsideration of the Court's February 26, 2015 Opinion and Order (Dkt. 127) dismissing their claims.  Plaintiffs have not met the high bar required to sustain a motion for reconsideration as they did not and cannot demonstrate that the Court's decision was based on a clear error of law or previously unavailable evidence.

Moreover, even if this Court were to construe Plaintiffs' motion as an ordinary request for leave to amend, all of the relevant factors weigh against granting Plaintiffs a post-dismissal third amendment of their complaint.  In two previous amendments of their complaint, Plaintiffs elected not to include any allegations as to the "settlement" or "delivery" date for any particular alleged sale of Biozoom, Inc. ("Biozoom") stock—despite having the information in hand and ample opportunity to present it.  Plaintiffs chose instead to wait until *after* this Court's decision on Defendants' motion to dismiss.  If Plaintiffs' motion is granted, this wait-and-see approach will have prejudiced the undersigned Defendants and wasted the Court's resources by requiring substantial time and energy to be expended at the motion to dismiss stage on a preliminary draft of Plaintiffs' complaint.  Courts routinely deny leave to amend under such circumstances.  Even if it were otherwise, the requested amendment is futile because the proposed third amended complaint still would not tie any purported timely transaction date to any particular defendant and relies on a theory of liability that is contrary to the statutory text.

For these reasons, as more fully discussed below, the undersigned Defendants respectfully submit that Plaintiffs' motion should be denied.

1

BACKGROUND

A.  The Original And Amended Complaints

On May 20, 2014, Charles C. Corso, acting as trustee for the Anthony O. Corso Living Trust ("Corso"), filed a putative class action against KCG Americas LLC ("KCG"), seeking to pursue remedies under Section 12(a)(1) of the Securities Act of 1933 (the "'33 Securities Act") in connection with the alleged sale of unregistered securities by KCG to Corso.  Plaintiff Corso's complaint did not contain any allegations regarding the "delivery" or "settlement" of the Biozoom shares that KCG purportedly sold to Corso.  Compl. at 10 (Dkt. 1).

On June 24, 2014, new plaintiffs, including Stuart Spiteri ("Spiteri"), along with plaintiff Corso, filed an Amended Complaint ("AC"), adding new defendants—including ATD, Citigroup, and UBS,[1] again asserting a single claim for violation of Section 12(a)(1) based on alleged sales of unregistered securities.  Plaintiffs attached PSLRA Certifications that reflected transaction dates for the alleged sales and purchases at issue, and indicated that the last transaction date for Plaintiff Corso was June 19, 2013, and the last transaction date for Plaintiff Spiteri was June 21, 2013.  *See* Am. Compl., Pls.' Certifications (Dkt. 6-1) ("PSLRA Certifications").  As with the initial complaint, however, neither the AC nor the PSLRA Certifications contained any allegations regarding the delivery or settlement of the Biozoom shares that Defendants purportedly sold to Plaintiffs.  Am. Compl. at 15-17 (Dkt. 6).

---

[1]  The AC also added Defendants Citadel Securities LLC, G1 Execution Services, LLC, E-Trade Capital Markets LLC, BTIG, LLC, Canaccord Genuity Inc., Collins Stewart Inc., Pershing LLC, and Maxim Group LLC (collectively with ATD, Citigroup, and UBS, the "Later-Sued Defendants").  Plaintiffs' present motion, however, seeks to revive dismissed claims only against ATD, Citigroup, and UBS.

On September 18, 2014, Plaintiffs filed a Second Amended Complaint ("SAC").[2] Once again, Plaintiffs alleged that Defendants violated Section 12(a)(1) based on alleged sales of Biozoom securities to Plaintiffs.  The SAC incorporated and relied on the sale dates provided in the PSLRA Certifications.  SAC ¶¶ 7-21.  But the SAC did not allege additional violations based on the unlawful delivery of Biozoom securities; nor did it allege delivery dates for any particular transaction.  Instead, Plaintiffs offered the conclusory statement that "Defendants' misconduct continued until the delivery of the last shares they sold on June 24, 2013, which delivery took place, upon information and belief, on June 27, 2013."  Second Am. Compl. ¶ 91 (Dkt. 62).

