# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE BIOZOOM, INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) | Master File No. 1:14-cv-01087-JG<br><br>Judge James S. Gwin |

### PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

I.  **INTRODUCTION**

Plaintiffs fully acknowledge that whether or not to grant leave to amend is within the sound discretion of the Court. This motion was not brought in bad faith, or for strategic purposes. Plaintiffs did not earlier withhold Plaintiffs' trade confirmations to hide, as Defendants suggest, that Spiteri's trades were "unsolicited."[1] Instead, Plaintiffs believe that had these Defendants not disingenuously asserted on reply to their Motions to Dismiss the Second Amended Complaint ("SAC") that the "T+3" rule – the securities industry's three-day settlement rule that regulates their business – does not mean stock trades settle three business days after the trade date, Plaintiffs likely would not be in a position whereby they are seeking leave to amend. This is not a motion for reconsideration, as the Court did not previously address Plaintiffs' argument regarding settlement and delivery, and did not dismiss with prejudice pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute as Defendants assert.

The proposed amendment is extremely narrow in scope and does not attempt to introduce a new claim, theory, or party. Good cause for relief from the Scheduling Order is shown because the Scheduling Order provided a date for amendment two days before Defendants' motion to dismiss the SAC was even due, and Plaintiffs' motion seeks to cure a pleading deficiency identified by the Court's Opinion and Order ("Order") on that motion. Granting leave to amend will not

---

[1] Plaintiffs object in the strongest terms to Defendants' suggestion in their Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File a Third Amended Complaint ("Opp. Mem."). Doc. # 132, pg. 7, n.5, that Plaintiffs concealed from the Court their brokerage account confirmations because those confirmations contradicted Plaintiffs' assertions that their Biozoom purchases were solicited by Defendants. Such accusations are facially baseless: in their memoranda opposing dismissal, Plaintiffs argued that their Biozoom purchases were solicited *by Defendants*, while the brokerage account confirmations submitted by Plaintiffs indicate that Plaintiffs' purchases were unsolicited *by Plaintiffs' own stockbrokers*; the latter fact is neither disputed not relevant to Plaintiffs' argument that *Defendants* solicited such purchases by quoting the Biozoom shares on the OTCBB. *See* Plaintiffs' Opposition to Defendants' Omnibus Motion to Dismiss Plaintiffs' State Law Claims, Doc. # 116, Page ID#1365-68.

cause delay, nor will Defendants suffer prejudice. Discovery is just beginning and Plaintiffs and Defendant KCG have been working together on an expedited plan to focus discovery on whether Biozoom securities were *bona fide* offered more than 40 days prior to Defendants' sales at issue in this case. Under the Court's interpretation of the 40-day rule for dealer transactions under the Securities Act of 1933 ("'33 Act"),[2] that issue might be case dispositive. Plaintiffs are advised that counsel for UBS and Citi/Automated Trading Desk ("ATD") have been kept apprised of the discussions between Plaintiffs and KCG. By the proposed amendment, Plaintiffs are simply asking that the Court allow Plaintiff Spiteri – whose claims regarding certain purchases of Biozoom securities were asserted within one year of settlement and delivery – to be put in the same position as Plaintiff Corso while the pivotal question of "first offered" can be decided. For the foregoing reasons, Plaintiffs respectfully request that their Motion for Leave to Amend be granted.

**II.     ARGUMENT**

Rule 15 exists to reinforce the principle that cases "should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982); *Johnson v. Conn. Gen. Life Ins. Co*., 2007 U.S. Dist. LEXIS 64198, 15-16, (N.D. Ohio 2007) (Gwin, J.).[3]

**A.     Good Cause Exists Where the Amendment Seeks to Cure a Deficiency.**

---

[2] 15 U.S.C. §77d(a)(3)(A).
[3] This is not a motion for reconsideration of the Court's Order, and Plaintiffs are not seeking to add new substantive allegations as in the two cases relied on by Defendants, or to re-litigate issues already decided by this Court. *See MedApproach Holdings, Inc. v. Hawkins*, 2014 U.S. Dist. LEXIS 10250, 2014 WL 317710 (M.D. Tenn. Jan. 28, 2014) (Plaintiff moved 137 days after dismissal for reconsideration or in the alternative, to amend to add the allegation "after a reasonable opportunity for discovery, [plaintiff] will likely have evidentiary support for" the earlier-dismissed claim. *Id.* at *4. Motion for reconsideration was untimely and motion for leave was a repackaged way to raise reconsideration and assert new arguments never before raised*); see also Zepeda v. Sullivan*, 2012 U.S. Dist. LEXIS 3862, 2012 WL 113033 (E.D. Cal. Jan. 12, 2012) (*pro se* prisoner's attempt to file a fifth amended complaint to reassert same claims dismissed on merits was in reality a motion to reconsider). Nor did the Court enter a Rule 41(b) dismissal for failure to prosecute, as Defendants assert. Opp. Mem. at 5, n.4.

