UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE BIOZOOM, INC. SECURITIES LITIGATION | ) Master File No. 1:14-cv-01087-JG<br>)<br>)<br>) Judge James S. Gwin<br>)<br>) THIRD AMENDED COMPLAINT<br>) CLASS ACTION<br>)<br>)<br>)<br>) DEMAND FOR JURY TRIAL<br>) |

Court-appointed Lead Plaintiff, Anthony O. Corso Living Trust, by and through its authorized representative Charles C. Corso, by and through its attorneys, alleges the following upon information and belief, except as to those allegations concerning Lead Plaintiff or additional named Plaintiffs, which are alleged upon personal knowledge.  Lead Plaintiff's information and belief is based upon, among other things, its counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Biozoom, Inc. ("Biozoom" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases issued by and disseminated by Biozoom, and media reports issued about the Company; (c) the proceedings brought by the SEC starting on or about July 3, 2013 against certain individuals in connection with Biozoom in the case of *SEC v. Tavella, et al.*, No. 13-4609 (S.D.N.Y., filed July 3, 2013) (the "SEC Action"), (d) a review of other publicly available information concerning Biozoom, (e) inquiries to Plaintiffs' brokers about the identity of the Market Makers who sold Plaintiffs Biozoom stock, and (f) a review of FINRA records, OTCBB

1

records, the EDGAR database and other publicly available information regarding the Market Makers in Biozoom stock.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a securities class action on behalf of persons or entities who purchased the common stock of Biozoom from defendants KCG Americas LLC, Automated Trading Desk Financial Services, LLC, Citigroup Global Markets Inc., Citadel Securities LLC, G1 Execution Services, LLC, E-Trade Capital Markets LLC, BTIG, LLC, Canaccord Genuity Inc., Collins Stewart Inc., Pershing LLC, Maxim Group LLC, UBS Securities LLC, Archipelago Trading Services, Inc., and VFinance Investments, Inc. on the Over-the-Counter Bulletin Board between May 16, 2013 and June 25, 2013, inclusive, seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"), the Blue Sky Laws and the common law of the State of New Jersey, or in the alternative, the Blue Sky Laws and/or common law of the states of New Jersey, Connecticut, South Carolina, California, Illinois, Florida and New York, respectively (hereinafter collectively the "Class").

2.      In this Complaint, Lead Plaintiff asserts a strict liability, negligence and non-fraud based claim under the Securities Act, as well as claims under state Blue Sky Laws and/or common law arising out of the offer, sale and delivery of unregistered shares of Biozoom by Defendants to Plaintiffs and members of the Class.

3.      As a direct and proximate result of Defendants' wrongful acts and omissions, Lead Plaintiff and the Class have suffered significant losses and damages.

4.      The claims asserted herein arise under §12 of the Securities Act (15 U.S.C. §§77l), and the Blue Sky Laws and common law of the State of New Jersey.  In the alternative, Lead

2

Plaintiff asserts claims under the Blue Sky laws and/or common law of New Jersey, Connecticut, South Carolina, California, Illinois, Florida and New York.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act (15 U.S.C. §77v). This Court has jurisdiction over the state law claims asserted herein under 28 U.S.C § 1332 (d)(2) in that this is a class action and the amount in controversy exceeds $5,000,000, and any member of the class is a citizen of a State different from any defendant. Moreover, the exclusion in 28 U.S.C. § 1332 (9) does not apply because the securities at issue are not covered securities as defined under 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E)). This Court also has jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1367.

6.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b). Substantial acts in furtherance of the alleged course of conduct or the effects of the conduct have occurred in this Judicial District. Lead Plaintiff Charles Corso, Trustee for Anthony O. Corso Living Trust ("Corso"), and additional Plaintiff Ruth Stephens reside in this District and purchased their shares of Biozoom while in this District.

## PARTIES

7.     On September 15, 2014, this Court appointed Corso as Lead Plaintiff. Corso purchased Biozoom common stock from Market Maker KCG Americas LLC, as set forth in the certification attached to the initial complaint, and suffered damages as a result of the federal securities law violations and state law violations alleged herein. The Corso certification sets forth the trade dates of 6/18/13 and 6/21/13 for Mr. Corso's purchases of Biozoom stock. According to

Mr. Corso's Scottrade trade confirmations attached hereto, Mr. Corso's Biozoom purchases on 6/18/13 settled and were delivered on 6/21/13, and his Biozoom purchases on 6/21/13 settled and were delivered on 6/24/13.  The settlement dates reflect the dates that the shares were delivered to Mr. Corso, and correspondingly the dates Mr. Corso made payment for those shares to the seller. Accordingly, the settlement and delivery of Mr. Corso's shares occurred on 6/21/13 and 6/24/13, within one year of the date Mr. Corso's claim was filed.

8.      Roland D. Kushmore, Trustee for additional Plaintiff Roland F. and Dolcy J. Kushmore Revocable Living Trust, has full authority to act for and on behalf of the Trust. Kushmore purchased Biozoom common stock on behalf of the Roland F. and Dolcy J. Kushmore Revocable Living Trust during the Class Period from Market Makers Automated Trading Desk Financial Services, LLC, and/or Citigroup Global Markets Inc., as set forth in the certification attached to the amended class action complaint, and the Trust suffered damages as a result of the federal securities law violations and state law violations alleged herein.

9.      Additional Plaintiff Dennis Spitz purchased Biozoom common stock during the Class Period from Market Maker Citadel Securities LLC, as set forth in the certification attached to the amended class action complaint, and suffered damages as a result of the federal securities law violations and state law violations alleged herein.

10.      Additional Plaintiff Thomas Basdekis purchased Biozoom common stock during the Class Period from Market Maker Citadel Securities LLC, as set forth in the certification attached to the amended class action complaint, and suffered damages as a result of the federal securities law violations and state law violations alleged herein.

11.      Additional Plaintiff Stanley Weindorf purchased Biozoom common stock during the Class Period from Market Maker G1 Execution Services, LLC and/or E-Trade Capital Markets

4

LLC, as set forth in the certification attached to the amended class action complaint, and suffered damages as a result of the federal securities law violations and state law violations alleged herein.

12.    Additional Plaintiff Thomas Cole purchased Biozoom common stock during the Class Period from Market Maker G1 Execution Services, LLC and/or E-Trade Capital Markets LLC, as set forth in the certification attached to the amended class action complaint, and suffered damages as a result of the federal securities law violations and state law violations alleged herein.

13.    Additional Plaintiff Renate Freed purchased Biozoom common stock during the Class Period from Market Maker BTIG, LLC, as set forth in the certification attached to the amended class action complaint, and suffered damages as a result of the federal securities law violations and state law violations alleged herein.

14.    Additional Plaintiffs Rui Wang and Ying Zhu-Wang purchased Biozoom common stock during the Class Period from Market Maker Canaccord Genuity Inc., as set forth in the certification attached to the amended class action complaint, and suffered damages as a result of the federal securities law violations and state law violations alleged herein.

15.    Additional Plaintiff Ruth Stephens purchased Biozoom common stock during the Class Period from Market Makers Canaccord Genuity Inc. and/or Collins Stewart Inc. and Automated Trading Desk Financial Services, LLC, and/or Citigroup Global Markets Inc., as set forth in the certification attached to the amended class action complaint, and suffered damages as a result of the federal securities law violations and state law violations alleged herein.

16.    James P. Campbell, Trustee for additional Plaintiff James P. Campbell Revocable Living Trust, has full authority to act for and on behalf of the Trust.  Campbell purchased Biozoom common stock on behalf of the James P. Campbell Revocable Living Trust during the Class Period from Market Maker Pershing LLC, as set forth in the certification attached to the amended class

5

action complaint, and the Trust suffered damages as a result of the federal securities law violations and state law violations alleged herein.

17.     Additional Plaintiff Michael Moore purchased Biozoom common stock during the Class Period from Market Maker Maxim Group LLC, as set forth in the certification attached to the amended class action complaint, and suffered damages as a result of the federal securities law violations and state law violations alleged herein.

18.     Additional Plaintiff Stuart Spiteri purchased Biozoom common stock during the Class Period from Market Makers UBS Securities LLC and Automated Trading Desk Financial Services, LLC and/or Citigroup Global Markets Inc., as set forth in the certification attached to the amended class action complaint, and suffered damages as a result of the federal securities law violations and state law violations alleged herein.  The Spiteri certification sets forth the trade dates for Mr. Spiteri's purchases and sales of Biozoom stock.  According to Mr. Spiteri's Charles Schwab trade confirmations attached hereto, his 6/19/13 purchases of Biozoom stock settled and were delivered on 6/24/13, and his 6/21/13 purchases of Biozoom stock settled and were delivered on 6/26/13.  As confirmed by information on the Charles Schwab website, the settlement date is the date that the shares are delivered to the purchaser and payment is made to the seller.  See, http://www.schwab.com/public/schwab/nn/articles/Stock-Settlement-Why-You-Need-to-Understand-the-T-3-Timeline.  Accordingly, the settlement and delivery of Mr. Spiteri's shares occurred on 6/24/13 and 6/26/13, within one year of the date Mr. Spiteri's claim was filed.

19.     Additional Plaintiff Thomas Chesnick purchased Biozoom common stock during the Class Period from Market Maker UBS Securities LLC as set forth in the certification attached to the amended class action complaint, and suffered damages as a result of the federal securities law violations and state law violations alleged herein.

