**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|   |   |   |
|---|---|---|
| IN RE BIOZOOM, INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) | Master File No. 1:14-cv-01087-JG<br><br>Judge James S. Gwin |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiffs concede that based on (1) the Court's legal interpretation of the forty day rule contained in Section 4(a)(3)(A) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77(d)(3), that exempts transactions by a dealer except those transactions taking place prior to the expiration of forty days after the first date upon which the security was first bona fide offered to the public by the issuer or by or through an underwriter, *see,* Opinion and Order, Dkt. 127 (the "Order"), and (2) the facts developed through targeted discovery, that the forty-day period expired prior to the sales by the Defendants. Thus, based on stipulated facts, the Court's Order effectively terminated Plaintiffs' case and summary judgment on Plaintiffs' claims asserted under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77(a)(1), is appropriate. However, solely in response to Defendants' arguments in their Motion for Summary Judgment and for the purpose of preserving an accurate record of Plaintiffs' position, Plaintiffs offer the following counter-statement and clarifications.

Plaintiffs' Section 12(a)(1) claims were premised on the argument that the forty-day rule contained in Section 4(a)(3)(A) of the Securities Act applies to each new offering of securities by an issuer or by or through an underwriter. Plaintiff contended that such interpretation is consistent

with the legal authority on this issue.[1] Thus, it was Plaintiffs' position that the forty-day period – for purposes of the distribution at issue in this case – began to run on May 16, 2013, when the unregistered Biozoom shares at issue were first quoted on the OTC Bulletin Board ("OTCBB") and sold to the Class pursuant to the unregistered securities offering by the Argentinean shareholders.[2] Plaintiffs' core argument in opposition to the motion to dismiss was that any

---

[1] Plaintiffs' legal arguments on this issue have been set forth in their briefs and oral argument in opposition to Defendants' motions to dismiss, except for the newly-found Securities and Exchange Commission ("SEC") position on this issue, mentioned below. In the interest of judicial economy, those arguments are incorporated by reference and will not be restated here. See Dkts. 115, 116 and 120.

Additionally, in an amicus brief filed in 2003 before the Second Circuit, the SEC stated that "first offered, of course, means first-offered in the particular offering in which the plaintiff purchased. It does not refer to some earlier offering of the company's securities." Brief of the Securities and Exchange Commission as Amicus Curiae, Submitted at the Request of the Court, *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92 fn.2 (2d Cir. 2004) (No. 02-7680), 2003 U.S. 2nd Cir. Briefs LEXIS 31, *available at* http://www.sec.gov/litigation/briefs/stoltz-family.htm (discussing the meaning of "first bona fide offer" of a security in the context of the Securities Act's § 13 three-year statute of repose). "[F]irst bona fide offer" is intended to have the same meaning in the context of the dealer exemption in Section 4(a)(3)(A). S*ee P. Stolz*, 355 F.3d at 99 (identical terms in different parts of 1933 Act are intended to have the same meaning).

This position is consistent with the SEC's interpretation of the forty-day rule in the *North American* case:
> Relying on [the forty-day rule], the SEC contends that the 40-day period began running with respect to the new or secondary issue of North American shares when the tainted shares were first offered publicly in the United States in the latter part of June, 1967, and that these dealers were not therefore entitled to transaction exemptions with respect to their distribution of tainted stock into the United States.

*Sec. & Exch. Com. v. N. Am. Research & Dev. Corp.*, 280 F. Supp. 106, 124 (S.D.N.Y. 1968)(*"North American"*).

[2] In their Motion for Summary Judgment, Defendants contend that *Laser Arms Corp.* and *Kubik* stated that a bona fide offer occurs when the stock is first quoted. See Def. Mem. p.8 fn.7 (Dkt. 142-1, PageID# 2027). But the courts in both *Laser Arms Corp.* and *Kubik* relied for their holdings on *North American*, *see In re Laser Arms Corp. Sec. Litig.*, 794 F. Supp. 475, 483 (S.D.N.Y. 1989) and *Kubik v. Goldfield*, 479 F.2d 472, 475 (3d Cir. 1973), and the *North American* court held that the first bona fide offer *for the "new offering"* occurred when the North American securities were

quotation or sales of Biozoom securities prior to the May 16, 2013 Biozoom securities offering at issue in this case were irrelevant to Plaintiffs' Section 12(a)(1) claims, since they were not part of the unregistered securities offering that started on May 16, 2013.[3]

The Court disagreed with Plaintiffs' argument that the forty-day period contained in Section 4(a)(3)(A) applies to each new offering of securities. Instead, the Court held that the forty-day period runs only once, and does not reset with each new offering. Based on that ruling, any bona fide offer of Biozoom securities to the public would trigger the forty-day period, including for subsequent distributions.

