UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                          :
IN RE BIOZOOM, INC. SECURITIES            :
LITIGATION                                :
                                          :      CASE NO. 1:14-CV-01087
                                          :
                                          :
                                          :      OPINION AND ORDER
                                          :      [Resolving Docs. 135, 142]
                                          :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this securities case, Plaintiffs brought claims under Section 12(a)(1) of the Securities Act

of 1933 and on various state law theories after being victimized by a pump-and-dump scheme in

Biozoom securities.  Plaintiffs seek to recover from market-makers who did not participate in the

pump-and-dump scheme, but who sold Plaintiffs unregistered Biozoom shares on the over-the-

counter market.  The Court earlier dismissed many of Plaintiffs' claims, but denied Defendants'

motions to dismiss the Section 12(a)(1) claims of two Plaintiffs.[1]  In the course of ruling on

Defendants' motions to dismiss, the Court interpreted several provisions of the Securities Act,

including Section 4(a)(3)'s dealer exemption from liability for selling unregistered shares.[2]

As described in more detail below, the Court interpreted this provision as protecting dealers

that did not participate in distribution and that sold unregistered shares more than forty days after the

first time the security was bona fide offered to the public.  The Court also concluded that it was not

possible to determine whether this exemption applied to the present case because no evidence at the

---

[1]Doc. 127; Doc. 134.
[2]*See id.* at 18-26.

Case No. 1:14-CV-01087
Gwin, J.

motion to dismiss stage indicated that the first bona fide offer of the securities had occurred more than forty days before the trades at issue.

The parties have since conducted targeted discovery on this question.  Although neither party's proposed interpretation of the dealer exemption was completely adopted by the Court, the parties now agree that under the Court's interpretation, summary judgment for the Defendants is proper.  For that reason, and as described in more detail below, the Court **GRANTS** summary judgment to Defendants on Plaintiffs' remaining Section 12(a)(1) claims.

## I. Background

### A. Factual Background

The Court has previously set out the factual and procedural background of this case in detail in the Court's order on Defendants' motions to dismiss.[3]  Familiarity with that decision is assumed.  In summary, and as relevant to the dealer exemption issue discussed in this order, Plaintiffs sue brokerage firms who acted as market makers for Biozoom stock on the Over-the-Counter Bulletin Board ("Bulletin Board") and, in that capacity, sold Biozoom shares to Plaintiffs.

The events leading to this lawsuit began on June 25, 2007, with the formation of a Nevada corporation called Entertainment Art.[4]  Entertainment Art eventually became Biozoom.  Entertainment Art's stated purpose was to "design, produce, and sell a line of leather bags."[5]  On July 18, 2008, Entertainment Art filed a registration statement for 610,000 Entertainment Art shares with the Securities and Exchange Commission ("SEC").  Defendants argued in their motion to

---

[3]Doc. 127.
[4]Doc. 135 at 15.
[5]*Id.*

-2-

Case No. 1:14-CV-01087
Gwin, J.

dismiss briefing that this 2008 registration began the forty day clock on the dealer exemption and exempted Defendants from liability for their later sale of unregistered securities.

Between 2007 and early 2013, a complicated series of private transactions and stock splits occurred.[6]  In November 2012, before some of these private transactions but after others, some Entertainment Art shares were offered and sold on the Bulletin Board.[7]

Then, in 2013, Entertainment Art seemingly morphed into a different entity.  The company announced that it would no longer focus on leather bags, but instead would transition to biotechnology.[8]  On April 1, 2013, Entertainment Art changed its name to Biozoom.[9]

Between January 2013 and June 2013, ten Argentinian citizens acquired 20,130,000 shares corresponding to the shares covered by the 2008 Entertainment Art registration statement.  These Argentinians then deposited the Biozoom shares with two broker-dealers (not the Defendants).[10]

In May and June of 2013, the Argentinians carried out their pump-and-dump scheme by inflating the price of Biozoom with false press releases and selling at the resulting artificially high prices.[11]  By late June 2013, the SEC had suspended trading in Biozoom shares.[12]

**C. Procedural Background**

On May 20, 2014, Charles Corso, acting as trustee for the Anthony O. Corso Living Trust, ("Corso") filed this putative class lawsuit against Defendant KCG Americas LLC.  Corso sought to

---

[6]*Id.* at 15-18
[7]Doc. 141; Doc. 141-1.
[8]Doc. 135 at 17.
[9]*Id.* at 18.
[10]*Id.*
[11]*Id.* at 18-20.
[12]*Id.* at 20.