### B. The Scheduling Order

The Court issued a Standard Track Scheduling Order on September 29, 2014 (the "Scheduling Order").  Under the Scheduling Order, the deadline to add parties or amend pleadings was October 20, 2014.  Scheduling Order at 1 (Dkt. 73-1).  Plaintiffs did not further amend their Complaint to add any allegations regarding settlement or delivery before the October 20, 2014 deadline.

### C. The Court Dismisses Plaintiffs' Section 12(a)(1) Claims As Untimely Against The Later-Sued Defendants

Defendants collectively moved on October 23, 2014 to dismiss Plaintiffs' Section 12(a)(1) claims as asserted in the operative SAC with prejudice because, among other reasons, those claims were brought outside the one-year limitations period against the Later-Sued Defendants.  Defendants argued that the Section 12(a)(1) violation alleged by Plaintiffs was an unlawful sale of Biozoom securities (not an unlawful delivery) and the last such alleged sale (per the PSLRA Certifications) was June 21, 2013, more than one year before Plaintiffs brought

---

[2]     The SAC added two new Plaintiffs and additional Defendant, vFinance Investments, Inc.

Section 12(a)(1) claims against the Later-Sued Defendants. *See* Defendants' Brief in Support of Motion to Dismiss Plaintiffs' Section 12(a)(1) Claims at 9-12.

In response, Plaintiffs contended that claims for Section 12(a)(1) violations based on the sale of unregistered securities would still be timely so long as the "delivery" or "settlement" date of the transaction occurred within the limitations period, and that the SAC's allegations were sufficient to plead timely claims. *See* Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss Plaintiffs' Section 12(a)(1) Claims ("Pl. Opp'n Br.") at 8-11. Plaintiffs cited an SEC regulation to support the proposition that all trades settle three days after the transaction, arguing that three days should be added to every date provided in the PSLRA Certifications for purposes of the statute of limitations analysis—but *still* did not specify dates of settlement or delivery for any particular alleged sale. *See id.*

During oral argument, in response to the Court's statement that the SAC refers to sales and purchases that took place over a year before the filing of the AC, and the Court's related questioning, Plaintiffs claimed that they *could* amend their complaint again to assert purported settlement dates, if needed. *See* Transcript of Motion Hearing ("Tr.") 19-20 (Dkt. 125). But they *still* did not identify settlement or delivery dates for any particular transaction during argument or thereafter; nor did they file a motion for leave to amend.

On February 26, 2014, the Court issued an Opinion and Order which, among other things, noted that "Plaintiffs have not alleged the delivery date for any particular sale," and granted Defendants' motion to dismiss Plaintiffs' Section 12(a)(1) claims against the Later-Sued Defendants as untimely. Opinion and Order (Feb. 26, 2015) ("Op.") at 9, 38.

On March 9, 2015, nearly five months after the deadline set by the Court for amending pleadings, and after the dismissal of their federal claims against the moving Defendants,

4

Plaintiffs requested leave to file a Third Amended Complaint ("TAC"). In their proposed TAC, Plaintiffs finally attempt to allege "delivery" and "settlement" dates, based on purported trade confirmations, for a few purchases that Plaintiff Spiteri allegedly made, in an acknowledged effort to "add back" defendants ATD, Citigroup, and UBS. *See* Declaration of Alan Rosca (Mar. 9, 2015) ("Rosca Decl.") (Dkt. 129-3) Exs. A & B; Plaintiffs' Memorandum of Law in Support of Motion for Leave to File a Third Amended Complaint ("Pl. Mot.") at 5.[3] The proposed TAC is otherwise unchanged from the SAC.

## ARGUMENT

**I. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEY IDENTIFY NO BASIS TO RECONSIDER THE COURT'S FEBRUARY 26 OPINION AND ORDER**

Although Plaintiffs purport to seek leave to amend under the standards of Rule 15, their attempt to "add back three defendants" (Pl. Mot. 5), as to which the Court has dismissed all claims with prejudice,[4] is instead properly construed as a motion for reconsideration of the Court's February 26, 2015 Opinion and Order. *See MedApproach Holdings, Inc. v. Hawkins*, No. 3:11-cv-1199, 2014 WL 317710, at *5 (M.D. Tenn. Jan. 28, 2014) ("[A]lthough styled as a request for 'leave to amend,' [plaintiff's] request is essentially a request for the court to reconsider and vacate its previous order dismissing all claims related to those [defendants]."); *Zepeda v. Sullivan*, No. 1:06-cv-01391, 2012 WL 113033, at *2 (E.D. Cal. Jan. 12, 2012)

---

[3] Plaintiffs also seek to add allegations as to purchases that plaintiff Corso allegedly made, in connection with the claims against KCG.