A court may allow a party to amend its pleading when the deadline established by the court for amending has passed "for good cause." Fed. R. Civ. P. 16(b)(4). "'The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.'" *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). In *Inge*, the court dismissed the plaintiff's claims under the Truth in Lending Act ("TILA") for alleged failure to disclose certain finance charges, finding that the plaintiff failed to plead TILA's tolerance provision. *Id*. at 616. Seven days later, plaintiff sought to amend and cure the defect identified by the court. *Id*. The court denied plaintiff's motion for failure to show "good cause" for missing the deadline to amend, which passed four months earlier while the parties were briefing the motion to dismiss. *Id*. at 619.

The Sixth Circuit reversed and held that plaintiff did not fail to act diligently in seeking amendment because the defendant first raised the issue of the tolerance provision in its motion to dismiss, there was a "dearth of authority" on the issue, and the district court took the view that the tolerance provision was a legal bar to plaintiff's TILA claims. *Id*. at 626.

The circumstances demonstrating good cause in *Inge* are present here. First, Defendants did not contest the T+3 industry practice until they filed their reply in support of dismissal. Doc. 118 at 2-3. Plaintiffs had no reasonable belief that Defendants – experienced players in the industry – would challenge this well-accepted industry practice.[4] Second, as in *Inge*, a review of the parties' briefing and the Court's Order show a "dearth of authority" interpreting T+3 regulation in light of industry practice. *See* Doc. 118 at 2-3 (citing only 17 C.F.R. § 240.15c6-1 and no interpreting authority); Doc. 115 at 8 (citing only 17 C.F.R. § 240.15c6-1 and an SEC release); Doc. 127 at 9

---

[4] The SAC alleged that Defendants' misconduct was tied to the delivery date, which occurred three days after the sale date. SAC ¶¶ 91, 95.

3

n.46 (*id.*). Finally, the Court took the view that Plaintiffs' delivery dates must be specifically plead. Plaintiffs now seek amendment only to cure this deficiency identified in the Court's Order. Accordingly, good cause exists to modify the deadline for amending the pleadings.

Unlike here, the plaintiffs in Defendants' Rule 16 cases were not seeking to cure a pleading deficiency immediately after a motion to dismiss ruling, but sought to add new claims, legal theories or parties well after summary judgment had been briefed or ruled upon. *See Leary v. Daeschner*, 349 F.3d 888, 908 (6th Cir. 2003) (no good cause where after summary judgment dismissal plaintiffs sought to amend to add new damage claim and "change their legal theory ..."); *McCoy v. Bd. Of Educ.*, 2011 U.S. Dist. LEXIS 92294 (S.D. Ohio 2011) (no good cause where after summary judgment briefing plaintiffs sought to join a new defendant that they knew about before the deadline for amendment); *Salyers v. City of Portsmouth*, 534 Fed. Appx. 454, 461 (6th Cir. 2013) (no good cause where plaintiff's oral motion to amend at the final pretrial conference "well after summary judgment briefing" sought to introduce "entirely new legal theories.").

The circumstances in those cases are not present here. Plaintiffs' request to amend was promptly filed, before discovery has gotten underway, before summary judgment motions have been filed and in light of an anticipated agreement by the parties to streamline the case.

### B. Defendants Will not Be Prejudiced; Amendment Will not Cause Undue Delay.

Defendants will not suffer prejudice if this amendment is allowed. The proposed amendment does not include any new claims or legal theories, but rather a single factual allegation which is in line with Plaintiffs' previous arguments that have been extensively addressed by Defendants in the context of their motions to dismiss.