20.     Additional Plaintiff Kirk Aduddell purchased Biozoom common stock during the Class Period from Market Maker Archipelago Trading Services, Inc., and suffered damages as a result of the federal securities law violations and state law violations alleged herein.

21.     Additional Plaintiff Charles Galanti purchased Biozoom common stock during the Class Period from Market Maker VFinance Investments, Inc., and suffered damages as a result of the federal securities law violations and state law violations alleged herein.

22.     Defendant KCG Americas LLC ("KCG") is a corporation with its main corporate offices at 545 Washington Boulevard, Jersey City, NJ 07310.  KCG is a securities broker-dealer firm and a member of FINRA.  KCG served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Anthony O. Corso Living Trust and the Class.

23.     Defendant Automated Trading Desk Financial Services, LLC ("Automated Trading Desk") is a corporation with its main corporate offices at 11 eWall Street Mount Pleasant, SC 29464.  Automated Trading Desk is a securities broker-dealer firm and a member of FINRA.   Automated Trading Desk served as Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Roland F. and Dolcy J. Kushmore Revocable Living Trust, Ruth Stephens, Stuart Spiteri and the Class.

24.     Defendant Citigroup Global Markets. Inc. ("Citigroup") is a corporation with its main corporate offices at 388 Greenwich Street, New York, NY 10013-2396.  Citigroup is a securities broker-dealer firm and a member of FINRA.  Upon information and belief, Citigroup and Automated Trading Desk are affiliated entities that are owned by the same corporate parent. Citigroup served as Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Roland F. and Dolcy J. Kushmore Revocable Living Trust, Ruth Stephens, Stuart Spiteri and the Class.

7

25.     Defendant Citadel Securities LLC ("Citadel") is a corporation with its main corporate offices at 131 South Dearborn Street, 32nd Floor, Chicago, IL 60603.  Citadel is a securities broker-dealer firm and a member of FINRA.  Citadel served as Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Dennis Spitz and Thomas Basdekis and the Class.

26.     Defendant G1 Execution Services, LLC ("G1") is a corporation with its main corporate offices at 440 S. LaSalle Street, Suite 3030 Chicago, IL 60605-1028.  G1 is a securities broker-dealer firm and a member of FINRA.  G1 served as Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Stanley Weindorf, Thomas Cole and the Class.

27.     Defendant E-Trade Capital Markets, LLC ("E-Trade") is a corporation with its main corporate offices at 440 S. LaSalle Street, Suite 3030 Chicago, IL 60605-1028.  E-Trade is a securities broker-dealer firm and a member of FINRA.  Upon information and belief, E-Trade and G1 are one and the same entity.  E-Trade served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Stanley Weindorf, Thomas Cole and the Class.

28.     Defendant BTIG, LLC ("BTIG") is a corporation with its main corporate offices at 600 Montgomery Street, 6th Floor, San Francisco, CA 94111.  BTIG is a securities broker-dealer firm and a member of FINRA.  BTIG served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Renate Freed and the Class.

29.     Defendant Canaccord Genuity Inc. ("Canaccord") is a corporation with its main corporate offices at 350 Madison Avenue, New York, NY 10017.  Canaccord is a securities broker-dealer firm and a member of FINRA.  Canaccord served as Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Rui Wang, Ying Zhu-Wang, Ruth Stephens and the Class.

30.     Defendant Collins Stewart Inc. ("Collins Stewart") is a corporation with its main corporate offices at 350 Madison Avenue, New York, New York 10017. Collins Stewart is a securities broker-dealer firm and was a member of FINRA.  Upon information and belief, Collins Stewart and Cannacord are affiliated entities.   Collins Stewart served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Ruth Stevens and the class.

31.     Defendant Pershing LLC ("Pershing") is a corporation with its main corporate offices at One Pershing Plaza, Jersey City, NJ 07399.  Pershing is a securities broker-dealer firm and a member of FINRA.  Pershing served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff James P. Campbell Revocable Living Trust and the Class.

32.     Defendant Maxim Group LLC ("Maxim") is a corporation with its main corporate offices at 405 Lexington Avenue, New York, NY 10174.  Maxim is a securities broker-dealer firm and a member of FINRA.  Maxim served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Michael Moore and the Class.

33.     Defendant UBS Securities LLC ("UBS Securities") is a corporation with its main corporate offices at 1285 Avenue of the Americas, New York, New York 10019. UBS Securities is a securities broker-dealer firm and a member of FINRA.  UBS Securities served as Market Maker for Biozoom stock, and sold shares directly to Plaintiffs Stuart Spiteri, Thomas Chesnick and the Class.  Upon information and belief, UBS' trading desk is located in Greenwich, CT.

34.     Defendant Archipelago Trading Services, Inc. ("Archipelago") is a corporation with its main corporate offices at 100 S. Wacker Drive, Suite 1800, Chicago, Illinois 60606. Archipelago is a securities broker-dealer firm and a member of FINRA.  Archipelago served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Kirk Aduddell and the Class.

35.    Defendant VFinance Investments, Inc ("VFinance") is a corporation with its main corporate offices at 1200 N. Federal Highway, Suite 400, Boca Raton, Florida 33432.  VFinance is a securities broker-dealer firm and a member of FINRA.  VFinance served as Market Maker for Biozoom stock, and sold shares directly to Plaintiff Charles Galanti and the Class.

36.    Defendants KCG, Automated Trading Desk, Citigroup Global Markets, Citadel, G1, E-Trade, BTIG, Canaccord, Collins Stewart, Pershing, Maxim, UBS Securities, Archipelago, and VFinance are referred to collectively as "Defendants."

## NON-PARTY OTCBB

37.    Biozoom shares were traded during the Class Period on the OTC Bulletin Board ("OTCBB").  The OTCBB is a regulated quotation service that displays real-time quotes, last-sale prices, and volume information in over-the-counter ("OTC") equity securities.  OTCBB-traded securities are not listed or traded on NASDAQ or any national securities exchange.

38.    The OTCBB is a quotation medium for subscribing members.  OTCBB securities are traded by a community of Market Makers on a highly sophisticated, closed-access computerized trading platform. That trading platform is hosted by, and managed from, central data center facilities located in New Jersey and can be accessed by each market participant through a NASDAQ Workstation.

39.    The OTCBB is owned by the Financial Industry Regulatory Authority ("FINRA") but operated by NASDAQ OMX ("NASDAQ").  Quotations – that is, offers to sell or purchase OTCBB securities – are disseminated to market participants from NASDAQ's data centers.  Upon investigation by counsel and belief, the NASDAQ data centers from which such quotations originate and are disseminated into the marketplace are located in New Jersey.

10

40.     The OTCBB operates as a dealer system.  All securities being quoted on the OTCBB must be sponsored by a participating Market Maker that registers the security.  Only Market Makers can apply to quote securities on this service, and issuers must contact an authorized OTCBB Market Maker for sponsorship of a security on the OTCBB.

41.     The OTCBB electronically transmits from the New Jersey data centers real-time quote, price and volume information in domestic securities, foreign securities and ADRs. Specifically, the OTCBB disseminates, among other information, 1) dynamic last-sale and volume information for domestic securities, foreign securities and ADRs, 2) bids, offers, and indications of interest displayed by specific Market Makers, and 3) inside quotes for domestic securities, foreign securities and ADRs when available.  The information is disseminated from New Jersey to market data vendor terminals and Web sites for display to customers worldwide.  Every quotation entry must include the appropriate telephone number for the firm's trading desk.

42.     Each of the Defendants was a Market Maker for Biozoom common stock, and thus "sponsored" Biozoom shares for listing on the OTCB.

## CLASS ACTION ALLEGATIONS

43.      This action is brought as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of:

- Lead Plaintiff and members of the Class who purchased Biozoom shares from the Defendants KCG, Automated Trading Desk, Citigroup Global Markets, Citadel, E-Trade, G1, BTIG, Canaccord, Collins Stewart, Pershing, Maxim, and UBS Securities between May 16, 2013 and June 25, 2013 inclusive (the "Class Period") seeking to pursue remedies under Section 12(a)(1) of the Securities Act against those Defendants; and

11

-   Lead Plaintiff and members of the Class who purchased Biozoom shares from the Defendants KCG, Automated Trading Desk, Citigroup Global Markets, Citadel, E-Trade, G1, BTIG, Canaccord, Collins Stewart, Pershing, Maxim, UBS Securities, Archipelago, and VFinance during the Class Period seeking to pursue remedies under the Blue Sky Law and the common law of the State of New Jersey, and under New Jersey common law against those Defendants.

44.     In the alternative, this action is brought as a class action:

-   Under the common law of the State of New York, on behalf of those Plaintiffs and members of the Class who purchased Biozoom stock during the Class Period from Defendants Citigroup, Canaccord, Collins Stewart, and Maxim, against those Defendants;

-   Under the Blue Sky Law and/or common law of the State of Illinois, on behalf of those Plaintiffs and members of the Class who purchased Biozoom stock during the Class Period from Defendants Archipelago, Citadel, G1, and E-Trade, against those Defendants;

-   Under the Blue Sky Law and/or common law of the State of California, on behalf of those Plaintiffs and members of the Class who purchased Biozoom stock during the Class Period from Defendant BTIG, against that Defendant;

-   Under the Blue Sky Law and/or common law of the State of South Carolina, on behalf of those Plaintiffs and members of the Class who purchased Biozoom stock during the Class Period from Defendant Automated Trading Desk, against that Defendant;

12

- Under the Blue Sky Law and/or common law of the State of Connecticut, on behalf of those Plaintiffs and members of the Class who purchased Biozoom stock during the Class Period from Defendant UBS Securities, against that Defendant;

45.   Under the common law of the state of Florida, on behalf of those Plaintiffs and members of the Class who purchased Biozoom stock during the Class Period from Defendant VFinance, against that Defendant. Excluded from the Class are Defendants, their officers and directors, and at all relevant times, members or their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.  Also excluded from the Class are a) Biozoom, its officers and directors, and at all relevant times, members or their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest, and b) Sara Deutsch, Andres Horacio Ficicchia, Gonzalo Garcia Blaya, Luciana Mariana Hernando, Cecilia De Lorenzo, Magdalena Tavella, Adriana Rosa Bagattin, Daniela Patricia Goldman, Mariano Pablo Ferrari, Mariano Graciarena and Fernando Loureyo and the members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any of the above-listed persons has or had a controlling interest.