After the Court made the legal determination that the forty-day period runs only once and does not reset, there still remained a factual issue of whether any transaction prior to the forty days constituted a bona fide offer to the public. Plaintiffs and Defendants conferred and agreed so as to avoid unnecessary burden on the parties and the Court, to focus discovery on the narrow factual issue of whether any bona fide transactions in Biozoom securities occurred prior to the forty days. Having satisfied themselves that the two 300-share transactions in October 2012 constitute such bona fide sales, the parties then agreed on the mechanism to bring the case to a judgment while

---

quoted on the pink sheet; *see North American*, 280 F. Supp. at 125 ("It therefore must be concluded that the bona fide *new* offering of North American shares into the United States did not take place prior to June 27, 1967, when the stock first appeared in the Pink Sheets.") (*emphases supplied*). Neither *Laser Arms* nor *Kubik* dealt with the issue of subsequent distributions, and analyzed the "first bona fide offer" in the context of a single distribution.

[3] To clarify, Plaintiffs did not oppose dismissal solely on the basis that the Court could not take judicial notice of the transactions. While Plaintiffs did argue that judicial notice of the trading records submitted by Defendants could not be properly taken, Plaintiffs principally argued that such pre-May 16, 2013 trading records and any prior quotations they may reflect, even if accurate and bona fide, are in any case irrelevant because a new forty-day period started to run when the May 16, 2013 new Biozoom offering commenced. See, Def. Mem. p. 3 ((Dkt. 142-1, PageID# 2022).

preserving Plaintiffs appellate rights through Defendants' expedited Motion for Summary Judgment.

While Plaintiffs respectfully disagree with the Court's interpretation of Section 4(a)(3)(A), Plaintiffs nonetheless concede that based on the Court's ruling thereon, the two 300-share transactions in 2012 rendered Defendants' sales of Biozoom stock to Plaintiffs outside the forty-day period as defined by the Court, and thus effectively terminated Plaintiffs' case. *See Raceway Properties, Inc. v. Emprise Corp.*, 613 F.2d 656, 657 (6th Cir. 1980).

## CONCLUSION

In view of the undisputed, stipulated facts and the applicable law, Plaintiffs agree that summary judgment by this Court is appropriate.

Dated: July 9, 2015                                   Respectfully Submitted,

/s/ Alan L. Rosca_____

Alan L. Rosca (0084100)
arosca@prwlegal.com
James P. Booker (0090803)
jbooker@prwlegal.com
PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE
A Professional Law Corporation
1422 Euclid Avenue, Suite 1610
Cleveland, Ohio 44115
Phone:  (216) 589-9280
Fax: (888) 411-0038

Joseph C. Peiffer (*pro hac vice*)
jpeiffer@prwlegal.com
PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE
A Professional Law Corporation
201 St. Charles Avenue, Suite 4610
New Orleans, LA 70170
Phone: (504) 523-2434
Fax: (504) 523-2464

4

Brendan M. Mewhinney (0089176)
bmewhinney@hendersonschmidlin.com
HENDERSON & SCHMIDLIN
840 Brainard Road
Highland Heights, OH 44143
Phone: (440) 720-0379
Fax: (440) 720-0385

Daniel R. Karon (0069304)
dkaron@karonllc.com
KARON LLC
700 West St. Clair Avenue, Suite 204
Cleveland, OH 44113
Phone: (216) 622-1851
Fax: (216) 241-8175

Paul J. Scarlato (*pro hac vice*)
pscarlato@lawgsp.com
GOLDMAN SCARLATO & PENNY, P.C.
101 East Lancaster Avenue, Suite 204
Wayne, PA 19087
Phone: (484) 342-0700
Fax: (484) 580-8747

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 9, 2015, a copy of the foregoing was filed electronically with the Court's Case Management/Electronic Case Files (CM/ECF) docketing system. Notice of this filing will be sent by operation of the CM/ECF system. Notice of this filing will also be sent by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the CM/ECF system.

/s/ Alan L. Rosca

Alan L. Rosca

*One of the Attorneys for Plaintiffs*