Case No. 1:14-CV-01087
Gwin, J.

represent a class of "all persons who purchased Biozoom stock between May 16, 2013[,] and June

25, 2013[,] from Defendant, inclusive, . . . seeking to pursue remedies under the Securities Act [of

1933]."[13]

Two amended complaints followed.  The amended complaints added several more plaintiffs

and defendants, and also added claims under state law.[14]

The Defendants filed consolidated motions to dismiss Plaintiffs' federal and state law

claims.[15]  The Court granted these motions as to all of Plaintiffs' state law claims, and as to the

Section 12(a)(1) claims of all Plaintiffs except Corso.[16]

The Court subsequently granted Plaintiffs leave to file a Third Amended Complaint, which

revived the Section 12(a)(1) claim of Plaintiff Stuart Spiteri.[17]  After Plaintiffs filed the Third

Amended Complaint,[18] the only live claims were the Section 12(a)(1) claims of Plaintiffs Corso and

Spiteri.

Defendants now move for summary judgment on stipulated facts.[19]  Plaintiffs continue to

disagree with the Court's interpretation of the dealer exemption as set out in the Court's motion to

dismiss order, but Plaintiffs acknowledge that summary judgment on the remaining claims is proper

under the Court's interpretation of the exemption.[20]

## II. Law and Analysis

---

[13] Doc. 1 at 2-3.

[14] Doc. 6 (first amended complaint); Doc. 62 (second amended complaint).

[15] Docs. 102, 103.

[16] Doc. 127.

[17] Doc. 134.

[18] Doc. 135.

[19] Doc. 141 (stipulated facts); Doc. 142 (summary judgment motion).

[20] Doc. 143.

Case No. 1:14-CV-01087
Gwin, J.

## A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[21] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[22]  Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[23]  The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[24]  But the Court will view the facts and all reasonable inferences from those facts in favor of the non-moving party.[25]

## B. Dealer Exemption

In general, Section 12(a)(1) of the Securities Act of 1933 prohibits the offer or sale of an unregistered security.[26]  The dealer exemption generally exempts "transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction)" from the Securities Act's registration requirements.[27]  But, in turn, this exemption from the registration requirement has limits to help ensure that the dealer is not acting as an underwriter.

Most relevant here, Section 4(a)(3)(A) says that dealers can be liable for "transactions taking place prior to the expiration of forty days after the first date upon which the security was bona fide

---

[21] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).

[22] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[23] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[24] *Id.* at 586.

[25] *Killion*, 761 F.3d at 580 (internal citation omitted).

[26] *See* 15 U.S.C. §§ 77*l*, 77e.

[27] *Id.* § 77d(a)(3).

Case No. 1:14-CV-01087
Gwin, J.

offered to the public by the issuer or by or through an underwriter."[28]  Defendants bear the burden
of establishing exemption from the registration requirement.[29]

At the motion to dismiss stage, the parties disputed whether Defendants made sales "prior
to the expiration of forty days after the first date upon which the security was bona fide offered to
the public by the issuer or by or through an underwriter."

Defendants took the position that a valid registration statement is per se a bona fide offer to
the public, and that the Biozoom shares were therefore first bona fide offered to the public when the
initial 2008 Entertainment Art registration statement was filed.[30]

Plaintiffs responded that the 2008 registration is irrelevant and argue that each new
distribution must be separately registered and each new distribution begins a new forty day period
when dealers are subject to liability.  Accordingly, Plaintiffs argued that Biozoom shares were first
"bona fide offered to the public" on the first date they appeared on the Bulletin Board during the
pump-and-dump scheme.[31]  Plaintiffs thus argued that earlier Bulletin Board sales would not start
the dealer exemption period and should be disregarded.