[4] Rule 41(b) of the Federal Rules of Civil Procedure provides that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under [Rule 41] . . . operates as an adjudication on the merits." The Sixth Circuit has recognized that where, as here, the dismissal order "does not indicate that the dismissal was without prejudice," the dismissal is with prejudice under Rule 41(b). *Alsup v. Int'l Union of Bricklayers & Allied Craftsmen of Toledo, Ohio, Local Union No. 3*, 902 F.2d 1568, Nos. 87-3930, 87-3948, 1990 WL 67375, at *2 n.3 (6th Cir. May 22, 1990).

5

("Plaintiff's motion acts, in part, as a request for reconsideration . . . because Plaintiff seeks to reinstate claims that the Court dismissed . . . ."), *aff'd*, 543 F. App'x 729 (9th Cir. 2013). Plaintiffs do not and cannot demonstrate that any reconsideration is warranted.

Reconsideration is typically appropriate only "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (same). "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue." *Cox v. TeleTech@Home, Inc.*, No. 1:14-CV-0993, 2015 WL 668988, at *1 (N.D. Ohio Feb. 17, 2015) (Gwin, J.) (internal quotation marks omitted). Where a motion for reconsideration is based on "new" evidence, that evidence must have been "previously unavailable." *CGH Transport, Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 823 (6th Cir. 2008) (affirming denial of reconsideration where it was "hard to imagine how an affidavit from one of [plaintiff's] own witnesses would have been previously unavailable"); *see also Indiana State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 510 (6th Cir. 2013) (Gwin, J., concurring) ("Simple reargument of evidence that had been available at the time of the earlier decision is usually not enough to warrant reconsideration."); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 391 (S.D.N.Y. 2003) (denying reconsideration and leave to amend where "the purportedly 'new' information was within

6

plaintiffs' knowledge before argument on the motion to dismiss" and cautioning that plaintiffs "cannot hold such 'evidence' back in hopes of having yet a third bite of the proverbial apple").

Here, Plaintiffs point to no change in law nor any error by the Court.  Rather, they ask the Court to reinstate dismissed claims based on trade confirmations purporting to show settlement dates for their trades—*evidence that has been available to them since before this case began*. *See* Rosca Decl. Exs. A & B.  As the Court has noted, Plaintiffs did not allege such settlement dates, or present such trade confirmations, in their initial, Amended, or Second Amended Complaints, or in their PSLRA Certifications, or even in their briefing in response to Defendants' motion to dismiss (including their sur-reply).  *See* Op. at 9.  Plaintiffs also chose not to provide these dates at argument or thereafter before the Court ruled.  Plaintiffs have not suggested that they were *unable* to do so, however, and the proffered trade confirmations appear on their face to have been provided to Plaintiffs by their brokers contemporaneously with Plaintiffs' trading activity.[5]  Indeed, Plaintiffs acknowledged at oral argument that they were able to add the allegations they now seek to introduce:  "If we have to amend the complaint, if we are permitted the opportunity and we find ourselves in a situation where we're granted leave to amend, we could amend to assert the three-day period."  Tr. at 20:10-13.  Nevertheless, Plaintiffs chose not to do so, instead waiting until after the Court ruled on Defendants' motion to dismiss. As noted above, courts have repeatedly rejected such gamesmanship.  Under controlling Sixth

---

[5]     Although, in seeking to avoid dismissal, Plaintiffs previously represented to the Court that their trades were *solicited*, *see* Pl. Opp'n Br. at 8, 9, 11, 13, Corso's trade confirmation bears an address for Corso and states:  "In accordance with your instructions we are confirming the above unsolicited transaction(s) . . . ."  Rosca Decl. Ex. A (Dkt. 129-4).  Plaintiff Spiteri's trade confirmations appear to be incomplete (the proffered pages bear the notations "Page 3 of 4" and "Page 3 of 3") and display no address, but similarly state:  "Unless you have already instructed us differently, we will hold this security in your account . . . Unsolicited trade."  Rosca Decl. Ex. B (Dkt. 129-5).