In this District, "[a] court must conclude that there is at least some *significant* showing of prejudice to the defendant in order to deny a plaintiff's motion to amend the complaint." *Comm.*

*Benefits Group, Inc. v. McKesson Corp.*, 2008 U.S. Dist. LEXIS 9229, *5 (N.D. Ohio 2008) (Gwin, J.) (*quoting Ziegler v. Aukerman*, 512 F.3d 777 (6th Cir. 2008) (*citing Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)) (*quotations omitted*) (*emphasis supplied*).

When evaluating the alleged prejudice, "the Court considers, among other things, whether an amendment would make the case unduly complex and confusing and whether the defending party would have conducted the defense in a substantially different manner had the plaintiff previously tendered the amendment." *Kirk v. Shaw Envtl., Inc.*, 2010 U.S. Dist. LEXIS 20453, 11 (N.D. Ohio 2010) (Gwin, J.) (*citing Duchon v. Cajon Co.*, 791 F.2d 43, 48 (6th Cir. 1986) (*per curiam*) and *Morse v. McWhorter*, 290 F.3d 795, 800, 801 (6th Cir. 2002)).

No undue prejudice is caused by a proposed amendment when "the parties are in the preliminary stages of discovery" and the proposed amendments "involve the main factual allegations already at issue in the case." *E-Crane Int'l USA, Inc. v. Interstate Equip. Corp.*, 2008 U.S. Dist. LEXIS 5874, *7 (N.D. Ohio 2008) (Gwin, J.).

"Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading [.]" *Moore*, 790 F.2d at 561(*quoting Tefft v. Seward*, 689 F.2d 637, 639 n.2 (6th Cir. 1982)); *see also Rilley v. Twp. of Brimfield*, 2007 U.S. Dist. LEXIS 73980, *5 (N.D. Ohio 2007) (Gwin, J.).

This Court has employed a balancing test to evaluate any potential "undue delay" resulting from a proposed amendment against the "interest of justice" and "the Sixth Circuit's preference for adjudicating cases on their merits and not based upon technicalities." *Rilley*, 2007 U.S. Dist. LEXIS 73980 at *5-6.

Lastly, where a plaintiff promptly seeks to amend his complaint in order to cure a deficiency identified by the district court, as opposed to adding new claims, new legal theories or

new parties, a defendant will not be prejudiced. *See Inge*, 281 F.3d at 626 ("Plaintiff's request to amend was a prompt effort to remedy pleading deficiencies identified by the district court in the dismissal order – as opposed to an effort to add new claims or parties – we envision no prejudice to Defendant from granting leave to amend.").

This is precisely what Plaintiffs' proposed amendment – which was promptly filed 10 days after the Court's Order – seeks to do. Defendants have long been aware of Plaintiffs' position from the SAC, which alleged that Defendants' § 12(a)(1) violations occurred on the date of delivery.[5] Defendants cannot show they will suffer prejudice – much less a "significant" prejudice as required by this Court in *Comm. Benefits Group, Inc.* – if Plaintiffs' amendment is allowed.

The proposed amendment will certainly not make the case "unduly complex and confusing," as this Court cautioned in *Kirk v. Shaw Envtl., Inc*. The parties already extensively briefed this same issue in the context of the motion to dismiss. The amendment would not require Defendants to "conduct[] the defense in a substantially different manner," *id.*, when it merely reinforces with facts the same position that Plaintiffs have asserted in this case since their SAC.

As in *E-Crane Int'l,* the parties here are "in the preliminary stages of discovery" and Plaintiffs' proposed amendment certainly involves "the main factual allegations already at issue in the case." Discovery has barely started. There is certainly no question or need of changing the trial date, or any other deadlines, because of this proposed amendment. Plaintiffs' claims arising out the "T+3" delivery were already on file when the Scheduling Order was entered.

Defendants' "delay" argument also fails. Plaintiffs sought to amend within days after the Court's Order and this issue has already been briefed in connection with Defendants' motion to

---

[5] *See, e.g.,* SAC ¶¶ 91, 95.

6

dismiss. Plaintiffs certainly did not intend to harass or cause any prejudice, *see Moore v. City of Paducah*, nor can Defendants claim that Plaintiffs' clarification of the actual delivery date is harassing to them, when this has been Plaintiffs' argument all along. While Defendants now claim prejudice, they never did so during oral argument, despite taking the lectern twice following the offer by Plaintiffs' counsel to amend the pleadings and assert the precise three-day delivery dates.