46.   The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Biozoom shares were actively traded on the OTCBB. While the exact number of Class members is unknown to Lead Plaintiff at this time and can only be ascertained through appropriate discovery, Lead Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  A total of 87,936,300 unregistered Biozoom shares were traded publicly during the Class Period on the OTCBB.  Record owners and other members

of the Class may be identified from records maintained by Defendants and other OTC market participants, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

47.     Lead Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the federal law and state laws that are complained of herein.    Lead Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

> (a)     Whether Defendants violated the federal securities laws, the Blue Sky Laws and/or the common law by their acts as alleged herein; and

> (b)     To what extent the members of the Class have sustained damages and the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FACTS

**A.     Biozoom's Predecessor Is Formed and Sold to Medford**

14

50. According to the SEC Action, on June 25, 2007, Entertainment Art, which later became Biozoom, was incorporated under the laws of the state of Nevada. Entertainment Art purported to be a developmental-stage company formed to design, produce, and sell a line of leather bags, with offices located in West Hempstead, New York. Entertainment Art was controlled by the three company officers.

51. From November 2007 through March 2008, Entertainment Art offered and sold a total of 610,000 shares of its 1,810,000 issued and outstanding shares to 34 different investors in private placement transactions. A share certificate reflecting Entertainment Art share ownership was issued to each investor.

52. On July 18, 2008, Entertainment Art filed a Form S-1 registration statement with the Securities and Exchange Commission (the "Commission") to register the 610,000 shares owned by the 34 shareholders who had acquired Entertainment Art stock in the private placement transactions ("the Form S-1 Shareholders").

53. The remaining 1,200,000 shares of Entertainment Art stock were held by the three Biozoom officers.

54. On May 1, 2009, Entertainment Art announced, in a public filing with the Commission, that the three Entertainment Art officers sold their total 1,200,000 shares of Entertainment Art stock to Medford Financial Ltd. ("Medford"), a Belizean entity.

55. Contrary to this disclosure, however, in addition to the 1,200,000 shares of Entertainment Art, Medford secretly also purchased all of the 610,000 shares that had been purchased by the Form S-1 shareholders.

56. Thus, in May, 2009, Medford Financial purchased *all* of the outstanding Entertainment Art shares, including all the shares held by the Form S-1 Shareholders.

15

57.     On June 30, 2009, Entertainment Art's board of directors approved the implementation of a 33:1 forward split for Entertainment Art stock.

58.     On July 21, 2009, the forward split became effective, and as a result Biozoom had 59,730,000 shares of common stock outstanding.

59.     *All* 59,730,000 shares of Entertainment Art stock were owned by Medford.

**B.     Entertainment Art Is Sold Again and Changes Its Name and Business**

60.     According to the SEC Action, Entertainment Art lay dormant between July 2009 and October 2012, with no activities or revenues.

61.     On October 25, 2012, Entertainment Art reported in a public filing with the SEC that on October 19, 2012, Medford sold 39,600,000 common shares of Entertainment Art in a private transaction to Le Mond Capital.

62.     Le Mond Capital purports to be an entity based in the British Virgin Islands.

63.     Le Mond Capital's purported owner was Sara Deutsch, who was a resident of Buenos Aires, Argentina.

64.     From September 2011 to at least October 2012, Deutsch worked as a manager of Magdalena's Party, a restaurant located in Buenos Aires, Argentina.

65.     Magdalena's Party is co-owned by, among others, Deutsch and Magdalena Tavella.

66.     Following the October 19, 2012 sale, Entertainment Art affirmed to the SEC that Le Mond Capital controlled over 66.3% of the company's issued and outstanding common stock.

67.     However, in reality Le Mond Capital purchased the *entire* company from Medford – that is, it purchased all of Entertainment Art's 59,730,000 outstanding shares.

68.     Deutsch, the purported owner of Le Mond Capital, became Entertainment Art's new President, Chief Executive Officer, Principal Executive Officer, Treasurer, Chief Financial Officer, Secretary, Treasurer, and Director.

69.     On March 12, 2013, Entertainment Art publicly announced a change in its business operations from fashion leather bag design and marketing to biotechnology.

70.     Specifically, Entertainment Art announced a transaction pursuant to which its newly formed subsidiary, Biozoom Technologies, Inc., acquired certain patents, licenses, and related assets from each of three separate companies, Opsolution Spectroscopic Systems, Opsolution NanoPhotonics, and Opsolution GmBH, (the "Opsolution acquisition") in exchange for cash of $50,000 and 39 million shares of Entertainment Art common stock.

71.     Entertainment Art stated that, through Biozoom, it was now in the business of "researching, developing, and licensing technologies relating to the mobile remote collection of biomedical data as well as bilateral diagnostic communication."

72.     Entertainment Art further stated that – as of immediately after closing of the Opsolution acquisition and filing of the March 12, 2013 Form 8-K – Deutsch would step down as CEO and Chief Financial Officer of Entertainment Art, but would stay on as a Director.

73.     As a result of the Opsolution acquisition, the 59,730,000 outstanding shares of Entertainment Art were allocated in the following manner: first, Le Mond Capital returned 39,000,000 shares to Entertainment Art, and then those 39,000,000 shares were allocated – as shares bearing a restrictive legend intended to prevent their public distribution – to four entities that were associated with the Opsolution entities.

74.     Thus, after these allocations, 20,730,000 shares of Entertainment Art remained in Le Mond Capital's ownership. Le Mond Capital retained 600,000 of these shares, bearing a

17

restrictive legend. The remaining 20,130,000 shares – which represented the total shares purchased by the Form S-1 Shareholders (and subsequently sold in the Medford Financial transaction in May 2009 and split 1-to-33) – were unallocated.

75.    On April 1, 2013, Entertainment Art changed its name to Biozoom.

## C.    Biozoom Affiliates Sell Their Restricted Biozoom Shares in an Unregistered Offering

76.    According to the SEC Action, from January 2013 to June 2013, brokerage accounts were opened at two securities broker-dealer firms, in the names of ten Argentinean citizens who were residents of Buenos Aires: Andres Horacio Ficicchia, Gonzalo Garcia Blaya, Luciana Mariana Hernando, Cecilia De Lorenzo, Fernando Loureyro and Mariano Graciarena

77.    Between January 2013 and June 2013, the ten Argentinean citizens, acting in concert, deposited a total of 20,130,000 shares to the two broker-dealer firms.

78.    All those shares were obtained by the ten Argentina citizens from Le Monde and Deutsch after October 19, 2012.

79.    These 20,130,000 shares represented all of the shares that were unallocated after the Opsolution Acquisition. Moreover, these shares represented 100% percent of the total shares without a restrictive legend outstanding in Biozoom at the time, and more than 33% percent of the total outstanding shares of Biozoom.

## D.    The Biozoom Shares Are Sold to the Public Pursuant to a Pump-and-Dump Scheme, in an Unregistered Offering.

80.    Prior to May 16, 2013, no shares of Biozoom or Entertainment Arts were publicly offered on the OTC Bulletin Board.

81.    On May 16, 2013, Biozoom shares were offered (listed) for the first time on the OTC Bulletin Board.

82.    Beginning on May 22, 2013 –after nearly all Biozoom shares were deposited by the Argentinean citizens with broker-dealer firms– Biozoom began issuing a series of press releases in which it claimed it "created the world's first portable, handheld consumer device" to instantly and non-invasively measure certain biomarkers. These claims were also made by other stock promoters, including Global Financial, Inc., StockPreacher.com, among others.

83.    Following these positive claims concerning Biozoom's prospects, starting on May 16, 2013, some of the ten Argentinean citizens sold, in coordinated sales, 14,078,406 shares of Biozoom stock on the OTC market, as reflected the chart below:

| Biozoom Shareholder | Shares Sold | % of total Biozoom Shares | Dates Sold |
|---|---|---|---|
| Blaya | 1,312,053 | 2.20% | 5/16/13 - 6/13/13 |
| De Lorenzo | 1,328,000 | 2.22% | 6/17/13 - 6/18/13 |
| Hernando | 1,815,000 | 3.04% | 6/6/13 - 6/17/13 |
| Ficicchia | 1,402,500 | 2.35% | 5/20/13 - 6/5/13 |
| Tavella | 1,592,444 | 2.67% | 6/7/13 - 6/11/13 |
| Bagattin | 2,176,726 | 3.64% | 6/10/13 - 6/18/13 |
| Ferrari | 1,994,038 | 3.34% | 6/7/13 - 6/19/13 |
| Goldman | 2,457,645 | 4.11% | 5/28/13 - 6/6/13 |
| Total | 14,078,406 | 23.57% | |

84.     On June 14, 2013, two other Argentinean citizens – Fernando Loureyro and Mariano Graciarena – opened accounts at the same broker-dealer firm.  On June 18, 2013, Loureyro deposited 2,300,000 Biozoom shares into his account, and on the same date Graciarena deposited 2,145,000 shares into his account.  However, Loureyro and Mariano Graciarena were not able to sell those shares prior to the SEC suspension on June 25, 2013.