The Court did not fully accept either party's position.  On one hand, the Court rejected
Defendants' position that a registration statement automatically starts the forty day clock.  Rather,
the Court followed the Second Circuit's reasoning in *P. Stolz Family Partnership L.P. v. Baum* and
concluded that the filing of a registration statement is evidence of a bona fide offer to the public, but

---

[28]*Id.* § 77d(a)(3)(A).
[29]*See, e.g.*, *SEC v. Cavanagh*, 445 F.3d 105, 111 n.13 (2d Cir. 2006) ("[T]he defendant bears the burden of proving the applicability of an exemption." (citing *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953))).
[30]Doc. 102-1 at 18.
[31]*E.g.*, Doc. 115 at 35.

Case No. 1:14-CV-01087
Gwin, J.

is not conclusive.[32/]  Thus, "the relevant question . . . is when was the stock really and truly (genuinely) being offered to the public, as opposed to, say, a simulated offering."[33/]

On the other hand, the Court also rejected the Plaintiffs' argument that every new distribution begins a new forty day period when the dealer exemption does not apply.  In rejecting Plaintiffs' argument that each new distribution restarts the dealer exemption period, the Court reached the straightforward conclusion that the statutory language "first date upon which the security was bona fide offered to the public" refers to the "first date" when the security was "bona fide offered to the public."  This Court found the statutory language gives no indication that this time period resets every time a new distribution occurs.[34/]

In interpreting the forty day exception to the dealer exemption, the Court discussed and found either distinguishable or unpersuasive several cases Plaintiffs relied on, including the Southern District of New York's 1968 decision in *North American Research & Development*, which contained dicta arguably supportive of Plaintiffs' position.[35/]

The Court thus concluded that the forty day exception removes the protection of the dealer exemption only in the forty days following the first bona fide offer of the security to the public.  This forty day period does not necessarily begin when a registration statement is filed, but it also does not reset every time a new distribution occurs.[36/]

In ruling on the motion to dismiss, the Court further concluded that the complaint and other

---

[32/]Doc. 127 at 23-24 (citing *P. Stolz Family P'Ship L.P. v. Baum*, 355 F.3d 92 (2d Cir. 2004).

[33/]*Id.* (quoting *P Stolz*, 355 F.3d at 99).

[34/]*Id.* at 20-23.  The Court also noted that the 1933 Securities Act originally included language preventing a different exemption from applying to cases following future distributions, but that Congress had not so limited the dealer exemption.  *Id.* at 23 (citing Securities Act of 1933 Sec. 3(a), ch. 38, 48 Stat. 74, 76 (1933)).

[35/]*Id.* at 20-23 (citing cases including *SEC v. N. Am. Research & Dev. Corp.*, 280 F. Supp. 106, 125 (S.D.N.Y. 1968), *vacated in part*, 424 F.2d 62 (2d Cir. 1970).

[36/]*Id.* at 18-24.

-7-

Case No. 1:14-CV-01087
Gwin, J.

materials properly considered at the motion to dismiss stage were insufficient to determine when the first bona fide offer occurred.  The Court thus denied the Defendants' motion to dismiss Plaintiffs' Section 12(a)(1) claims on dealer exemption grounds.[37]

After targeted discovery, however, the parties agree that the securities in question were bona fide offered and sold to the public in November 2012.[38]  Specifically, on each of two occasions, 300 shares of Entertainment Art shares were offered to the public and sold on the Bulletin Board.[39]  These sales constitute bona fide offers to the public, and they occurred more than forty days before all of the transactions covered in Plaintiffs' lawsuit.[40]

The Court agrees with the parties that Defendants are therefore entitled to the dealer exemption from Section 12(a)(1) liability.  Summary judgment in Defendants' favor is thus proper based on the Court's interpretation of the dealer exemption and the facts stipulated to by the parties.

### III. Conclusion

For the reasons above, the Court **GRANTS** Defendants' motion for summary judgment.

IT IS SO ORDERED.


Dated: August 20, 2015                                      s/          *James S. Gwin*
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE

---

[37]*Id.* at 24-26.

[38]Doc. 141; Doc. 141-1.

[39]Doc. 141-1.

[40]The Court notes Plaintiffs' reliance on a footnote in the SEC's amicus brief in *P. Stolz*.  Doc. 143 at 2 n.1. The Court is not persuaded that it should change its interpretation of the dealer exemption based on this footnote. The footnote occurs in an amicus brief in a case that did not present the issue of whether the forty day period resets when a new distribution occurs, and the footnote does not provide any supportive argument or citations.