7

Circuit law, Plaintiffs' belated proffer is plainly insufficient to warrant reconsideration, and the motion should be denied.

## II. EVEN UNDER THE STANDARDS APPLICABLE TO A MOTION TO AMEND, ALL RELEVANT FACTORS DEMONSTRATE THAT PLAINTIFFS SHOULD NOT BE ALLOWED TO AMEND, YET AGAIN, AFTER DISMISSAL

"Once the scheduling order's deadline [for amendments] passes, a plaintiff must first show good cause under Rule 16(b) for failure to earlier seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003); *see also Salyers v. City of Portsmouth*, 534 F. App'x 454, 461 (6th Cir. 2013) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for the delay.") (internal brackets omitted). "In evaluating whether the party seeking modification of a pretrial scheduling order has demonstrated good cause, a court will adhere to the principle that the party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines." *McCoy v. Bd. of Educ., Columbus City Sch.*, No. 2:10-cv-298, 2011 WL 3652748, at *1 (S.D. Ohio Aug. 18, 2011) (internal quotation marks omitted). In addition, courts must consider potential prejudice to the nonmovant when determining whether to amend a scheduling order. *Leary*, 349 F.3d at 909. Here, Plaintiffs have not even attempted to explain why they failed to seek leave to amend prior to the deadline set forth in the Scheduling Order.

Even under the applicable standard for an ordinary motion seeking leave to amend (*see* Fed. R. Civ. P. 15(a)(2)), "denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453,

8

458 (6th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Furthermore, the Sixth Circuit has interpreted the PSLRA—which applies here—as "restricting the ability of plaintiffs to amend their complaint, thus as limiting the scope of Rule 15(a) of the Federal Rules of Civil Procedure." *Miller v. Champion Enterprises Inc.*, 346 F.3d 660, 689-92 (6th Cir. 2003) (affirming the district court's denial of leave to amend because the PSLRA's purpose could not be achieved "if plaintiffs were allowed to amend and amend until they got it right," noting that "[t]he purpose of the PSLRA would be frustrated if district courts were required to allow repeated amendments to complaints filed under the PSLRA") (internal quotation marks omitted); *accord P.R. Diamonds, Inc. v. Chandler*, 91 F. App'x 418, 445 (6th Cir. 2004) (recognizing that granting motion to amend would frustrate the purpose of the PSLRA "to screen out lawsuits having no factual basis, to prevent harassing strike suits, and to encourage attorneys to use greater care in drafting their complaints.").

"The grant or denial of leave to amend rests within the discretion of the district court." *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (upholding denial of leave to amend based on the district court's finding that the plaintiff did not offer persuasive reasons for the delay in amending his complaint).[6] In particular, a court has discretion to deny leave when a party has knowingly elected to pursue a particular litigation strategy and then belatedly seeks to amend its complaint after that strategy proves unsuccessful. Indeed, "[q]uestions of litigation strategy . . . are not of themselves compelling reasons to grant untimely leave to amend." *McCoy*, 2011 WL 3652748, at *2.

---

[6] *See also Smith v. Wilkinson*, 108 F.3d 1377, 1997 WL 117046 (6th Cir. Mar. 13, 1997) (table) (holding that undue delay to the prejudice of the defendants, futility, and mere restatement of allegations constitute bases to deny leave to amend); *Caldwell*, 968 F.2d at 598-99 (holding that "leave to amend a complaint may be denied when it would result in undue delay, prejudice to the opposing party, or the repeated failure to cure deficiencies in the complaint") (internal citations omitted).

Here, Plaintiffs have not shown good cause for seeking to amend at this belated time, and all relevant factors weigh strongly against granting Plaintiffs' post-dismissal request to amend the SAC, made after Plaintiffs' chosen litigation strategy failed.

### A. Plaintiffs Have Not Met Their Burden to Show Good Cause to Amend the Scheduling Order

Plaintiffs' motion ignores Sixth Circuit precedent that requires a moving party to demonstrate good cause to amend pleadings after the deadline set forth in the scheduling order. *See Leary*, 349 F.3d at 909.  However, if the Court "considered only Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *McCoy*, 2011 WL 3652748, at *1 (internal citations omitted).  Thus, Plaintiffs' failure to even attempt to demonstrate good cause should end the inquiry and Plaintiffs' motion should be denied. *See Salyers*, 53 F. App'x at 461 (affirming district court decision denying motion to amend complaint where plaintiff offered no good cause, "focusing [instead] on the purported lack of prejudice to the defense"—and the latter argument also "misse[d] the mark, because a party prejudices his opponent by missing the trial court's scheduled deadlines").