Furthermore, as indicated above Plaintiffs and Defendant KCG are working at an expedited and substantially narrowed discovery process, focused exclusively on whether a transaction that might have taken place in 2012 was a *bona fide* offering of Biozoom securities. Under the Court's ruling regarding the "first bona fide offering" for purposes of the dealer exemption, the existence of such a transaction could expeditiously determine the outcome of this case. Plaintiffs are informed that Defendants UBS and Citi/ATD have been made aware of such discussions. Given this expedited approach, any purported prejudice will be further avoided.

Under this Court's balancing test, as employed in *Rilley v. Twp of Brimfield*, the interest of justice and the Sixth Circuit's preference to adjudicate cases based on their merits ought to prevail over the insignificant – if any – delay.[6]

Defendants' own cases offer support for Plaintiffs' motion to amend or are distinguishable. In *Salyers v. City of Portsmouth*, 534 F. App'x 454 (6th Cir. 2013), plaintiffs sought to introduce "entirely new legal theories" after summary judgment motions were filed. *Id.* at 461. This is certainly not the case here: the proposed amendment does not advance any new legal theories and the summary judgment motions are not due for months. Similarly, and unlike here, in *Hiller v.*

---

[6] The proposed amendment cannot come as a surprise; it is certainly not made for any "strategic" purpose; and Defendants did not have to spend time and resources to respond to a hypothetical complaint, when such amendment is in line with the assertions Plaintiffs have made in their SAC.

*HSBC Fin. Corp.*, 589 F. App'x 320 (6th Cir. 2015), an unpublished opinion without a detailed factual background, the plaintiffs moved to amend their claims after the court ruled on the motions for judgment on the pleadings or in the alternative for summary judgment. *Id.* While the proposed amendment was unclear, Plaintiffs claimed that a need for discovery caused their delay, but moved for leave to amend anyway without discovery (suggesting the stated excuse was not true). *Id.*

*Glazer v. Chase Home Fin. LLC,* 704 F.3d 453 (6th Cir. 2013), is inapplicable and favors allowing the proposed amendment in this case. The plaintiffs sought to raise a new issue of law and waited a month after the magistrate judge's recommendation in favor of dismissal. *Glazer*, 704 F.3d at 458-59. The *Glazer* court's concern was that allowing amendment under those circumstances "would encourage delay and bad faith on the part of plaintiffs and prejudice defendants who would have wasted time and expense attacking a hypothetical complaint." *Id.* Here Plaintiffs pleaded the "T+3 delivery" allegations in the SAC and the parties vigorously argued the issue. Plaintiffs are not seeking to introduce a new issue of law but state a fact that supports that "T+3 delivery" issue. Plaintiffs' SAC is not a "hypothetical complaint" as in *Glazer*.

*Begala v. PNC Bank, Ohio, Nat'l Ass'n,* 214 F.3d 776 (6th Cir. 2000) supports Plaintiffs' motion for leave to amend and is in line with the Sixth Circuit's preference for adjudication of claims on their merits. *See Rilley*, 2007 U.S. Dist. LEXIS 73980 at *6. The *Begala* plaintiffs "never moved for leave to amend their complaint" and "[r]ather, in opposition to the motions to dismiss, Plaintiffs requested that they be permitted to amend the complaint in the event that the Court found it to be deficient." *Begala,* 214 F.3d at 783-84. The Sixth Circuit quoted the district court's statement that it "would not have dismissed this action had it been convinced that the deficiencies in the complaint would have been cured by the proposed amendments" and its conclusion that "[i]n short, the Court did not permit Plaintiffs to amend the complaint because they did not move to do

so." *Begala*, 214 F.3d at 784. Here, Plaintiffs followed proper procedure and moved for leave to amend their SAC. The relevant pleading deficiencies would be cured by the proposed amendment, given this Court's Order that "Plaintiffs have not alleged the delivery date for any particular sale."