85.     No registration statement had been filed with the Securities and Exchange Commission, or was in effect, for the sales of Biozoom shares by the Argentinean citizens on the OTC Bulletin Board, and such sales did not qualify for any exception from registration.

86.     All of the Biozoom shares first offered to the public and traded on the OTC Bulletin Board starting on May 16, 2013 and up until June 25, 2013, when the Commission suspended trading in Biozoom, were unregistered shares, traceable to the 20,130,000 shares transferred to the Argentina citizens and offered to the public by such Argentina citizens, with the possible exception of 600 shares.

87.     All of this activity took place within 40 days after these unregistered shares were first offered bona fide on the OTCBB.

**E.     Biozoom Was a Penny Stock at All Relevant Times**

88.     Biozoom was a "penny stock" as defined by the Securities Exchange Act of 1934 ("Exchange Act").  At all times relevant to this Complaint, the stock's shares traded at less than $5.00 per share.

89.     During the same period, Biozoom's stock did not meet any of the exceptions to penny stock classification pursuant to Section 3(a)(51) and Rule 3a51-1 of the Exchange Act.

**F.     Defendants Offered, Sold and Delivered the Biozoom Shares to Plaintiffs and Others Before Transactions Were Halted by the SEC.**

20

90.     Defendants acted as market makers for the unregistered Biozoom shares traded on the OTC Bulletin Board.

91.     Beginning on May 16, 2013 and continuing through June 25, 2013, while the Argentinean citizens were, on one hand, dumping their unregistered shares of Biozoom into the market, Defendants were on the other hand, purchasing such shares and offering, selling and/or delivering those unregistered shares to Lead  Plaintiff and the Class at increasingly high prices and volume.  The Biozoom scheme continued until June 25, 2013, at which time the SEC suspended trading in Biozoom shares, however, Defendants' misconduct continued until the delivery of the last shares they sold on June 24, 2013, which delivery took place, upon information and belief, on June 27, 2013.

## CLAIMS FOR RELIEF

## COUNT I

### For Violations of Section 12(a)(1) of the Securities Act Against Defendants KCG, Automated Trading Desk, Citigroup Global Markets, Citadel, E-Trade, G1, BTIG, Canaccord, Collins Stewart, Pershing, Maxim and UBS Securities

92.     Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

93.     This Count is asserted against Defendants KCG, Automated Trading Desk, Citigroup Global Markets, Citadel, E-Trade, G1, BTIG, Canaccord, Collins Stewart, Pershing, Maxim, and UBS Securities on behalf of Lead Plaintiff and members of the Class who purchased shares of Biozoom from the Defendants named herein.

94.     Defendants KCG, Automated Trading Desk, Citigroup Global Markets, Citadel, E-Trade, G1, BTIG, Canaccord, Collins Stewart, Pershing, Maxim, and UBS Securities were sellers of Biozoom common stock within the meaning of the Securities Act because Defendants named herein engaged in a course of conduct of offering, selling and delivering unregistered shares of

21

Biozoom at increasingly high prices and volumes in violation of Section 5 of the Securities Act to Lead Plaintiff and other members of the Class on the OTCBB, and financially benefitted thereby. There was no Registration Statement in effect for the shares of Biozoom sold to Lead Plaintiff and the Class.

95.     Defendants continued to offer the unregistered Biozoom shares to the Lead Plaintiff and the other members of the Class up until June 25, 2013, the day when the Securities and Exchange Commission suspended trading in Biozoom securities.  Defendants continued to make a market in Biozoom and offer and sell Biozoom shares to the members of the Class until June 25, 2013 and, upon information and belief, the last Biozoom shares sold by Defendants on June 24, 2013 were delivered three business days later, on June 27, 2013.

96.     Defendants used the means and instrumentalities of interstate commerce and the U.S. mail.

97.     The price of Biozoom common stock declined substantially starting on June 25, 2013 after the SEC suspended trading of Biozoom shares and announced an investigation of Biozoom's trading activity, and Lead Plaintiff and the other members of the Class have sustained damages as a result of Defendants' conduct.

98.     Less than one year has elapsed between the filing of this claim and the time of the violation upon which this claim is based.  Less than three years have elapsed between the time that the securities at issue were sold to the public and the time that the claim was filed asserting claims arising out of the sale of unregistered shares.

99.     By reason of the foregoing, Defendants are liable under Section 12(a)(1) of the Securities Act to Lead Plaintiff and the other members of the Class who purchased shares of Biozoom from Defendants named in this Count on the OTCBB.  Lead Plaintiff and members of

the Class seek to rescind and recover the consideration paid for their securities, and seek to recover damages as a result thereof in an amount to be determined at trial.

## COUNT II

### For Violations of N.J. Stat. § 49:3-71(a)(1) Against All Defendants

100.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

101.    This Count is asserted against all Defendants for violations of N.J. Stat. § 49:3-71(a)(1) on behalf of Lead Plaintiff and all members of the Class.

102.    Biozoom shares were offered and quoted on the OTCBB, located in New Jersey. Defendants published the bid and ask prices for Biozoom shares through the OTCBB and communicated those bid and ask prices to Plaintiffs and the Class from the OTCBB servers located in New Jersey.  The OTCBB was the sole source of information available to Lead Plaintiff and the Class regarding the bid and ask pricing of Biozoom shares, and was the means by which the Market Maker Defendants communicated their offers to purchase Biozoom shares to Lead Plaintiff and the Class.

103.    By virtue of the foregoing and as more fully detailed in the OTCBB section above, Defendants' offers of shares of Biozoom to Lead Plaintiff and the Class were made in, or originated from New Jersey.

104.    The securities or transactions at issue did not meet any of the exemptions to registration set forth in N.J. Stat. § 49:3-50, nor were shares of Biozoom federal covered securities for which a notice filing and fees were submitted as required by § 49:3-60.1.

105.    Defendants thus violated N.J. Stat. § 49:3-71(a)(1) by offering and/or selling unregistered shares of Biozoom stock to Lead Plaintiff and the Class in violation of N.J. Stat. § 49:3-60.

23

106.     This claim has been brought within two years of the contract for sale, and within two years of the time Lead Plaintiff and the Class knew or should have known of the existence of his or her cause of action.

107.     By reason of the foregoing, Defendants are liable for violations of N.J. Stat. § 49:3-71(a)(1) to Lead Plaintiff and the Class who purchased Biozoom shares from Defendants and were damaged thereby.

108.     Lead Plaintiff and the Class seek to recover damages as a result thereof in the amount of the consideration they paid for their shares of Biozoom, less any amounts received on sale, plus interest thereon in an amount to be determined at trial.

## COUNT III

### For Violations of N.J. Stat. § 49:3-71(d) Against All Defendants

109.     Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

110.     This Count is asserted against all Defendants for violations of N.J. Stat. § 49:3-71(d).

111.     By virtue of their roles as Market Makers, Defendants, as securities broker-dealer firms, materially aided in the offer and sale of unregistered Biozoom securities by the Argentinean citizens and are liable to Lead Plaintiff and all members of the Class jointly and severally under N.J. Stat. § 49:3-71(a)(1).

112.     This claim has been brought within two years of the contract for sale, and within two years of the time Lead Plaintiff and the Class knew or should have known of the existence of his or her cause of action.

113.     By reason of the foregoing, Defendants are liable for violations of N.J. Stat. § 49:3-71(d) to Lead Plaintiff and the members of the Class, who have been damaged thereby.

24

114.    Accordingly, Lead Plaintiff and the Class seek to recover damages as a result thereof in the amount of the consideration paid for their shares of Biozoom, less any amounts received on sale, plus interest thereon in an amount to be determined at trial.

## COUNT IV

### For Breach of Contract Under New Jersey Law Against All Defendants

115.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

116.    This Count is asserted against all Defendants for breach of contract under New Jersey law.

117.    Defendants offered Biozoom shares for sale that were purportedly registered and freely tradable through the continuous publication of bid and ask quotes through the OTCBB servers.  Defendants' offers were made in and originated from New Jersey.

118.    Lead Plaintiff and members of the Class entered into valid contracts with Defendants by accepting the offers.

119.    Lead Plaintiff and the Class fully performed and satisfied their obligations under the contracts by paying Defendants stated value for their shares of Biozoom.

120.    Defendants breached their contracts with Lead Plaintiff and the Class by not delivering registered and freely tradable shares of Biozoom, and instead delivering unregistered, restricted shares that were not valid for sale to the investing public.

121.    Lead Plaintiff and the Class have suffered damages as a direct and proximate cause of Defendants' breach of contract, and seek to recover damages as a result thereof in an amount to be determined at trial.

122.    This action was filed within six years from when the cause of action accrued.

## COUNT V

25

**For Negligence Under New Jersey Law Against All Defendants**

123.     Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

124.     This Count is asserted against all Defendants for negligence under New Jersey law.

125.     In their capacity as Market Makers for Biozoom stock, Defendants owed a duty to Lead Plaintiff and the Class to determine that the shares they offered, sold and delivered were duly registered and freely tradable before offering those Biozoom shares for sale to investors.