### B. Plaintiffs' Post-Dismissal Request For Leave To Amend Despite Multiple Earlier Opportunities Reflects Undue Delay And Bad Faith

Plaintiffs previously chose not to allege settlement and delivery dates for particular transactions based on purported evidence that has apparently been available to them since before they brought this lawsuit.  *See supra* Background, section C.  Only now do Plaintiffs seek to add such allegations, more than eight months after they initially brought claims against the Later-Sued Defendants, after multiple opportunities to amend their complaint, and after Plaintiffs' claims, as they elected to plead them, were dismissed.  Plaintiffs fail to provide any justification

10

for their undue delay.[7] Plaintiffs' "repeated failure to cure deficiencies by amendments previously allowed" weighs heavily against granting leave to amend. *See Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (concluding that "justice does not require allowing plaintiff additional opportunity to amend" where "[p]laintiff had ample opportunity to cure the noted defects when it amended its complaint" earlier in the proceedings).

Courts of the Sixth Circuit have repeatedly rejected motions for leave to amend where, as here, plaintiffs have delayed bringing the newly asserted allegations apparently for strategic reasons or because later discovery may allow them to state a claim. *See, e.g.*, *Cass v. Ward*, 114 F.3d 1186, No. 96-5839, 1997 WL 327323, at *2 (6th Cir. June 12, 1997) (table) (affirming "district court [order that] denied leave to amend the complaint on the ground that [plaintiff] had ample time to request leave to amend before judgment was entered and that he did, in fact, respond to the defendants' motions to dismiss"); *Glazer*, 704 F.3d at 459 ("[Plaintiff] should have sought leave as soon as he learned of [the] new fact, as it is directly relevant to [defendant's] argument, and he certainly should not have waited until the magistrate's report had issued."); *Hiller v. HSBC Fin. Corp.*, 589 F. App'x 320, 321 (6th Cir. 2015) ("[Plaintiff's] assertions on appeal that they merely sought to 'tighten up' their existing claims further demonstrate that they could have filed their motion earlier than nearly nine months after the filing of the original complaint."); *Aquilex Hydrochem, Inc. v. Marshall*, No. 5:11CV0319, 2011

---

[7] *See Murray v. Detroit Riverview Hosp.*, 65 F.3d 168, No. 94-1187, 1995 WL 514735, at *3 (6th Cir. Aug. 29, 1995) (table) ("Since [plaintiff] failed to provide a persuasive justification for the delay, it follows that it was undue delay under the circumstances of the case."); *see also Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444-45 (6th Cir. 2014) ("The plaintiffs' excuse—that they had no way of knowing that [previously available evidence] would factor heavily in the district court's decision [dismissing their complaint]—does not pass muster. Rule 15's permissive amendment policy should not permit plaintiffs to use the court as a sounding board to discover holes in their arguments, then reopen the case by amending their complaint to take account of the court's decision.") (internal quotation marks omitted).

WL 3862140, at *5 (N.D. Ohio Sept. 1, 2011) (denying leave to amend where defendant "has seemingly delayed seeking leave to amend a second time for strategic reasons"); *accord Torch*, 561 F.3d at 391-92 (denying motion for leave to amend to allow Plaintiffs to "repackage their claims" under a new theory in a complaint that had been amended already twice and noting that "[t]he role of discovery . . . is to find support for properly pleaded claims, not to find the claims themselves").[8] Plaintiffs' motion for leave to amend should similarly be denied.

### C. The Undersigned Defendants Would Suffer Undue Prejudice If Plaintiffs Were Granted Leave to File a Third Amended Complaint

Plaintiffs' motion for leave to amend should be denied on the additional, independently sufficient ground that it would cause undue prejudice to the undersigned Defendants. "[A] party prejudices his opponent by missing the trial court's scheduled deadlines . . . ." *Salyers*, 534 F. App'x at 461. This is particularly true where the defendant has expended significant time and resources to respond to what would amount to a "hypothetical complaint" if leave were granted (not to mention the expenditure of the Court's time and resources in issuing what would amount to an advisory opinion). *See Glazer*, 704 F.3d at 459; *Hiller*, 589 F. App'x at 321.