### C. Plaintiffs' Motion Was not Brought in Bad Faith.

Plaintiffs' "T+3 delivery" date is not a new argument and the request for leave is not being brought in bad faith. On reply to their motions to dismiss, Defendants argued for the first time that the securities transactions at issue might have settled *in less than three days* under the "T+3" settlement rules. Defendants, sophisticated broker-dealers, are certainly well-aware of the three-day settlement cycle that represents existing industry practice,[7] and Plaintiffs believe it was disingenuous for Defendants even to make that argument in light of the industry standard three day settlement rule that Defendants must follow when conducting their business.[8] The settlement argument was briefed and argued. However, at the time and in particular in view of the fact that this argument was not even brought up by Defendants until their reply, Plaintiffs believed their

---

[7] The securities industry – including representatives of these Defendants – has been lobbying to shorten the T+3 settlement cycle to T+2. According to the Securities Industry and Financial Markets Association ("SIFMA"), a member-driven, securities trade association whose board includes senior executives of among others, Citi and UBS, "SIFMA supports a move to shorten the settlement cycle for U.S equities. . . to trade date plus two days (T+2) from the current T+3. . . . SIFMA notes that *shortening the settlement cycle is a fundamental change to existing market practices*. . ." *See*, http://www.sifma.org/issues/operations-and-technology/shortened-settlement-cycle/overview/ (*emphasis added*) (last visited 3/26/15).

[8] As described by SIFMA, the securities settlement cycle is as follows: on the trade date (T), trade details for equities are transmitted by participants to the National Securities Clearing Corporation (NSCC), a subsidiary of the Depository Trust & Clearing Corporation (DTCC) for processing. Beginning on midnight between T+1 and T+2, NSCC assumes the role of central counterparty, taking on the buyer's credit risk and the seller's delivery risk. On T+2, NSCC issues broker/dealers summaries of all cleared trades, including information on the net positions of each security due or owed for settlement. T+3 is settlement - the delivery of securities to net buyers and payments of money to net sellers. Broker/dealers instruct their settling banks to send or receive funds through the Federal Reserve System to/from the Depository Trust Company (DTC) as NSCC's agent.

allegations regarding settlement and delivery dates in the SAC were sufficient to state a claim based on market practices and SEC regulations under Fed. R. Civ. P. 8.

In response to certain questions by the Court at oral argument regarding whether the Plaintiffs' PSLRA Certifications showed the settlement and delivery date, Plaintiffs' counsel offered to amend and show that settlement and delivery for those Plaintiffs at issue occurred on T+3. Respectfully, Plaintiffs still believed at the time that the SAC's allegations were sufficient to state a claim. However, in its Order, the Court concluded that Plaintiffs did not allege the delivery date for any particular sale and accepted Defendants' argument interpreting the SEC regulation to state only that trades must settle *within three days,* and "[t]he regulation does not say transactions only become effective three days after the trade." Doc. # 127, Page ID # 1581. This amendment is not being requested in bad faith and seeks only to state that settlement and delivery as to these Plaintiffs occurred on the third business day after the trade, consistent with industry practices.

Defendants' cases are inapposite. In *Miller v. Champion Enters., Inc*., 346 F. 3d 660 (6th Cir. 2003), the Sixth Circuit agreed that the amendment "would be futile because the SASC did not better link the allegations of scienter with any specific misstatements or omissions," and distinguished *Morse v. McWhorter*, 290 F. 3d 795 (6th Cir. 2002) in part, on that basis. *Miller*, 346 F. 3d at 690. Also, *Miller's* discussion of the tension between Fed. R. Civ. P. 15 and the PSLRA was in the context of the heightened pleading standard for fraud claims under the Securities Exchange Act of 1934. *See Republic Bank & Trust Co. v. Bear Stearns & Co*., 683 F.3d 239, 256 (6th Cir. 2012) (Rule 8 standard applies to '33 Act claims that, like here, do not sound in fraud).

In *P.R. Diamonds, Inc. v. Chandler*, 91 F. App'x 418, 455 (6th Cir. 2004), the court addressed a post-judgment appeal of the denial of a request for leave to amend. Plaintiffs' claims were dismissed in part and the request for leave to amend was included in the plaintiffs' opposition

to the motion to dismiss. Final judgment was entered five months later and plaintiffs appealed. The court acknowledged that "when a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend," but in "the circumstances of [that] case, leave should be denied." *Id.* at 443. The court analyzed Rule 15's "liberal amendment policy" with the interest of protecting the finality of judgments, noting that in the post-judgment context, "we must be particularly mindful of not only potential prejudice to the non-movant, but also the movant's explanation for failing to seek leave to amend prior to the entry of judgment." *Id.* at 443-44. The plaintiffs there failed to follow the proper procedure and file a motion and brief seeking amendment, failed to seek leave in the five months between when the claims were dismissed and judgment was entered, and never sought to alter, set aside, or vacate the district court's judgment as required to do before seeking amendment. *Id.* None of those factors is present here.[9]