126.     Defendants were negligent and breached their duties to Lead Plaintiff and the Class by failing to perform adequate due diligence regarding the Biozoom shares that Defendants offered, sold and delivered to investors, and by selling unregistered shares of Biozoom to Lead Plaintiff and the Class that were not valid for sale to the investing public.

127.     Lead Plaintiff and members of the Class were injured as a result of Defendants' negligence, and seek to recover damages as a result thereof in an amount to be determined at trial.

128.     This action was filed within two years from when the cause of action accrued.

## COUNT VI

**In The Alternative, For Violations of N.J. Stat. § 49:3-71(a)(1) Defendant KCG**

129.     Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

130.     This Count is asserted in the alternative, against Defendant KCG for violations of N.J. Stat. § 49:3-71(a)(1) on behalf of Lead Plaintiff and members of the Class who purchased Biozoom shares from Defendant KCG.

131.     Defendant KCG offered, sold and delivered Biozoom shares that were purportedly registered and freely tradable.  Defendant's activities were controlled, directed and/or overseen from its offices in New Jersey.

132.    The securities or transactions at issue did not meet any of the exemptions to registration set forth in N.J. Stat. § 49:3-50, nor were shares of Biozoom federal covered securities for which a notice filing and fees were submitted as required by § 49:3-60.1.

133.    Defendant KCG thus violated N.J. Stat. § 49:3-71(a)(1) by offering, selling and delivering unregistered shares of Biozoom stock to Lead Plaintiff and members of the Class who purchased Biozoom shares from Defendant KCG in violation of N.J. Stat. § 49:3-60.

134.    This claim has been brought within two years of the contract for sale, and within two years of the time Lead Plaintiff and members of the Class who purchased Biozoom shares from Defendant KCG knew or should have known of the existence of his or her cause of action.

135.    By reason of the foregoing, Defendant is liable for violations of N.J. Stat. § 49:3-71(a)(1) to Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant and were damaged thereby.

136.    Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG seek to recover damages as a result thereof in the amount of the consideration they paid for their shares of Biozoom, less any amounts received on sale, plus interest thereon in an amount to be determined at trial.

## COUNT VII

### In The Alternative, For Violations of N.J. Stat. § 49:3-71(d) Against Defendant KCG

137.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

138.    This Count is asserted in the alternative, against Defendant KCG, for violations of N.J. Stat. § 49:3-71(d), on behalf of Lead Plaintiff and members of the Class who purchased Biozoom shares from Defendant KCG.

139.     By virtue of its role as a Market Maker, Defendant KCG, as a securities broker-dealer firm, materially aided in the offer and sale of unregistered Biozoom securities by the Argentinean citizens and is liable to Lead Plaintiff and all members of the Class who purchased Biozoom shares from Defendant KCG jointly and severally under N.J. Stat. § 49:3-71(a)(1).

140.     This claim has been brought within two years of the contract for sale, and within two years of the time Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG knew or should have known of the existence of his or her cause of action.

141.     By reason of the foregoing, Defendant is liable for violations of N.J. Stat. § 49:3-71(d) to Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG, and who have been damaged thereby.

142.     Accordingly, Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG seek to recover damages as a result thereof in the amount of the consideration paid for their shares of Biozoom, less any amounts received on sale, plus interest thereon in an amount to be determined at trial.

## COUNT VIII

### In The Alternative, For Breach of Contract Under New Jersey Law
### Against Defendant KCG

143.     Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

144.     This Count is asserted in the alternative, on behalf of Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG.

145.     Defendant KCG offered Biozoom shares for sale that were purportedly registered and freely tradable.   Defendant's activities were controlled, directed and/or overseen from its offices in New Jersey.

28

146.    Lead Plaintiff and members of the Class who purchased Biozoom shares from Defendant KCG entered into valid contracts with Defendant by accepting Defendant's offers.

147.    Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG fully performed and satisfied their obligations under the contracts by paying Defendant stated value for their shares of Biozoom.

148.    Defendant breached its contracts with Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG by not delivering registered and freely tradable shares of Biozoom, and instead delivering unregistered, restricted shares that were not valid for sale to the investing public.

149.    Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG have suffered damages as a direct and proximate cause of Defendants' breach of contract, and seek to recover damages as a result thereof in an amount to be determined at trial.

150.    This action was filed within six years from when the cause of action accrued.

## COUNT IX

**In The Alternative, For Negligence Under New Jersey Law Against Defendant KCG**

151.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

152.    This Count is asserted in the alternative, on behalf of Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG.

153.    By virtue of its role as a Market Maker for Biozoom stock, Defendant owed a duty to Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG to determine that the shares they offered, sold and delivered were duly registered and freely tradable before offering those Biozoom shares for sale to investors.

154.    Defendant KCG was negligent and breached its duties to Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG by failing to perform adequate due diligence regarding the Biozoom shares that Defendant offered, sold and delivered to investors, and by selling unregistered shares of Biozoom to Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG that were not valid for sale to the investing public.

155.    Lead Plaintiff and the members of the Class who purchased Biozoom shares from Defendant KCG were injured as a result of Defendant's negligence, and seek to recover damages as a result thereof in an amount to be determined at trial.

156.    This action was filed within two years from when the cause of action accrued.

## COUNT X

### In the Alternative, For Breach of Contract Under New York Law Against Defendants Citigroup, Canaccord, Collins Stewart, and Maxim

157.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

158.    This Count is asserted in the alternative, on behalf of Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying Zhu Wang and Moore and the members of the Class who purchased Biozoom shares from Defendants Citigroup, Canaccord, Collins Stewart, and Maxim.

159.    Defendants named in this Count offered Biozoom shares for sale that were purportedly registered and freely tradable.  Defendants' activities were controlled, directed and/or overseen from their offices in New York.

160.    Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying Zhu Wang and Moore and members of the Class who purchased Biozoom shares from Defendants Citigroup, Canaccord, Collins Stewart, and Maxim entered into valid contracts with those Defendants.

30

161.     Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying Zhu Wang and Moore and members of the Class who purchased Biozoom shares from Defendants Citigroup, Canaccord, Collins Stewart, and Maxim fully performed and satisfied their obligations under the contract by paying Defendants stated value for their shares of Biozoom.

162.     Defendants named in this Count breached their contracts with Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying Zhu Wang and Moore and members of the Class who purchased shares of Biozoom from them by not delivering registered and freely tradable shares of Biozoom, and instead delivering unregistered, restricted shares that were not valid for sale to the investing public.

163.     Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying Zhu Wang and Moore and members of the Class who purchased Biozoom shares from Defendants Citigroup, Canaccord, Collins Stewart, and Maxim have suffered damages as a direct and proximate cause of Defendants' breach of contract, and seek to recover damages as a result thereof in an amount to be determined at trial.

164.     This action was filed within six years from when the cause of action accrued.

## COUNT XI

### In the Alternative, For Negligence Under New York Law Against Defendants Citigroup, Canaccord, Collins Stewart, and Maxim

165.     Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

166.     This Count is asserted in the alternative, on behalf of Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying Zhu Wang and Moore and the members of the Class who purchased Biozoom shares from Defendants Citigroup, Canaccord, Collins Stewart, and Maxim.

31

167. In their capacity as a Market Makers for Biozoom stock, Defendants Citigroup, Canaccord, Collins Stewart, and Maxim owed a duty to determine that the shares they offered sold and delivered were duly registered and freely tradable before offering those Biozoom shares for sale to investors.

168. Defendants Defendants Citigroup, Canaccord, Collins Stewart, and Maxim were negligent and breached their duties to Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying Zhu Wang and Moore and the members of the Class who purchased Biozoom shares from them by failing to perform adequate due diligence regarding the Biozoom shares that Defendants offered, sold and delivered, and instead Defendants Citigroup, Canaccord, Collins Stewart, and Maxim sold unregistered shares of Biozoom that were not valid for sale to the investing public.

169. Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying Zhu Wang and Moore and members of the Class who purchased shares of Biozoom from the Defendants named in this Count were injured as a result of Defendants' negligence and seek to recover damages as a result thereof in an amount to be determined at trial.

170. This action was filed within five years from when the cause of action accrued.

## COUNT XII

### In the Alternative, For Unjust Enrichment Under New York Law Against Defendants Citigroup, Canaccord, Collins Stewart, and Maxim

171. Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

172. This Count is asserted in the alternative, on behalf of Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying Zhu Wang and Moore and members of the Class who purchased Biozoom shares from Defendants Citigroup, Canaccord, Collins Stewart, and Maxim, thereby enriching and conferring a benefit on those Defendants at the expense of the Plaintiffs. Defendants

named in this Count collected funds from Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying

Zhu Wang and Moore and members of the Class for shares of Biozoom, yet failed to deliver duly

registered and freely tradable shares.  Instead, the Defendants named in this Count provided those

Plaintiffs with unregistered, restricted shares that were not valid for sale to the investing public.

173.    Allowing Defendants to retain the purchase price is against equity and good

conscience.

174.    Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying Zhu Wang and Moore

have suffered damages as a direct and proximate cause of Defendants' unjust enrichment.

175.    Defendants named in this Count should be compelled to disgorge into a common

fund for the benefit of Plaintiffs Kushmore, Stephens, Spiteri, Rui Wang, Ying Zhu Wang and

Moore and members of the Class who purchased Biozoom shares from Defendants named in this

Count.