The Sixth Circuit's decision in *Glazer v. Chase Home Finance LLC* is instructive. In *Glazer*, the plaintiff filed a motion to amend "four months after discovery of the 'new' evidence, well after [defendant's] motion to dismiss had been filed and fully briefed, and one month after the magistrate recommended granting it." 704 F.3d at 458. The district court concluded that permitting amendment in those circumstances would "work against the intent of the Federal Rules of Civil Procedure by permitting a plaintiff to use" the judicial process "to test out his

---

[8] *See also* Wright *et al.*, *Federal Practice and Procedure* § 1488, 764 (3d ed. 2010) (noting that "[a] party who delays in seeking an amendment" once the need to amend becomes apparent "is acting contrary to the spirit of the rule").

12

pleading and discovery defects before seeking to amend them away" in the event of a dismissal, and that "allowing amendment under these circumstances would encourage delay and bad faith on the part of plaintiffs and prejudice defendants who would have wasted time and expense attacking a hypothetical complaint." *Id.* at 458-59 (internal quotation marks omitted).

So too here.  Plaintiffs took a wait-and-see approach and delayed seeking leave to amend until the Court identified the deficiencies in the SAC.  But here, as in *Glazer*, Plaintiffs were well aware of the alleged deficiencies in the SAC prior to the Court considering and issuing a decision on Defendants' motion to dismiss.  Plaintiffs were not entitled to have this Court issue an advisory opinion on their SAC before seeking leave to amend.  *See Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (upholding district court's denial of leave to amend, where the court held that "Defendant was entitled to review of the complaint as filed pursuant to Rule 12(b)(6)" and "*Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies* of the complaint and then an opportunity to cure those deficiencies") (internal quotation marks omitted; emphasis in original).  As in *Glazer*, "[Plaintiff] simply waited too long to seek leave to amend, and the delay unduly prejudiced [defendant]."  *Glazer*, 704 F.3d at 459.

### D.  The Proposed Amendment Would Be Futile

Leave to amend should also be denied where, as here, the proposed amendment would be futile.  *See Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 574 (6th Cir. 2010).

The proposed TAC does not plausibly allege a timely claim against ATD, Citigroup, or UBS.  Plaintiff Spiteri's newly proffered Schwab trade confirmations describe three purchases of Biozoom shares that settled on June 24, 2013, and one purchase that settled on June 26, 2013 (plus Spiteri's own sale of 100,000 Biozoom shares).  *See* Rosca Decl. Ex. B (Dkt. 129-5).

13

However, neither the TAC nor Plaintiffs' proffered trade confirmations reveal which of the three Defendants is alleged to be responsible for which trade. To plead a timely claim against a specific Defendant, Plaintiffs must allege a date within the limitations period on which *that Defendant* sold (or, on Plaintiffs' theory, delivered) unregistered shares. Op. at 9 ("[T]he Court notes that the Plaintiffs have not alleged the delivery date for any particular sale."). The proposed TAC fails to do so, instead offering "group pleading" concerning facts that are consistent with, for example, only one of the three undersigned Defendants having made all of the alleged deliveries, while the other two Defendants had no role. Plaintiffs cannot state a claim by asking the Court to simply assume that all three Defendants delivered shares on the dates Plaintiffs identify. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''") (internal citation omitted).[9]

Furthermore, Plaintiffs have not previously pleaded a claim under Section 12 on a separate and distinct "delivery" theory, and such a new theory presents numerous challenges. While *Section 5* of the '33 Securities Act establishes liability for the "delivery after sale" of unregistered securities, 15 U.S.C. § 77e, the plain language of Section 12(a)(1), the basis for Plaintiffs' claims in this case, provides that the statute is violated only when a defendant "*offers*

---

[9] Plaintiffs' failure to specify which Defendant allegedly delivered shares on which date is even more problematic because in fact any delivery on the latter of the two dates Spiteri identifies, June 26, 2013, would not be actionable for separate reasons. On Plaintiffs' own theory regarding the Section 4(a)(3) "dealer" exception, the Biozoom shares at issue were first "bona fide" offered to the public on May 16, 2013, *see* TAC ¶ 81, such that the 40-day window for Section 12 liability closed on June 24, 2013. As a result, Spiteri may not hold *any* Defendant liable for allegedly delivering an unregistered security on June 26, 2013. But he does not allege specifically that ATD, Citi, and UBS *all* delivered shares on the earlier June 24 date. Yet another deficiency in the proposed TAC is its inconsistency about when the Biozoom shares were actually delivered. *Compare* TAC ¶ 18 (alleging shares sold on June 24 were delivered on June 26) *with* ¶¶ 91 and 95 (alleging shares sold on June 24 were delivered on June 27).