Defendants' other authorities are not persuasive. *Cass v. Ward*, 114 F. 3d 1186 (6th Cir. 1997), involved a post-judgment appeal of dismissal of a civil rights case. Cass had ample time to request leave to amend before judgment, the complaint consisted of bare legal conclusions, and could prove no set of facts that would entitle him to relief. *Aquilex Hydrochem, Inc. v. Marshall*, 2011 U.S. Dist LEXIS 98701 (N.D. Ohio 2011), was a lawsuit by a company against two former employees alleging breach of non-compete agreements. A TRO hearing was scheduled and expedited discovery conducted. The parties agreed to a 30-day stay to explore settlement. At the end of the period, the plaintiff sought to amend to add seven new defendants and eight new legal claims. The court noted "delay standing alone is an insufficient basis for denying leave to amend.

---

[9] In *Caldwell v. Moore*, 968 F. 2d 595, 599 (6th Cir. 1992)*,* leave to amend was denied after discovery was closed. Plaintiff sought to add new parties and new claims with no explanation for the delay. *Smith v. Wilkinson*, 108 F.3d 1377 (6th Cir. 1997)*,* was a prisoner rights case where the proposed amendment merely restated the allegations of the original complaint and would be futile.

11

However, what makes this case an exception . . . is the scope of the allegations and the remedies sought in the [proposed complaint] and the fact that [plaintiff] has seemingly delayed seeking leave to amend . . . for strategic reasons."[10] *Id*. at *15. Leave to amend was denied for the additional reason that the two defendants agreed to abide by the non-compete agreement pending the result of the TRO hearing. The proposed amendment would substantially delay the hearing and broaden discovery dramatically, and the prejudice to the defendants was "undue." *Id.* at *16-17. Finally, in *Torch Liquidating Trust v. Stockstill*, 561 F. 3d 377 (5th Cir. 2009) leave to amend was denied where the proposed amendment, seeking to repackage claims declared defunct under Delaware law, lacked "a viable theory to support [plaintiff's] claim of injury."*Id*. at 391-92.

### D. The Proposed Amendment Is not Futile.

#### 1. Plaintiffs' Proposed TAC Meets the Applicable Pleading Standards.

Defendants seek to advance two arguments against allegations in the SAC that have already been reviewed by the Court and remain unchanged in the proposed TAC. First, Defendants assert that Plaintiffs have not alleged "which of the three Defendants is responsible for which trade." Opp. Mem. at 14. But the factual basis for Plaintiffs' purchases had already been pleaded in the SAC and Plaintiffs offered no changes to it in their Motion for Leave to Amend or in their proposed TAC. *See* SAC ¶18. Plaintiffs alleged with sufficient specificity which Defendants sold Plaintiff Spiteri his Biozoom shares, and Defendants did not challenge those allegations in their motion to dismiss.[11] Defendants had the opportunity to raise their "group pleading" argument in opposing the SAC. As Defendants did not raise the argument then, the Court should not entertain it now.

---

[10] The claims plaintiff sought to add by amendment were within the subject matter jurisdiction of another court hearing a related declaratory judgment action and were being asserted in Ohio instead for tactical reasons. *Aquilex*, 2011 U.S. Dist LEXIS 98701 at *21.

[11] Moreover, Citigroup and Automated Trading Desk are alleged to be the same entity. See SAC ¶24 ("[u]pon information and belief, Citigroup and Automated Trading Desk are affiliated

12

Defendants now rely on *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), for the proposition that Plaintiffs have failed to plead their claim, and that Plaintiffs cannot "ask[] the Court to simply assume that all three Defendants delivered shares on the dates Plaintiffs identify. Opp. Mem. at 6. But this argument focuses only on the confirmations, and ignores the actual assertions in the TAC that Spiteri's transactions at issues occurred with both (1) UBS Securities and (2) Automated Trading Desk and/or Citigroup.[12] *See* proposed TAC ¶18. Each of those transactions occurred at least in part within the statute of limitations period. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678. Here, Plaintiffs attached Spiteri's trade confirmations, which show that shares were settled on June 24 and June 26, 2013, respectively.[13] *See* Ex. B to TAC. Plaintiffs have adequately alleged that Defendants (1) UBS and (2) Automated Trading Desk and/or Citigroup delivered shares to Plaintiffs Spiteri within the statute of limitations. To the extent the Defendants argue otherwise, they are asking the Court to disregard Plaintiffs' allegations, and their argument

---

entities that are owned by the same corporate parent.") Both entities filed a joint Answer, Doc. # 109, and admitted Plaintiffs' allegation. *Id*.