176.    This action was filed within six years from when the cause of action accrued.

## COUNT XIII

### In the Alternative, For Violations of § 815 Ill. Comp. Stat. 5/12 Against Defendants Archipelago, Citadel, G1, and E-Trade

177.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

178.    This Count is asserted in the alternative, on behalf of Plaintiffs Spitz, Basdekis,

Weindorf, Cole and Aduddell and members of the Class who purchased Biozoom shares from

Defendants Archipelago, Citadel, G1 and E-Trade for violations of § 815 ILCS 5/12.

179.    Defendants Archipelago, Citadel, G1, and E-Trade offered, sold and delivered

unregistered Biozoom shares to Plaintiffs named in this Count and members of the Class who

purchased their Biozoom shares from those Defendants.  Defendants' activities were directed and

overseen from their offices in Illinois.

33

180.    The securities or transactions at issue were not registered as required under § 815 ILCS 5/5 and did not meet any of the exemptions to registration set forth in § 815 ILCS 5/3 or § 815 ILCS 5/4, and were not registered via coordination or by qualification pursuant to § 815 ILCS 5/5.

181.    Defendants Archipelago, Citadel, G1, and E-Trade violated § 815 ILCS 5/12, and are therefore liable under § 815 ILCS 5/13 for selling unregistered shares of Biozoom to Plaintiffs named in this Count and members of the Class who purchased shares of Biozoom from the Defendants named herein.

182.    This claim has been brought within three years from the date of the sale of the Biozoom shares to Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and members of the Class who purchased Biozoom shares from Defendants Archipelago, Citadel, G1, and/or E-Trade, and within three years of the time Plaintiffs and members of the Class knew or should have known of the existence of his or her cause of action.

183.    By reason of the foregoing, Defendants violated § 815 ILCS 5/12, and Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and the members of the Class who purchased Biozoom shares from the above-named Defendants were damaged thereby.

184.    Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and the members of the Class who purchased Biozoom shares from Defendants Archipelago, Citadel, G1, and/or E-Trade seek to recover damages as a result thereof in the amount of the consideration paid for their shares of Biozoom, less any amounts received on sale, plus interest thereon in an amount to be determined at trial.

185.    Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and the members of the Class who purchased Biozoom shares from Defendants Archipelago, Citadel, G1, and/or E-Trade,

through this Complaint, hereby demand rescission for the Biozoom shares they purchased from the above-named Defendants. The Complaint will be served on Defendants Archipelago, Citadel, G1, and E-Trade within six months of when Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and the members of the Class who purchased Biozoom shares from Defendants acquired knowledge.

## COUNT XIV

### In the Alternative, For Materially Aiding Violations of § 815 Ill. Comp. Stat. 5/12 Against Defendants Archipelago, Citadel, G1, and E-Trade

186. Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

187. This Count is asserted in the alternative, for violations of § 815 Ill. Comp. Stat. 5/12 on behalf of those Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and members of the Class who purchased Biozoom shares from Defendants Archipelago, Citadel, G1 and E-Trade.

188. By virtue of their roles as Market Makers, and securities broker-dealer firms, Defendants Archipelago, Citadel, G1, and E-Trade materially aided in the offer, sale and delivery of unregistered securities by the Argentinean citizens who offered and sold unregistered Biozoom shares in violation of § 815 ILCS 5/12.

189. Defendants Archipelago, Citadel, G1, and/or E-Trade are thus, under § 815 ILCS 5/13, jointly and severally liable for the offer, sale and delivery of those unregistered securities to Plaintiffs named in this Count and members of the Class who purchased Biozoom shares from those Defendants.

190. Defendants Archipelago, Citadel, G1, and/or E-Trade knew or had reasonable grounds to know that the Argentinean citizens were conducting an unregistered, nonexempt offering of Biozoom securities to the investing public.

35

191.    This claim has been brought within three years from the date of sale of the Biozoom shares to Plaintiffs named in this Count and the members of the Class who purchased Biozoom shares from Defendants Archipelago, Citadel, G1, and/or E-Trade, and within three years of the time Plaintiffs and the Class knew or should have known of the existence of his or her cause of action.

192.    By reason of the foregoing, Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and the members of the Class who purchased Biozoom shares from Defendants named in this Count and were damaged thereby.

193.    Accordingly, Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and the members of the Class who purchased Biozoom shares from Defendants Archipelago, Citadel, G1, and/or E-Trade seek to recover damages as a result thereof in the amount of the consideration paid for their shares of Biozoom, less any amounts received on sale, plus interest thereon in an amount to be determined at trial.

194.    Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and the members of the Class who purchased Biozoom shares from Defendants Archipelago, Citadel, G1, and/or E-Trade, through this Complaint, hereby demand rescission for the Biozoom shares they purchased from the above-named Defendants.  The Complaint will be served on Defendants Archipelago, Citadel, G1, and E-Trade within six months of when Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and the members of the Class who purchased Biozoom shares from Defendants acquired knowledge.

## COUNT XV

### In the Alternative For Breach of Contract under Illinois Law Against Defendants Archipelago, Citadel, G1, and E-Trade

195.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

36

196.    This Count is asserted in the alternative, on behalf of Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and members of the Class who purchased Biozoom shares from Defendants Archipelago, Citadel, G1 and E-Trade.

197.    Defendants named in this Count offered Biozoom shares for sale that were purportedly registered and freely tradable.

198.    Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and members of the Class who purchased Biozoom shares from Defendants Archipelago, Citadel, G1 and E-Trade entered into valid contracts with those Defendants.

199.    Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and members of the Class who purchased Biozoom shares from Defendants Archipelago, Citadel, G1 and E-Trade fully performed and satisfied their obligations under the contract by paying stated value to Defendants for their shares.

200.    Defendants Archipelago, Citadel, G1, and E-Trade breached their contracts with Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and members of the Class who purchased Biozoom shares from them by not delivering registered and freely tradable shares of Biozoom, and instead delivering unregistered, restricted shares that were not valid for sale to the investing public.

201.    Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and members of the Class who purchased Biozoom shares from Defendants Archipelago, Citadel, G1 and E-Trade have suffered damages as a direct and proximate cause of Defendants' breach of contract, and seek to recover damages as a result thereof in an amount to be determined at trial.

202.    This action was filed within five years from when the cause of action accrued.

## COUNT XVI

### In the Alternative For Negligence under Illinois Law Against
### Defendants Archipelago, Citadel, G1, and E-Trade

37

203.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

204.    This Count is asserted in the alternative, on behalf of Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and members of the Class who purchased shares of Biozoom from Defendants Archipelago, Citadel, G1 and E-Trade.

205.    In their capacity as a Market Makers for Biozoom stock, Defendants Archipelago, Citadel, G1, and E-Trade owed a duty to determine that the shares they offered sold and delivered were duly registered and freely tradable before offering those Biozoom shares for sale to investors.

206.    Defendants Archipelago, Citadel, G1, and E-Trade were negligent and breached their duties to Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and the members of the Class who purchased Biozoom shares from them by failing to perform adequate due diligence regarding the Biozoom shares that Defendants offered, sold and delivered, and instead sold unregistered shares of Biozoom that were not valid for sale to the investing public.

207.    Plaintiffs Spitz, Basdekis, Weindorf, Cole and Aduddell and members of the Class who purchased shares of Biozoom from the Defendants named in this Count were injured as a result of Defendants' negligence and seek to recover damages as a result thereof in an amount to be determined at trial.

208.    This action was filed within two years from when the cause of action accrued.

## COUNT XVII

### In the Alternative For Violations of
### California Corporations Code § 25130 Against Defendant BTIG

209.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

210. This Count is asserted in the alternative, on behalf of Plaintiff Freed and the members of the Class who purchased unregistered Biozoom shares from Defendant BTIG for violations of California Corporations Code § 25130.

211. Defendants BTIG offered, sold and delivered unregistered shares of Biozoom to Plaintiff Freed and members of the Class who purchased Biozoom shares from it. Defendants' activities were directed and overseen from its offices in California.

212. The securities transactions at issue were not qualified for sale under §§ 25131, 25111, or 25113 of the California Corporations Code and the transactions and securities were not exempt or otherwise excused from qualification under §§ 25100-25106 of the California Corporations Code.

213. Defendant BTIG is liable under § 25503 of the California Corporations Code for selling to Plaintiff Freed and members of the Class who purchased Biozoom shares from Defendant BTIG unregistered shares of Biozoom in violation of § 25130.

214. Plaintiff Freed and the members of the Class who purchased Biozoom shares from BTIG seek to recover damages as a result thereof in the amount of the consideration paid for their shares of Biozoom, less any amounts received on sale, plus interest thereon in an amount to be determined at trial.

215. This claim has been brought within two years from the date of sale of the Biozoom shares by BTIG to Plaintiffs and the Class, and within one year from the time Plaintiffs and the Class knew or should have known of the existence of his or her cause of action.

216. Plaintiff Freed and the members of the Class who purchased Biozoom shares from BTIG did not have actual knowledge that the Biozoom shares they purchased were sold in violation of § 25503 prior to May 22, 2014.

## COUNT XVIII

### In the Alternative, For Violations of California Corporations Code § 25504 for Materially Aiding Violations of California Corporations Code § 25130 Against Defendant BTIG

217.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

218.    This Count is asserted in the alternative, on behalf of Plaintiff Freed and members of the Class who purchased Biozoom shares from Defendant BTIG, for violations of California Corporations Code §25504.