14

*or sells* a security in violation of section 77e," 15 U.S.C. § 77*l* (emphasis added); *see also Eriksson v. Galvin*, 484 F. Supp. 1108, 1119 (S.D.N.Y. 1980) ("While section 5(a)(2) does prohibit the after-sale delivery, through interstate commerce, of an unregistered security, the unlawful delivery is a distinct violation."); *Goldstein v. Regal Crest, Inc.*, 59 F.R.D. 396, 403 n.5 (E.D. Pa. 1973) (same).[10] Plaintiffs cite *Doran v. Petroleum Management Corp.*, 576 F.2d 91 (5th Cir. 1978), and other cases indicating that a "delivery" of unregistered shares may violate Section 12(a)(1), but the question is unsettled. *See, e.g.*, *Gutfreund v. Christoph*, 658 F. Supp. 1378, 1387 (N.D. Ill. 1987) ("If *Doran* . . . seeks . . . to substitute 'last activity' for the statutory term "sale," it is of course wrong."); *Eriksson*, 484 F. Supp. at 1119 ("The violation which commences the running of the statute must be the first violation.") (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the undersigned Defendants respectfully request that the Court deny Plaintiffs' motion and grant any further relief that the Court may deem just and proper.

Dated: March 23, 2015

                                               Respectfully Submitted,

                                               /s/ Brian J. Lamb
                                               Brian J. Lamb (0055447)
                                               Brian.Lamb@thompsonhine.com
                                               Thomas M. Ritzert (0085370)
                                               Thomas.Ritzert@thompsonhine.com
                                               THOMPSON HINE LLP
                                               3900 Key Center
                                               127 Public Square

---

[10] While the Securities Exchange Commission may bring suits asserting direct violations of Section 5, private plaintiffs may not, and their distinct cause of action instead lies under Section 12. *See, e.g.*, *Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793, 801 (E.D. Mich. 1996).

Cleveland, Ohio 44114-1291
Phone: (216) 566-5500
Fax: (216) 566-5800
*Attorneys for Defendants Citigroup Global Markets Inc., Automated Trading Desk Financial Services, LLC, and UBS Securities LLC*

*Of Counsel*

Adam S. Hakki (*pro hac vice*)
Adam.Hakki@Shearman.com
Agnès Dunogué (*pro hac vice*)
Agnes.Dunogue@Shearman.com
Elizabeth J. Stewart (*pro hac vice*)
Elizabeth.Stewart@Shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Phone: (212) 848-4000
Fax: (212) 848-7179
*Attorneys for Defendants Citigroup Global Markets Inc. and Automated Trading Desk Financial Services, LLC*

*Of Counsel*

Fraser L. Hunter, Jr. (*pro hac vice*)
fraser.hunter@wilmerhale.com
David Sapir Lesser (*pro hac vice*)
david.lesser@wilmerhale.com
Jamie S. Dycus (pro hac vice)
jamie.dycus@wilmerhale.com
Ari Savitzky (pro hac vice)
ari.savitzky@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Phone: (212) 230-8800
Fax: (212) 230-8888
*Attorneys for Defendant UBS Securities LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2015, a copy of the foregoing was filed electronically with the Court's Case Management / Electronic Case Files (CM/ECF) docketing system.  Notice of this filing will be sent by operation of the CM/ECF system.  Notice of this filing will also be sent by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing.  Parties may access this filing through the CM/ECF system.

/s/ Brian J. Lamb
Brian Lamb (0055447)
Brian.Lamb@thompsonhine.com
Thomas Ritzert (0085370)
Thomas.Ritzert@thompsonhine.com
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Phone:  (216) 566-5500
Fax: (216) 566-5800
*Attorneys for Defendants Citigroup Global Markets Inc., Automated Trading Desk Financial Services, LLC,  and UBS Securities LLC*