[12] Defendants also raise for the first time that the 40-day window for Section 12 liability closed on June 24, 2013. This is again an argument that Defendants should have raised in their motion to dismiss, but did not, and cannot belatedly do so now. In any case, Defendants mischaracterize the rule, which prohibits "transactions" in violation of § 5 "taking place prior to the expiration of forty days *after* the first date upon which the security was bona fide offered to the public" (the "40-Day Period") (*emphasis supplied*). '33 § 4(3)(A). But § 5 of the '33 Act regards a "transaction" as a sale followed by the carrying or causing to be carried in interstate commerce – i.e. delivery – of the shares sold. The sales at issue occurred on June 19 and June 21, respectively, and were followed by the three-day settlement (delivery) process, which ended on June 24 and June 26, respectively. Thus, either the entire transaction (as to the shares delivered on June 24) or part of it (as to the shares delivered on June 26) falls within the 40-Day Period during which the dealer exemption as pleaded by Plaintiffs does not apply.

[13] Defendants' argument regarding a supposed "inconsistency" in Plaintiffs' allegations about the delivery date is mistaken. Defendants claim that TAC ¶18 alleges that shares "sold on June 24 were delivered on June 26" but there is no such allegation in TAC ¶18, which actually states that Spiteri's shares sold on June 19 were *delivered* on June 24 (in three days), and the shares sold on June 21 were delivered on June 26. *See* TAC ¶18.

13

must fail.[14] Taking Plaintiffs factual allegations as true, as the Court is bound to do, Plaintiffs have met their pleading burden. Consequently, the TAC would not be futile. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (A proposed amendment to a complaint is not futile if it can withstand a Rule 12(b)(6) motion to dismiss).

### 2. Plaintiffs' Amendment is not Futile Under the Applicable Law, Which Defendants Concede Is Unsettled.

Defendants also erroneously claim that Plaintiffs have not previously pleaded a claim under Section 12 on the "delivery" theory. *See* SAC ¶¶ 2, 91, etc.; *see also* Pltf's Mem. in Supp. of Mot. for Leave to File TAC, Doc. # 129 at 2-3. Plaintiffs clearly and repeatedly alleged that "Defendants' misconduct continued until the delivery of the last shares they sold on June 24, 2013, which delivery took place, upon information and belief, on June 27, 2013." SAC ¶¶ 91, 95.

Plaintiffs' amendment would not be futile as set forth in the applicable law set forth in their Motion for Leave to Amend.[15] See, Pltf's Mem., Doc. # 109, pgs. 6-9. Defendants' cases miss the mark. In *Eriksson v. Galvin,* 484 F. Supp. 1108. 1119 (S.D.N.Y. 1980), decided after a trial on the merits, the court rejected an argument that delivery date was the start of the statute of limitations for the reason that, unlike here, *delivery was never pleaded* despite the complaint being amended twice. Moreover, the *Eriksson* court's acceptance of the "commitment date" to commence the running of the statute of limitations for § 12(1) liability was heavily criticized by the 11th Circuit in *Raiford v. Buslease, Inc.*, 825 F.2d 351, (11th Cir. 1987) as an improper attempt to graft a

---

[14] Defendants are wrong that Plaintiffs are asking the Court "to simply assume" that all Defendants delivered shares on the dates they identify. *See* Opp. at 14. Plaintiffs did not ask the Court to "assume" that; they pleaded that in the TAC ¶18. This Motion is obviously before the Court at the pleading stage, not at summary judgment—and Defendants have identified at most a potential factual issue upon which Plaintiffs are entitled to discovery.

[15] Moreover, Defendants' concession that the issue of whether delivery after sale of an unregistered security may violate Section 12(a)(1) is "unsettled," is fatal to their futility argument. Opp. Mem. at 15.