219.    By virtue of its role as a Market Maker, Defendant BTIG, a securities broker-dealer firm, materially aided in the offer and sale of unregistered Biozoom securities by the Argentinean citizens and is liable to Plaintiff Freed and all members of the Class who purchased Biozoom shares from Defendant BTIG as a person jointly and severally liable with the primary violators, under California Corporations Code § 25130.

220.     Defendant BTIG knew or had reasonable grounds to know that the Argentinean citizens were conducting an unregistered, nonexempt offering of Biozoom securities to the public.

221.    Defendant BTIG is thus jointly and severally liable for the offer and sale of unregistered securities to Plaintiffs and members of the Class who purchased Biozoom shares from those Defendant.

222.    Plaintiff Freed and members of the Class who purchased Biozoom shares from BTIG did not have actual knowledge that the Biozoom shares they purchased were sold in violation of § 25503 prior to May 20, 2014.

223.    This claim has been brought within two years from the date of sale of the Biozoom shares to Plaintiff Freed and the Class, and within one year from the time Plaintiff Freed and the Class knew or should have known of the existence of his or her cause of action.

40

224.    By reason of the foregoing, Plaintiff Freed and the members of the Class who purchased Biozoom shares from Defendants named in this Count and were damaged thereby.

225.    Accordingly, Plaintiff Freed and the members of the Class who purchased Biozoom shares from Defendant BTIG have a right to recover the consideration paid for their shares of Biozoom, less any amounts received on sale, plus interest thereon.

## COUNT XIX

### In the Alternative For Breach of Contract
### Under California Law Against Defendant BTIG

226.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

227.    This Count is asserted in the alternative, on behalf of Plaintiff Freed and members of the Class who purchased Biozoom shares from Defendant BTIG.

228.    Defendant BTIG offered Biozoom shares for sale that were purportedly registered and freely tradable.

229.    Plaintiff Freed and members of the Class who purchased Biozoom shares from Defendant BTIG entered into valid contracts with Defendant.

230.    Plaintiff Freed and members of the Class who purchased Biozoom shares from Defendant BTIG fully performed and satisfied their obligations under the contract by paying stated value to Defendant for their shares.

231.    Defendant BTIG breached its contracts with Plaintiff Freed and members of the Class who purchased Biozoom shares from it by not delivering registered and freely tradable shares of Biozoom, and instead delivering unregistered, restricted shares that were not valid for sale to the investing public.

41

232.     Plaintiff Freed and members of the Class who purchased Biozoom shares from Defendant BTIG have suffered damages as a direct and proximate cause of Defendant's breach of contract, and seek to recover damages as a result of thereof in an amount to be determined at trial.

233.     This action was filed within four years from when the cause of action accrued.

## COUNT XX

### In the Alternative, For Negligence under California Law Against Defendant BTIG

234.     Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

235.     This Count is asserted in the alternative, on behalf of those Plaintiff Freed and members of the Class who purchased Biozoom shares from Defendant BTIG.

236.     In its capacity as a Market Maker for the sale of Biozoom shares, Defendant BTIG owed a duty to determine that the shares it offered sold and delivered were duly registered and freely tradable before offering those Biozoom shares for sale to investors.

237.     Defendant BTIG was negligent and breached its duties to Plaintiff Freed and the members of the Class who purchased Biozoom shares from it by failing to perform adequate due diligence regarding the Biozoom shares that Defendant offered, sold and delivered, and selling unregistered shares of Biozoom that were not valid for sale to the investing public.

238.     Plaintiff Freed and members of the Class who purchased Biozoom shares from BTIG were injured as a result of Defendant's negligence and seek to recover damages as a result thereof in an amount to be determined at trial.

239.     This action was filed within four years from when the cause of action accrued.

## COUNT XXI

### In the Alternative, For Violations of S.C. Code § 35-1-301
### Against Defendant Automated Trading Desk

240.     Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

241.    This Count is asserted in the alternative, against Defendant Automated Trading Desk for violations of S.C. Code § 35-1-301 on behalf of Plaintiffs Kushmore, Stephens and Spiteri and the members of the Class who purchased unregistered Biozoom shares from Defendant Automated Trading Desk.

242.    Defendant Automated Trading Desk offered, sold and delivered unregistered shares of Biozoom to Plaintiffs Kushmore, Stephens and Spiteri and the members of the Class who purchased Biozoom shares from Defendant.  Defendant's activities were directed and overseen from its offices in South Carolina.

243.    The Biozoom shares sold by Defendant to Plaintiffs Kushmore, Stephens and Spiteri and the member of the Class were not registered, were not federally covered securities, nor were the exempt from registration under S.C. Code §§ 35-1-201 through 35-1-203.

244.    Defendant Automated Trading Desk is liable under S.C. Code § 35-1-509 for selling to Plaintiffs Kushmore, Stephens and Spiteri and the members of the Class unregistered shares of Biozoom in violation of S.C. Code § 35-1-301.

245.    Plaintiffs Kushmore, Stephens and Spiteri and the members of the Class who purchased shares of Biozoom from Defendant Automated Trading Desk have been damaged thereby, and seek to recover damages as a result thereof in the amount of the consideration paid with interest and reasonable attorneys' fees, less any amount received on sale in an amount to be determined at trial.

246.    This action has been brought within three years after Defendant's violation of § 35-1-301.

## CLAIM XXII

### In The Alternative, For Materially Aiding Violations of S.C. Code § 35-1-509(g)

**Against Defendant Automated Trading Desk**

247.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

248.    This Count is asserted in the alternative, against Defendant Automated Trading Desk for violations of S.C. Code § 35-1-509(g) on behalf of Plaintiffs Kushmore, Stephens and Spiteri and all members of the Class who purchased unregistered Biozoom shares from Defendant Automated Trading Desk.

249.    By virtue of its roles as a Market Maker, Defendant Automated Trading Desk, a securities broker-dealer firm, materially aided in the offer and sale of unregistered Biozoom securities by the Argentinean citizens and is liable to Plaintiffs Kushmore, Stephens and Spiteri and the members of the Class who purchased Biozoom shares from Defendant Automated Trading Desk in violation of S.C. Code § 35-1-301.

250.    Defendant Automated Trading Desk knew or had reasonable grounds to know that the Argentinean citizens were conducting an unregistered, nonexempt offering of Biozoom securities to the public.

251.    Defendant Automated Trading Desk is thus jointly and severally liable for the offer and sale of unregistered securities to Plaintiffs Kushmore, Stephens and Spiteri and the Class pursuant to S.C. Code § 35-1-509(g).

252.    This claim has been brought within three years of the contract for sale.

253.    By reason of the foregoing, Defendant Automated Trading Desk is liable for violations of S.C. Code § 35-1-301 to Plaintiffs Kushmore, Stephens and Spiteri and the members of the Class who purchased Biozoom shares from Defendant, and who have been damaged thereby.

254.    Accordingly, Plaintiffs Kushmore, Stephens and Spiteri and the members of the Class who purchased unregistered shares of Biozoom from Defendant Automated Trading Desk

44

seek to recover damages as a result thereof in the amount of the consideration paid for their shares of Biozoom, less any amounts received on sale, plus interest thereon in an amount to be determined at trial.

## COUNT XXIII

### In the Alternative, For Breach of Contract Under South Carolina Law
### Against Defendant Automated Trading Desk

255.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

256.    This Count is asserted in the alternative, on behalf of Plaintiffs Kushmore, Stephens and Spiteri and members of the Class who purchased Biozoom shares from Defendant Automated Trading Desk.

257.    Defendant Automated Trading Desk offered Biozoom shares for sale that were purportedly registered and freely tradable.

258.    Plaintiffs Kushmore, Stephens and Spiteri and members of the Class who purchased Biozoom shares from Defendant Automated Trading Desk entered into valid contracts with the Defendant.

259.    Plaintiffs Kushmore, Stephens and Spiteri and members of the Class who purchased Biozoom shares from Defendant Automated Trading Desk fully performed and satisfied their obligations under the contract by paying stated value to Defendant for their shares.

260.    Defendant Automated Trading Desk breached its contracts with Plaintiffs Kushmore, Stephens and Spiteri and members of the Class who purchased Biozoom shares from it by not delivering registered and freely tradable shares of Biozoom, and instead delivering unregistered, restricted shares that were not valid for sale to the investing public.

261.    Plaintiffs Kushmore, Stephens and Spiteri and members of the Class who purchased Biozoom shares from Defendant Automated Trading Desk have suffered damages as a direct and

proximate cause of Defendant's breach of contract, and seek to recover damages as a result thereof in an amount to be determined at trial.

262. This action was filed within three years from when the cause of action accrued.

## COUNT XXIV

### In the Alternative for Negligence Under South Carolina Law
### Against Defendant Automated Trading Desk

263. Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

264. This Count is asserted in the alternative, on behalf of those Plaintiffs Kushmore, Stephens and Spiteri and members of the Class who purchased Biozoom shares from Defendant Automated Trading Desk.

265. In its capacity as a Market Maker for the sale of Biozoom shares, Defendant Automated Trading Desk owed a duty to determine that the shares it offered sold and delivered were duly registered and freely tradable before offering those Biozoom shares for sale to investors.

266. Defendant Automated Trading Desk was negligent and breached its duties to Plaintiffs Kushmore, Stephens and Spiteri and the members of the Class who purchased Biozoom shares from it by failing to perform adequate due diligence regarding the Biozoom shares that Defendant offered, sold and delivered, and selling unregistered shares of Biozoom that were not valid for sale to the investing public.