14

doctrine formulated for claims under the Securities Exchange Act of 1934 onto claims under the '33 Act. *Id.* 825 F. 2d at 354-55. In *Goldstein v. Regal Crest, Inc.,* 59 F.R.D. 396, 403 n.5 (E.D. Pa. 1973), the court held that the plaintiffs could not rely on a delivery that never occurred to start the statute of limitations. *Id.* Notwithstanding, *Goldstein* cited with approval *Bucholtz v. Renard*, 186 F. Supp. 888 (S.D.N.Y. 1960), that held "the statute specifically makes 'delivery after sale' unlawful and where there is such delivery the statute of limitations would not begin to run until the date of such delivery." *Id.,* 188 F. Supp. at 892.

In reality, the delivery issue is far from unsettled, and the support offered by Defendants is stretched to the point of mischaracterization. Defendants fail to even mention § 5 of the '33 Act, 15 USCS § 77e, which prohibits both the "sale" and "delivery after sale" of unregistered securities. Nor does *Gutfreund v. Christoph* prove that the "issue" of delivery is unsettled. Instead, the issue addressed was a "sale" for purposes of the §13 statute of repose for a claim under § 12(a)(2) of the '33 Act, not a "violation" for purposes of the statute of limitations under § 12(1). *See Gutfreund v. Christoph*, 658 F. Supp. 1378, 1387 (N.D. Ill. 1987). The *Gutfreund* court did not discuss the delivery date – and did not have a reason to do so since § 13 only refers to the "sale" for purposes of repose. In addition, *Eriksson* not only fails to support the "unsettled" argument but it rebuts it, where it states that the delivery of an unregistered security is a violation of § 5. See *Eriksson v. Galvin*, 484 F. Supp. 1108, 1119 (S.D.N.Y. 1980). Defendants' concession that the law is unsettled is fatal to their futility argument. Regardless, because Plaintiffs have met the pleading standard, Plaintiffs' proposed amendment is not futile.

### III. CONCLUSION

For the reasons set forth in Plaintiffs' opening brief and the reasons set forth herein, Plaintiffs request that their Motion for Leave to Amend be granted.

Dated: March 30, 2015                                  Respectfully Submitted,

                                         *s/ Alan L. Rosca*
Alan L. Rosca (Ohio Bar No. 0084100)
James P. Booker (Ohio Bar No. 0090803)
**PEIFFER ROSCA WOLF**
**ABDULLAH CARR & KANE**
A Professional Law Corporation
526 Superior Avenue, Suite 1255
Cleveland, Ohio 44114
Tel: 216-589-9280
Fax: 888-411-0038
Email: arosca@prwlegal.com
Email: jbooker@prwlegal.com

Joseph C. Peiffer (*admitted pro hac vice*)
**PEIFFER ROSCA WOLF**
**ABDULLAH CARR & KANE**
A Professional Law Corporation
201 St. Charles Avenue, Suite 4610
New Orleans, Louisiana 70170-4610
Tel: (504) 523-2464
Fax: (504) 523-2464
Email: jpeiffer@prwlegal.com

Paul J. Scarlato (*pro hac vice*)
**GOLDMAN SCARLATO & PENNY, P.C.**
101 E. Lancaster Avenue, Suite 204
Wayne, PA 19087
Tel: 484-342-0700
Fax: 484-580-8747
Email: scarlato@gskplaw.com

Daniel R. Karon
**Karon LLC**
700 W. St. Clair Avenue, Suite 200
Cleveland, OH 44113
Telephone: 216-622-1851
Facsimile: 216-241-8175
Email: dkaron@karonllc.com

*Counsel for Lead Plaintiff and Additional Plaintiff Stuart Spiteri and Lead Counsel for the Class*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2015, a copy of the foregoing was filed electronically with the Court's Case Management/Electronic Case Files (CM/ECF) docketing system.  Notice of this filing will be sent by operation of the CM/ECF system.  Notice of this filing will also be sent by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing.  Parties may accept this filing through the CM/ECF system.

*s/ Alan L. Rosca*
Alan L. Rosca (Ohio Bar No. 0084100)
**PEIFFER ROSCA WOLF**
**ABDULLAH CARR & KANE**
A Professional Law Corporation
526 Superior Avenue, Suite 1255
Cleveland, Ohio 44114
Tel: 216-589-9280
Fax: 888-411-0038
Email: arosca@prwlegal.com