267. Plaintiffs and members of the Class who purchased Biozoom shares from Automated Trading Desk were injured as a result of Defendant's negligence and seek to recover damages as a result thereof in an amount to be determined at trial.

268. Plaintiffs filed this action within three years from when the cause of action accrued.

## COUNT XXV

### In the Alternative For Violations of Conn. Gen. Stat. § 36b-16

## Against Defendant UBS Securities

269.     Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

270.     This Count is asserted in the alternative against Defendant UBS Securities for violations of Conn. Gen. Stat. § 36b-16 on behalf of Plaintiffs Spiteri and Chesnick and the members of the Class who purchased unregistered Biozoom shares from Defendant.

271.     Defendant UBS Securites offered, sold and delivered unregistered shares of Biozoom to Plaintiffs Spiteri and Chesnick and members of the Class who purchased Biozoom shares from it.  Defendant's activities were directed and overseen from its offices in Connecticut.

272.     The Biozoom shares Defendant offered, sold and delivered to Plaintiffs Spiteri and Chesnick and the members of the Class who purchased Biozoom shares from it were not registered, were not federally covered securities, nor were they or the underlying transactions exempt from registration under Conn. Gen. Stat. § 36b-16.

273.     Defendant UBS Securities violated Conn. Gen. Stat. § 36b-29(a) by selling unregistered shares of Biozoom to Plaintiffs Spiteri and Chesnick and members of the Class who purchased Biozoom shares from it in violation of § 36b-16.

274.     Plaintiffs Spiteri and Chesnick and members of the Class who purchased Biozoom shares from Defendant UBS Securities have been damaged thereby, and seek to recover damages as a result thereof in the amount of the consideration paid with interest and reasonable attorneys' fees, less the amount received on sale in an amount to be determined at trial.

275.     This claim has been brought within two years of the contract for sale, and within two years of the time Plaintiffs Spiteri and Chesnick and the members of the Class who purchased shares of Biozoom from Defendant knew or should have known of the existence of his or her cause of action.

47

## COUNT XXVI

### In the Alternative, For Breach of Contract
### Under Connecticut Law Against Defendant UBS Securities

276.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

277.    This Count is asserted in the alternative, on behalf of those Plaintiffs Spiteri and Chesnick and members of the Class who purchased Biozoom shares from Defendant UBS Securities.

278.    Defendant UBS Securities offered, sold and delivered Biozoom shares that were purportedly registered and freely tradable.

279.    Plaintiffs Spiteri and Chesnick and members of the Class who purchased Biozoom shares from Defendant UBS Securities entered into valid contracts with the Defendant.

280.    Plaintiffs Spiteri and Chesnick and members of the Class who purchased Biozoom shares from Defendant UBS Securities fully performed and satisfied their obligations under the contracts by paying stated value to Defendant for their shares.

281.    Defendant UBS Securities breached its contracts with Plaintiffs Spiteri and Chesnick and members of the Class who purchased Biozoom shares from it by not delivering registered and freely tradable shares of Biozoom, and instead delivering unregistered, restricted shares that were not valid for sale to the investing public.

282.    Plaintiffs Spiteri and Chesnick and members of the Class who purchased Biozoom shares from Defendant UBS Securities have suffered damages as a direct and proximate cause of Defendant's breach of contract, and seek to recover damages as a result thereof in an amount to be determined at trial.

283.     This claim was filed within six years from when the cause of action accrued.

### COUNT XXVII

**In the Alternative For Negligence Under Connecticut Law**
**<u>Against Defendant UBS Securities</u>**

284.     Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

285.     This Count is asserted in the alternative, on behalf of Plaintiffs Spiteri and Chesnick and members of the Class who purchased Biozoom shares from Defendant UBS Securities.

286.     In its capacity as a Market Maker for the sale of Biozoom shares, Defendant UBS Securities owed a duty to determine that the shares it offered sold and delivered were duly registered and freely tradable before offering those Biozoom shares for sale to investors.

287.     Defendant UBS Securities was negligent and breached its duties to Plaintiffs Spiteri and Chesnick and the members of the Class who purchased Biozoom shares from it by failing to perform adequate due diligence regarding the Biozoom shares that Defendant offered, sold and delivered, and instead sold unregistered shares of Biozoom that were not valid for sale to the investing public.

288.     Plaintiffs Spiteri and Chesnick and members of the Class who purchased Biozoom shares from UBS Securities were injured as a result of Defendant's negligence and seek to recover damages as a result thereof in an amount to be determined at trial.

289.     This action was filed within two years from when the injury was first sustained or discovered and within three years from the date of the act complained of.

**COUNT XXVIII**

**In the Alternative, For Breach of Contract Under Florida Law**
**<u>Against Defendant VFinance</u>**

290.     Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

291.     This Count is asserted in the alternative, on behalf of Plaintiff Galanti and members of the Class who purchased Biozoom shares from Defendant VFinance.

49

292.    Defendant VFinance offered Biozoom shares for sale that were purportedly registered and freely tradable.

293.    Plaintiff Galanti and members of the Class who purchased Biozoom shares from Defendant VFinance entered into valid contracts with the Defendant.

294.    Plaintiff Galanti and members of the Class who purchased Biozoom shares from Defendant VFinance fully performed and satisfied their obligations under the contract by paying stated value to Defendant for their shares.

295.    Defendant VFinance breached its contracts with Plaintiff Galanti and members of the Class who purchased Biozoom shares from it by not delivering registered and freely tradable shares of Biozoom, and instead delivering unregistered, restricted shares that were not valid for sale to the investing public.

296.    Plaintiff Galanti and members of the Class who purchased Biozoom shares from Defendant VFinance have suffered damages as a direct and proximate cause of Defendant's breach of contract, and seek to recover damages as a result thereof in an amount to be determined at trial.

297.    This claim was filed within four years from when the cause of action accrued.

## COUNT XXIX

## In the Alternative, For Negligence Under Florida Law Against Defendant VFinance

298.    Lead Plaintiff repeats and re-alleges each of the allegations set forth above.

299.    This Count is asserted in the alternative, on behalf of Plaintiff Galanti and members of the Class who purchased Biozoom shares from Defendant VFinance.

300.    In its capacity as a Market Maker for the sale of Biozoom shares, Defendant VFinance owed a duty to determine that the shares it offered sold and delivered were duly registered and freely tradable before offering those Biozoom shares for sale to investors.

50

301.    Defendant VFinance was negligent and breached its duties to Plaintiff Galanti and the members of the Class who purchased Biozoom shares from it by failing to perform adequate due diligence regarding the Biozoom shares that Defendant offered, sold and delivered, and instead sold unregistered shares of Biozoom that were not valid for sale to the investing public.

302.    Plaintiff Galanti and members of the Class who purchased Biozoom shares from Defendant VFinance were injured as a result of Defendant's negligence and seek to recover damages as a result thereof in an amount to be determined at trial.

303.    This claim was filed within four years from the date of the act complained of.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

**A.**    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

**B.**    Awarding compensatory damages in favor of Plaintiffs and the other Class members, rescission, and disgorgement of all ill-gotten gains and/or proceeds of stock sales against Defendants for all damages sustained as a result of Defendants' wrongdoing in an amount to be proven at trial, including interest thereon;

**C.**    Awarding Plaintiffs, the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

**D.**    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

April 29 , 2015                                  Respectfully Submitted,

51

/s Alan L. Rosca

Alan L. Rosca
PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE,
A PROFESSIONAL LAW
CORPORATION
526 Superior Avenue, Suite 1255
Cleveland, Ohio 44114
Tel: 216-589-9280; Fax: 888-411-0038
arosca@prwlegal.com
Ohio Bar Registration No. 0084100

Joseph C. Peiffer (*pro hac vice*)
PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE,
A PROFESSIONAL LAW
CORPORATION
201 St. Charles Avenue, Suite 4610
New Orleans, Louisiana 70170-4610
Tel: (504) 523-2464; Fax: (504) 523-2464
jpeiffer@prwlegal.com

James P. Booker
PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE,
A PROFESSIONAL LAW
CORPORATION
526 Superior Avenue, Suite 1255
Cleveland, Ohio 44114
Tel: 216-589-9280; Fax: 888-411-0038
jbooker@prwlegal.com
Ohio Bar Registration No. 0090803

Daniel R. Karon
GOLDMAN SCARLATO KARON &
PENNY, P.C.
700 W. St. Clair Avenue, Suite 200
Cleveland, OH  44113
Telephone:  216-622-1851
Facsimile:  216-241-8175
karon@gskplaw.com

Paul J. Scarlato (*pro hac vice*)

GOLDMAN SCARLATO KARON &
PENNY, P.C.
101 E. Lancaster Avenue, Suite 204
Wayne, PA  19087
Telephone:  484-342-0700
Facsimile:  484-580-8747
scarlato@gskplaw.com

*Counsel for Lead Plaintiff and additional
plaintiff Stuart Spiteri and Lead Counsel for
the Class*

## <u>Certificate of Service</u>

I hereby certify that on April 29, 2015, a copy of the foregoing **Third Amended Complaint** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

*/s/ Alan L. Rosca*
Alan L. Rosca
PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE,
A PROFESSIONAL LAW
CORPORATION
1610 Euclid Avenue, Suite 1610
Cleveland, Ohio 44115
Tel: 216-589-9280; Fax: 888-411-0038
arosca@prwlegal.com
Ohio Bar Registration No. 0084100